UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-cv-21562-UNGARO

ADANA INVESTING, INC.,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,
BENJAMIN RAFAEL,
HERNAN BERMUDEZ,
and PAUL ZOCH,

    Defendants.

_____/

**WELLS FARGO ADVISORS AND PAUL ZOCH'S JOINDER IN
MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

    Defendants Wells Fargo Advisors, LLC ("Wells Fargo Advisors") and Paul Zoch (collectively, "Defendants") hereby file this joinder in the Motion to Dismiss [DE 24] ("Motion to Dismiss") filed by Wells Fargo Bank, N.A., and adopt and incorporate herein the arguments set forth in pages 10-19 of the Motion to Dismiss, with regard to Counts I, III, VI and VIII, as applicable, as though fully set forth herein. Further support of this motion is set forth below.

**BACKGROUND**

    This action arises out of losses allegedly suffered by Plaintiff Adana Investing, Inc. ("Plaintiff") when non-party WVP Holding, LLC ("WVP") failed to repay over $28,000,000 in loan proceeds deposited by Plaintiff in an account at Wells Fargo Bank, N.A. ("Wells Fargo Bank"), pursuant to a series of short-term loan agreements between Plaintiff and WVP. Plaintiff alleges that it was fraudulently induced into paying such loans as part of a scheme by which non-

1

parties Benjamin McConley, Jason Van Eman, Ross Marroso and their companies Forrest Capital Partners, Inc. ("FCP"), Forrest Capital and Co., LLC ("FCC"), Weathervane Productions, Inc., and WVP (collectively, the "Forrest Capital Parties") purported to be in the film production and financing investment business. Apparently realizing there is no likelihood of recovery from the Forrest Capital Parties, and disavowing any personal responsibility, Plaintiff initiated this action against Defendants, Wells Fargo Bank, and the bank's employees, Messrs. Hernan Bermudez and Benjamin Rafael. Wells Fargo Bank and Wells Fargo Advisors are two separate, affiliated entities, and neither is the parent company of the other. Notwithstanding that Plaintiff has not alleged any facts regarding Plaintiff's sophistication as an investor, Plaintiff has filed this action in a blatant attempt to recover whatever losses it can after the Forrest Capital Parties' fraud was revealed, regardless of whether Defendants were actually responsible for those losses (they were not).  Crucially, however, Plaintiff has no basis for recovery against Defendants.

The Complaint asserts four state law claims against Defendants, for aiding and abetting conversion (Counts I and III) and fraudulent misrepresentation (Counts VI and VIII).  As set forth in Wells Fargo Bank's Motion to Dismiss, and as explained more fully below, each of Plaintiff's state law claims fails as a matter of law and, thus, Plaintiff's claims against Defendants must be dismissed in their entirety.

## ARGUMENT

### I. STANDARD OF REVIEW ON A MOTION TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  While a court must accept a complaint's well-pled factual allegations as true, "conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Jackson v. Bellsouth Commc'n, 72 F.3d 1250, 1262-63 (11th Cir. 2004); see also Twombly, 127 S. Ct. at 1965 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").[1]

In addition to the threshold pleading standard of Rule 8(a)(2), claims sounding in fraud must also meet the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. To comply with Rule 9(b), a plaintiff must allege with particularity: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendant gained by the alleged fraud." Rhodes v. Omega Research, Inc., 38 F. Supp. 2d 1353, 1359 (S.D. Fla. 1999) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997)). The purpose of these heightened pleading requirements is to alert defendants "to the precise misconduct with which they are charged and [protect] defendants against spurious charges of immoral and fraudulent behavior." Cordova v. Lehman Bros., 526 F. Supp. 2d 1305, 1312 (S.D. Fla. 2007) (quoting Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING CONVERSION

To plead a cause of action for aiding and abetting, a plaintiff must allege: "that the accused party ha[d] a general awareness that his role was part of an overall activity that is improper [and that] the accused aider-abettor knowingly and substantially assisted the violation."

---

[1] Accordingly, to avoid dismissal: "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965.

Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1009 (11th Cir. 1985) (quoting Woodward v. Metro Bank of Dallas, 522 F.2d 84, 94-95 (5th Cir. 1975)). Reduced to its elements then, aiding and abetting requires:

> (1) An underlying violation on the part of the primary wrongdoer;
> (2) Knowledge of the underlying violation by the alleged aider and abettor; and
> (3) The rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor.

Perlman v. Wells Fargo Bank, N.A., 559 F. App'x 988, 993 (11th Cir. 2014) (quotation omitted). Plaintiff fails to allege sufficient facts to satisfy any of the elements for aiding and abetting with respect to Defendants. Thus, Plaintiff's claims against Defendants for aiding and abetting conversion fails as a matter of law, and Counts I and III of the Complaint, against Defendants, must be dismissed.

### A.  Plaintiff has not sufficiently pleaded that its funds were converted.

To plead a cause of action for aiding and abetting conversion, Plaintiff must first sufficiently allege that its funds were converted. "In order to establish a claim for conversion of funds under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." IberiaBank v. Coconut 41, LLC, 2:100-CV-321-FTM-29, 2013 WL 6061883 (M.D. Fla. 2013) (quotation omitted).

Plaintiff fails to meet the "specific and identifiable" and possession requirements of a conversion claim. Plaintiff fails to allege that its funds were "specific and identifiable." Instead, Plaintiff alleges it distributed the proceeds of its loans into an account held by FCC. Compl. ¶¶ 63, 88, 95. Plaintiff does not allege that the account was a trust account, or that the funds were

4

specially earmarked to be returned to Plaintiff with interest.  Assuming the truth of Plaintiff's allegations, the loan proceeds were to serve as collateral for the line of credit Wells Fargo Bank was to extend to Weathervane.  Compl. ¶ 33.  Thus, if the loan proceeds were earmarked to be preserved intact at all, they were to be preserved intact for delivery to Wells Fargo Bank in the event Weathervane defaulted on its credit line.  Consequently, Plaintiff exchanged its right to possess the loan proceeds for the contractual right to be paid, at the times specified in the loan agreements, a sum equivalent to the principal amount of each loan plus interest.  The failure to repay a loan as agreed does not constitute conversion, even when the borrower is alleged to have accepted delivery of loan proceeds with "no intention of repaying the loan."  Walker v. Figarola, 59 So. 3d 188 (Fla. 3d DCA), review denied, 76 So. 3d 939 (Fla. 2011).

Importantly, Plaintiff does not allege that Defendants converted any of Plaintiff's funds, nor does Plaintiff allege that it made any demands on Defendants for the return of its funds.  Because Plaintiff's underlying claim for conversion fails as a matter of law to state a claim for which relief can be granted, Plaintiff's claim against Defendants for "aiding and abetting conversion" fails too, and Counts I and III against Defendants should be dismissed.

> **B.  Plaintiff has not sufficiently pleaded that Defendants had knowledge of the alleged conversion.**

Plaintiff also fails to sufficiently allege that either Wells Fargo Advisors or Mr. Zoch knew of the alleged conversion of Plaintiff's funds. "[W]hen a claim of aiding and abetting is asserted against a bank, the second element – knowledge – will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings."  Perlman, 559 F. App'x at 993 (quoting Lawrence v. Bank of America, N.A., 455 F. App'x 904, 907 (11th Cir. 2012)).  Moreover, as noted by the court in Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1246-47 (M.D. Fla. 2013), "[t]here is no authority in Florida tort law for imposing

5

aiding-and-abetting liability on a bank that is reckless but lacks actual knowledge of an underlying wrong." Evidence establishing that a bank "should have known" will not suffice. Id. at 1244 (citation omitted). Similarly, "Florida law does not require banking institutions to investigate transactions." Lawrence, 455 F. App'x at 906. Consequently, facts which merely "rais[e] red flags," such as atypical transactions, procedural oddities, and inconsistent account activity, do not "create a strong inference of actual knowledge." Perlman, 559 F. App'x at 993-94. While the above cases involved banks, the same reasoning applies to other financial institutions, including brokerages.

The requirement to plead facts demonstrating "actual knowledge" also applies to brokerage firms and other financial institutions. See In re Agape Litig., 681 F. Supp. 2d 352, 361 (E.D.N.Y. 2010) (holding that, "[i]t is well-established that brokers…do not owe a general duty of care to the public at large," and finding that a brokerage firm's failure to "conduct a more diligent inquiry" into a client's affairs did not mean that the brokerage firm "had actual knowledge of the fraud"); Frederick v. Smith, 416 N.J. Super. 594, 599, 7 A.3d 780, 783 (App. Div. 2010) (holding that "a brokerage firm is under no obligation to be a fraud watchdog for non-customers"); and Freeman v. Dean Witter Reynolds, Inc., 865 So. 2d 543, 548-49 (Fla. 2d DCA 2003) (holding that, similar to banks, other "financial institutions" do not owe a fiduciary duty to their clients "to investigate or disclose the manner in which the client or its authorized agents use[] their money").

### 1. *Plaintiff has not sufficiently pleaded that Mr. Zoch had knowledge of the alleged conversion.*

Plaintiff fails to plead facts demonstrating that Mr. Zoch had actual knowledge of the alleged conversion. In its Complaint, Plaintiff alleges that Mr. Zoch attended only a <u>single</u> meeting on October 30, 2014, in which he purportedly made the following representations: (1)

6

that Mr. Zoch was FCP's banker and financial advisor, (2) that FCP and Mr. McConley were clients of Wells Fargo Advisors, (3) that Wells Fargo Bank and Wells Fargo Advisors were involved in similar film financing deals between the Forrest Capital Parties and other lenders that were successful, and (4) that FCP and its family office had hundreds of millions of dollars. Compl. ¶¶ 37, 39, 41. Importantly, Plaintiff was not present at this meeting, and the meeting took place two months before the Forrest Capital Parties ever approached Plaintiff about making any loan. Compl. ¶¶ 30, 37. Additionally, Plaintiff alleges in a wholly conclusory manner that "[Mr.] Zoch had knowledge of the Forrest Capital Parties' conversion of Adana's funds." Compl. ¶¶ 111, 169. None of the alleged facts suggest Mr. Zoch was aware of any representations made by the Forrest Capital Parties to Plaintiff or that Mr. Zoch had <u>actual</u> <u>knowledge</u> of the Forrest Capital Parties' fraudulent scheme.

All of the alleged facts regarding Mr. Zoch's knowledge of the alleged conversion suggest that Mr. Zoch provided routine financial services to FCP and that, *at most*, he may have been aware of atypical transactions related to FCP's accounts with *Wells Fargo Advisors*. However, Mr. Zoch was under no duty to investigate any atypical transactions, and even if Mr. Zoch "should have known" the Forrest Capital Parties would defraud Plaintiff, such inference is insufficient to state a claim for aiding and abetting under Florida law. <u>Wiand</u>, 938 F. Supp. 2d at 1244. Consequently, Plaintiff's claim against Mr. Zoch for aiding and abetting conversion fails as a matter of law, and Count III of the Complaint must be dismissed.

### 2. *Plaintiff has not sufficiently pleaded that Wells Fargo Advisors had knowledge of the alleged conversion.*

Plaintiff also fails to plead facts demonstrating that Wells Fargo Advisors had actual knowledge of the alleged conversion. Plaintiff alleges that Wells Fargo Advisors had knowledge of the alleged conversion through "monitoring of employee emails." Compl. ¶ 143. This

7

allegation is in reference to Plaintiff's prior allegation that "*Wells Fargo Bank* was monitoring *or should have been monitoring*" its employee's emails in accordance with the Wells Fargo Team Member Handbook.[2] Compl. ¶ 71 (emphasis added). Plaintiff never alleges that Mr. Zoch or any employee of *Wells Fargo Advisors* sent an email to Plaintiff or its affiliates, nor does it specifically allege that *Wells Fargo Advisors* was monitoring its employees' emails. Regardless, even if Plaintiff had so alleged, such an allegation would suggest, at most, that Wells Fargo Advisors "should have known," but not that it "actually knew" about the alleged conversion. Wiand, 938 F. Supp. 2d at 1244.

Similarly, Plaintiff's allegations regarding Wells Fargo Advisor's involvement in an unrelated case also fails to demonstrate that Wells Fargo Advisors had actual knowledge of the alleged conversion. Plaintiff alleges that Wells Fargo Advisors had actual knowledge of the alleged conversion by virtue of Wells Fargo Advisors being named a defendant in Buzbee v. Dickie, Case No. 4:14-cv-03431 (S.D. Tx.) (initial complaint filed in state court on Oct. 2, 2014). Compl. ¶ 145. Specifically, Plaintiff alleges that Wells Fargo Advisors had actual notice of the alleged conversion when a Motion for Preliminary Injunction was filed in the Buzbee case, which "set forth the details of the Forrest Capital Parties' scheme." Compl. ¶¶ 124-25. However, the Buzbee case was filed by parties who were unrelated to Plaintiff, and the Motion was filed on December 9, 2014, nearly a month before the Forrest Capital Parties approached Plaintiff about making a loan. Compl. ¶ 30. Moreover, the Motion was filed more than a month after the October 30, 2014 meeting with Mr. Zoch, which was the only alleged meeting with any representative from Wells Fargo Advisors. Because Mr. Zoch's and Wells Fargo Advisors'

---

[2] According to the Complaint, the Wells Fargo Team Member Handbook states that Wells Fargo monitors emails based on "specific content" such as "social security numbers" and "financial account numbers." Compl. ¶ 71. However, Plaintiff does not allege that the content of any email correspondence in the Complaint contained the "specific content" that would have triggered monitoring by Wells Fargo Bank.

alleged involvement occurred <u>before</u> the December 9, 2014 Motion in the <u>Buzbee</u> case, that Motion could not serve as any notice to Defendants in this case, and would not constitute actual notice of conversion.

Additionally, Plaintiff never alleges that it was ever a customer of Wells Fargo Advisors, or that it ever deposited funds with Wells Fargo Advisors. Nor does it allege that Wells Fargo Advisors was aware of Plaintiff's subsequent loans to FCC. Instead, Plaintiff alleges it deposited its loan payments to FCC into an account with Wells Fargo Bank. Compl. ¶ 65. Consequently, the Motion for Preliminary Injunction in <u>Buzbee</u> could not have provided Wells Fargo Advisors with actual knowledge that the Forrest Capital Parties would convert Plaintiff's funds because Wells Fargo Advisors was not aware of Plaintiff's loans to FCC. At most, the <u>Buzbee</u> case might have raised a "red flag" or suggested that the Forrest Capital Parties might have converted investor funds in the past, but not that Wells Fargo Advisors "actually knew" the Forrest Capital Parties would convert Plaintiff's funds. And mere "red flags" are not enough. <u>Perlman</u>, 559 F. App'x at 993-94; <u>Wiand</u>, 938 F. Supp. 2d at 1244.

Moreover, Plaintiff is precluded from imputing any actual knowledge of the alleged conversion that Mr. Zoch, Mr. Bermudez,[3] or Wells Fargo Bank purportedly had to Wells Fargo Advisors. Defendants do not concede that Mr. Zoch had any actual knowledge of the alleged conversion of Plaintiff's funds. For purposes of this Motion to Dismiss, even taking Plaintiff's conclusory allegation that "[Mr.] Zoch had knowledge of the Forrest Capital Parties' conversion of Adana's funds" (Compl. ¶ 169) as true, this alleged knowledge cannot be imputed to Wells Fargo Advisors.

---

[3] Plaintiff alleges that Hernan Bermudez is an employee of "Wells Fargo Bank and/or Wells Fargo Advisors". Compl. ¶ 24. Mr. Bermudez is an employee of Wells Fargo Bank, not Wells Fargo Advisors. Thus, any knowledge he may have had cannot be imputed to Wells Fargo Advisors. That said, even if Mr. Bermudez was an employee of Wells Fargo Advisors, his alleged knowledge cannot be imputed to Wells Fargo Advisors for the reasons set forth above.

In <u>Freeman v. JP Morgan Chase Bank, N.A.</u>, 137 F. Supp. 3d 1284, 1296 (M.D. Fla. 2015), the court noted that, generally, when "'an agent acquires knowledge within the scope of his authority,' such knowledge is imputed to the principal." (citation omitted).  However, the court held that "Florida courts have recognized an exception to this general rule, the 'adverse interest' exception, which applies in circumstances where the agent is 'secretly…acting adversely to the principal and entirely for his own or another's purposes.'" <u>Id.</u> (citation omitted). The exception applies "when the agent's conduct is entirely in the agent's interest and without even incidental benefit to the principal." <u>Id.</u> (citation omitted).  In its Complaint, Plaintiff fails to allege that Wells Fargo Advisors received any benefit from Mr. Zoch's alleged actions or that Mr. Zoch's alleged actions were not secret or adverse to Wells Fargo Advisors.

To be clear, Wells Fargo Bank and Wells Fargo Advisors are two separate entities, and neither is the agent of the other. Therefore any knowledge of Wells Fargo Bank cannot be imputed to Wells Fargo Advisors as a matter of law.

Plaintiff's claim against Wells Fargo Advisors for aiding and abetting conversion fails as a matter of law, and Count I of the Complaint against Wells Fargo Advisors must be dismissed.

**C.     Plaintiff has not sufficiently pleaded that Defendants substantially assisted in the alleged conversion.**

Plaintiff fails to allege facts demonstrating that Defendants substantially assisted in the alleged conversion.  Substantial assistance will not be found where "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme." <u>Richter v. Wells Fargo Bank, NA</u>, No. 2:11-cv-695-FtM-29DNF, 2015 U.S. Dist. LEXIS 3796, at *9 (M.D. Fla. Jan. 13, 2015) (quotation omitted).  Additionally, "when the alleged aider and abettor is not an integral part of the underlying violation, '[c]ourts must also consider the potentially devastating impact aiding and abetting liability might have on commercial relationships.'" <u>Id.</u>

10

(citation omitted). Specifically regarding claims for aiding and abetting conversion, substantial assistance must relate to "the wrongful deprivation of property, not the acquisition of the property by the wrongdoer." Id. at *9-10. Similarly, a bank's failure to freeze an account does not constitute substantial assistance when such failure is alleged as part of a larger, fraudulent scheme. See Id. at *12 (finding that extending aiding and abetting liability to a bank for failure to freeze an account used in a fraudulent scheme "would have a chilling effect on commercial banking relationships by requiring banks to preemptively freeze accounts on their own accord lest they risk liability for aiding and abetting misconduct by their account holders").

In its Complaint, Plaintiff does not allege that Defendants had anything to do with the wrongful deprivation of its funds. Plaintiff does not allege that its funds were ever in an account with Wells Fargo Advisors. Instead, Plaintiff alleges that it deposited funds into an account held by FCC at Wells Fargo Bank and that, at the time Plaintiff's funds were wrongfully deprived, such funds had either been transferred to another Wells Fargo Bank account or withdrawn by FCC. Compl. ¶¶ 63, 75-77, 95, 98. Plaintiff does not allege, nor could it allege, that Wells Fargo Advisors or Mr. Zoch had any access to such accounts. In fact, at the time Plaintiff alleges its funds were wrongfully withheld (namely, beginning September 20, 2015), Wells Fargo Bank had already frozen the above-mentioned accounts. Compl. ¶¶ 100-102. Even if Plaintiff alleged that Wells Fargo Advisors assisted in the conversion by failing to freeze or close FCC's accounts at Wells Fargo Advisors (which Plaintiff never alleged were used as part of the fraudulent scheme), such assistance would be "minor in comparison to the massive scope of [the] overall fraudulent scheme" and would not constitute "substantial assistance." Richter, No. 2:11-cv-695-FtM-29DNF at *9. Moreover, the one brief meeting Mr. Zoch attended at Wells Fargo Advisors'

11

office months before Plaintiff's involvement - at which Plaintiff was not even present - cannot be deemed substantial assistance in the alleged scheme to convert Plaintiff's funds.

Consequently, Plaintiff's claim against Defendants for aiding and abetting conversion again fails as a matter of law, and Counts I and III of the Complaint against Defendants must be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION

Under Florida law, "relief for a fraudulent misrepresentation may be granted only when the following elements are present: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). According to the Florida Supreme Court in Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 336-37 (Fla. 1997), the policy behind holding a defendant liable for fraudulent misrepresentation is "to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." Moreover, as stated above, claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiff fails to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure in its claims for fraudulent misrepresentation against Defendants. Specifically, Plaintiff fails to allege that the Defendants "gained" anything by the alleged fraud. See Brooks, 116 F.3d at 1381 (holding that, to plead a cause of action sounding in fraud, a plaintiff must allege "what the defendant gained by the alleged fraud"). Although Plaintiff alleges Wells Fargo Bank received transaction fees, Plaintiff makes no such allegations with

12

respect to Wells Fargo Advisors or Mr. Zoch - indeed, because they received no such fees. Compl. ¶ 78.  Similarly, while Plaintiff alleges that Mr. Rafael, an employee of Wells Fargo Bank, received payment from the Forrest Capital Parties, it makes no such allegation with respect to Mr. Zoch.  Compl. ¶ 105.  Instead, Plaintiff makes only conclusory statements that Mr. Zoch acted "for the benefit of" Wells Fargo Bank or Wells Fargo Advisors, without pleading "with particularity" what benefit Wells Fargo Advisors (or Mr. Zoch) actually received.  Compl. ¶¶ 139, 195.

Consequently, Plaintiff's claims against Defendants for fraudulent misrepresentation fail as a matter of law, and Counts VI and VIII against Defendants must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Wells Fargo Advisors, LLC and Paul Zoch request that the Court dismiss Plaintiff's claims against Defendants in their entirety and grant such other relief as the Court deems just, necessary or proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Beth A. Black
BETH A. BLACK, ESQ.
Florida Bar No. 116371
BlackB@gtlaw.com
JOSEPH A. VALLO, ESQ.
Florida Bar No. 972096
ValloJ@gtlaw.com
LAUREN WHETSTONE, ESQ.
Florida Bar No. 45192
WhetstoneL@gtlaw.com
GREENBERG TRAURIG , P.A.
777 South Flagler Drive, Third Floor East
West Palm Beach, Florida  33401
Telephone:  (561) 650-7900
Facsimile: (561) 655-6222

*Attorneys for Defendants Wells Fargo Advisors and Paul Zoch*

**SERVICE LIST**

Adana Investing, Inc. v. Wells Fargo Bank, N.A., et. al.
Case No. 1:16-cv-21562-UNGARO
United States District Court, Southern District of Florida

John D. Couriel, Esq.
Stephanie D. Hauser, Esq.
KOBRE & KIM LLP
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
john.couriel@kobreim.com
Stephanie.hauser@kobrekim.com
*Counsel for Plaintiff*

Barbara J. Riesberg, Esq.
Riesberg Law
Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, FL 33133
barbara@riesberglaw.com
*Counsel for Defendant Hernan Bermudez*

Dale W. Cravey, Esq.
Charles M. Harris, Esq.
Beth A. Cronin, Esq.
Stephanie S. Leuthauser, Esq.
Trenam, Kemker
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
dcravey@trenam.com
bshepard@trenam.com
charris@trenam.com
gkesinger@trenam.com
bcronin@trenam.com
slord@trenam.com
sleuthauser@trenam.com
jammer@trenam.com
*Counsel for Defendant Wells Fargo Bank, N.A.*