**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:16-cv-21562-UNGARO**

ADANA INVESTING, INC.,

     Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,
BENJAMIN RAFAEL,
HERNAN BERMUDEZ,
and PAUL ZOCH,

     Defendants.
_____ /

**PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

John D. Couriel
Fla. Bar No. 831271
Stephanie L. Hauser
Fla. Bar No. 92765
KOBRE & KIM LLP
2 South Biscayne Boulevard
Miami, FL 33131
Tel: +1 305 967 6100
Fax: +1 305 967 6120
john.couriel@kobrekim.com
stephanie.hauser@kobrekim.com

*Attorneys for Plaintiff Adana Investing, Inc.*

Plaintiff Adana Investing, Inc. ("Plaintiff") hereby files this omnibus response in opposition to the Motions to Dismiss filed by Defendants Wells Fargo Bank, N.A. (the "Bank"), Wells Fargo Advisors, LLC ("Advisors"), Paul Zoch ("Zoch"), and Hernan Bermudez ("Bermudez") (collectively, "Defendants") [ECF Nos. 24, 29, & 31], and states:

## I.    INTRODUCTION

This is a case about the critical role that the Bank and Advisors, along with Zoch, Bermudez, and Benjamin Rafael ("Rafael"), played in an elaborate scheme to defraud Adana of over $28 million. To effectuate their scheme, the primary fraudsters, the Forrest Capital Parties,[1] relied on the Bank and Advisors to provide them not only with bank accounts, but with financial advisors and bankers who would convince lenders of the legitimacy of the deal and then, after the funds had been misappropriated, help conceal the fraud.

Adana was not the first victim of the Forrest Capital Parties, nor was it the last. Each of these victims had their funds stolen after depositing them into accounts in the name of FCC at either the Bank or Advisors. Most of these victims, if not all, interfaced with the same cast of characters at the Bank and Advisors. The Bank and Advisors enabled the Forrest Capital Parties' scheme for well over one year.

Now, in an attempt to change the subject and escape liability for the woeful internal controls that precipitated the fraud for so long, Defendants move to dismiss Adana's claims under a bizarre *in pari delicto* theory—based on no facts whatsoever—that the Bank and the Forrest Capital Parties are actually the victims, here. They accuse Adana, which has lost over $28 million to date in this scam, of being the victimizer of supposedly sophisticated financial institutions that lost not a dime. These accusations are nonsense, and illustrate a willingness on Defendants' part to try anything at this stage of the proceedings rather than come to terms with their exposure.

The Bank, Advisors, and Zoch also move to dismiss Adana's claims for fraudulent misrepresentation, and the Bank, Advisors, Zoch and Bermudez move to dismiss Adana's claims for aiding and abetting conversion, arguing that, if anything, they are guilty of inattention. But this is not a case of missed "red flags." Rather, there can be no question that the Bank and

---

[1]      The "Forrest Capital Parties" refers to non-parties, Benjamin McConley ("McConley"), Jason Van Eman ("Van Eman"), and Ross Marroso ("Marroso"), and their companies, Forrest Capital Partners, Inc. ("FCP"), Forrest Capital and Co., LLC ("FCC"), Weathervane Productions, Inc. ("Weathervane"), and WVP Holding, LLC ("WVP").

Advisors—who had already been sued by one of the Forrest Capital Parties' earlier victims by the time Adana was defrauded—had actual knowledge of what the Forrest Capital Parties were up to.

The Court should deny these Motions.

## II.   BACKGROUND

Pursuant to what Adana understood to be three short-term loans, Adana deposited $28.5 million into a bank account of FCC at the Bank. *See* Compl. ¶¶ 1, 2, 62, 63, 86–88, & 93–95, ECF No. 1. Almost immediately after they were deposited, Adana's funds were wrongly converted and dissipated by the Forrest Capital Parties. *See id.* ¶¶ 2, 74–77, 97, & 98.

Prior to Adana making the loans, Adana relied on due diligence conducted by Alastair Burlingham and Lee Vandermolen. *See id.* ¶¶ 35 & 36. As part of their due diligence, Mr. Burlingham and Mr. Vandermolen had three in-person meetings with the Forrest Capital Parties and either Zoch, their financial advisor, or Rafael, their banker. *See id.* ¶¶ 37–53. Zoch hosted a meeting at Advisors on October 30, 2014, and Rafael hosted two meetings at the Bank on March 13 and 16, 2015, to convince Adana of the legitimacy of the deals, including misrepresenting the amount of funds the Forrest Capital Parties had on deposit with Advisors and the Bank and that Adana's loan proceeds would be held in a restricted account. *See id.* The Bank also provided written assurances to Adana that Adana's loan proceeds would be held in a restricted account. *See id.* ¶¶ 60 & 85. Further, after Adana deposited the loan proceeds into FCC's account at the Bank and the Forrest Capital Parties misappropriated the funds, the Bank and its employee, Rafael, actively concealed the conversion. *See id.* ¶ 70. From behind the scenes, Bermudez facilitated the scheme by opening the Forrest Capital Parties' accounts and managing their relationship with the Bank and Advisors. *See id.* ¶¶ 110, 111, 113, & 114.

On May 2, 2016, Adana commenced this action, asserting claims for aiding and abetting conversion against the Bank, Advisors, Rafael, Zoch, and Bermudez (Counts I–IV), and claims for fraudulent misrepresentation against the Bank, Advisors, Rafael, and Zoch (Counts V–VIII). *See id.*

On June 23, Defendants filed motions to dismiss, raising an *in pari delicto* defense and challenging the sufficiency of the allegations. *See* Bank Mot., ECF No. 24, Advisors Mot., ECF No. 29, and Bermudez Mot., ECF No. 31. For efficiency, and because the motions raise

overlapping arguments that fail for the same reasons, Adana files this omnibus response in opposition to the Motions.

### III.   MEMORANDUM OF LAW

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." When evaluating a complaint on a motion to dismiss, "[f]actual allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff." *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014) (J. Ungaro) (citing *Edwards v. Prime Inc.,* 602 F.3d 1276, 1291 (11th Cir. 2010)). Arguments that turn on a denial of the allegations are not appropriate grounds for a motion to dismiss. *See Nelson v. Sab One LLC*, No. 12-81032-CIV, 2013 WL 1442202, at *1 (S.D. Fla. Apr. 9, 2013) ("A denial is not a basis or ground to grant a motion to dismiss since the Court is required to accept the all of the allegations of the complaint as true.").

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009).

### A.  The *in pari delicto* Defenses Are Nonsense.

The Defendants headline their Motions with the wild accusation that Adana engaged in a scheme to make "criminally usurious" loans under Florida law, and conspired with the people who stole their money to defraud the Bank. *See* Bank Mot., at 2, 9, 12–14; Advisors Mot., at 1 (adopting the Bank's *in pari delicto* arguments), Bermudez Mot., at 2–4. This is nonsense, pure and simple. Because the loans at issue are governed by the laws of England, any discussion of Florida criminal usury statutes is beside the point. The Defendants' accusation also relies on facts that are extrinsic to the Complaint, because the Complaint (upon which, alone, the Court must rely at this juncture) lacks <u>any</u> factual allegation to support the notion that Adana had any agreement with the Forest Capital Parties to engage in conduct that would mislead the Bank in any way, let alone to cause the Bank or Advisors any financial harm. It is, after all, Adana's money that is gone as a result of the Bank's and Advisors' conduct.

As a matter of law, *in pari delicto* is a fact-based affirmative defense that "is usually not an appropriate ground for a Rule 12(b)(6) dismissal." *Pearlman v. Alexis*, Case No. 09-20865-

CIV, 2009 WL 3161830, at *3 (S.D. Fla. Sept. 25, 2009) (rejecting *in pari delicto* defense at motion to dismiss stage); *see generally Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer,* Case No. 05-60584CIV, 2008 WL 906274, at *4 (S.D. Fla. Mar. 31, 2008) ("*In pari delicto* is an affirmative defense." (citing *Banco Indus. de Venezuela, C.A. v. Credit Suisse,* 99 F.3d 1045, 1050 (11th Cir. 1996)). Rather, "[a]n *in pari delicto* defense may be successfully asserted at the pleading stage only where 'the facts establishing the defense are: (1) definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice [sic] to establish the affirmative defense with certitude.'" *Id.* (quoting *Gray v. Evercore Restructuring, LLC,* 544 F.3d 320, 325 (1st Cir. 2008)).

Here, Defendants can point to no factual allegation in the Complaint to support their bizarre theory that Adana was somehow a co-conspirator with the individuals and entities that stole over $28 million from Adana with Defendants' assistance. Defendants' theory that the Bank was actually the intended victim is wholly unsubstantiated and has no support in the Complaint (or reality, for that matter).[2] Adana sought no money from the Bank or Advisors. To the contrary, the Complaint alleges that it was the Bank and Advisors, through their employees, who facilitated the Forrest Capital Parties' defrauding of at least four victims. Because Defendants cannot cite to any allegations whatsoever to support, and certainly not establish "with certitude," the claim that Adana was trying to defraud the Bank, the Court should reject this argument. *See Court-Appointed Receiver of Lancer Mgmt. Grp. LLC*, 2008 WL 906274, at *4.

The Defendants' repeated accusations that Adana is seeking to collect on loans that are "criminally usurious" under Florida law are similarly misguided. Defendants have not cited to any allegations of the Complaint or any other allowable source of information that suggest, much less establish "with certitude," that Florida law governs the loans. To the contrary, each of the loan agreements contains an express choice of law of provision of English law.[3] This is not unexpected, as Adana (the lender) is a British Virgin Islands company.[4] *See* Compl. ¶ 3. It is

---

[2]      As the Bank well knows, the Forrest Capital Parties never applied for the lines of credit.

[3]      Although the loan agreements are not attached to the Complaint, they are available as part of the record. *See* ECF Nos. 22-2, 22-4, & 22-6. As the loan agreements are referred to in the Complaint, the Court may consider them at the motion to dismiss stage. *See Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 110 F. Supp. 3d 1259, 1265 n.1 (S.D. Fla. 2015) (Ungaro, J.).

[4]      As discovery develops, it will become clear that these transactions were distinctly English in origin, and that English law governs the loan agreements. In addition to Adana being a BVI entity, the

settled law that, under these circumstances, Florida's usury statute is simply irrelevant, and there is no impediment to Adana seeking recovery of the interest due under these loans in this Court. *See Morgan Walton Prop., Inc. v. Int'l City Bank & Trust Co.*, 404 So. 2d 1059, 1063 (Fla. 1981) (holding loans that provided for interest rates that were legal under the laws of the state that governed the loans pursuant to the parties' choice of law were enforceable in Florida courts even though interest rates would be usurious under Florida law); *see also, e.g.*, *L'Arbalete, Inc. v. Zaczac*, 474 F. Supp. 2d 1314, 1321 (S.D. Fla. 2007) (noting Florida's usury statute does not eviscerate a contractual choice of law provision). Accordingly, Defendants' *in pari delicto* defense premised on Florida's usury statute should be rejected.

Ultimately, Defendants' *in pari delicto* defenses are a red herring; they are an attempted deflection of this Court's attention away from the massive failure of the Bank's and Advisors' systems and controls that enabled the Forrest Capital Parties to host a fraud from their boardrooms and their employees to substantially aid in the scheme.

### B. Adana Has Sufficiently Pled that Rafael, Zoch, and Bermudez Were Acting within the Scope of the Their Employment such that Their Knowledge and Conduct Are Imputed onto the Bank and Advisors.

The Bank and Advisors make two interrelated arguments that, as a matter of law, the Court should find that the knowledge and conduct of Rafael, Bermudez, and Zoch cannot be imputed to their respective employers. *See* Bank Mot., at 11–12; Advisors Mot., at 9–10. This argument turns on the Bank's and Advisors' contention that Rafael, Bermudez, and Zoch were acting outside the scope of their respective employments and adverse to the interests of the Bank and Advisors. *See id*. But Adana has sufficiently alleged that Rafael, Bermudez, and Zoch were acting within the real and apparent scope of their employment and for the benefit of their respective employers—they were, after all, officers and employees, conducting meetings on the Bank's and Advisors' property, using the Bank's email address (which the Bank monitored) and stationery, to induce the Banking transactions.

"Under Florida law, in order for an employer to be liable under the theory of *respondeat superior* for the intentional torts of an employee, the alleged wrongs must be committed within the real or apparent scope of the employer's business." *Blount v. Sterling Healthcare Grp., Inc.*,

---

Forrest Capital Parties negotiated the terms of the agreements with Adana's transactional counsel, who are based in England. Mr. Burlingham and Mr. Vandermolen, the arrangers of the loans, are also based in England.

934 F. Supp. 1365, 1372 (S.D. Fla. 1996) (Ungaro, J.) (citing *City of Miami v. Simpson,* 172 So. 2d 435, 437 (Fla. 1965)). In determining whether a complaint sufficiently alleges that an employee was acting within the scope of her employment, courts look to whether the employee's "conduct is the kind the employee is hired to perform, if it occurs within the time and space limits of the job, and if it is activated at least in part to serve the master." *See id.* (denying motion to dismiss and finding complaint sufficiently alleged *respondeat superior* liability where employee was alleged to have committed an intentional tort "during working hours on business premises" and within context of employment). As long as the employee was acting "at least party to serve the master," the employer may be held liable for the intentional tort "even if the alleged wrong was a crime, was not authorized by the employer, or was forbidden by the employer." *See id.* (citing *Stinson v. Prevatt,* 94 So. 656 (Fla. 1922); *Lay v. Roux Lab., Inc.,* 379 So. 2d 451, 453 (Fla. Dist. Ct. App. 1980)).

As it concerns an employee's knowledge, "[t]he general rule is that whatever knowledge an agent acquires within the scope of his authority is imputed to his principal." *LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991); *see also Davies v. Owens-Illinois, Inc.*, 632 So. 2d 1065, 1066 (Fla. Dist. Ct. App. 1994). While there is an adverse interest exception to this general rule, it only applies if the employee "totally abandoned" the employer's interest and the employer received no benefit whatsoever from the fraud. *See Brandt v. Lazard Freres & Co., LLC*, Case No. 96-2653-CIV-DAVIS, 1997 WL 469325, at *3 (S.D. Fla. Aug. 1, 1997); *see also, e.g.*, *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1339 (11th Cir. 1997) (no imputation where agent "perpetrated the theft and embezzlement <u>solely</u> for his own benefit" (emphasis added).

Here, Adana has alleged that Rafael, Bermudez, and Zoch each were performing tasks they had been hired to do, during working hours, on their employers' premises, when they aided and abetted the Forrest Capital Parties' conversion of Adana's funds. Rafael and Zoch made fraudulent misrepresentations in furtherance of the Forrest Capital Parties' scheme using instrumentalities they had only as employees of the Bank and Advisors. With regard to Rafael, Adana has alleged that he made the fraudulent misrepresentations inside a conference room behind a security door on the Bank's premises, through use of his the Bank email address, and on the Bank letterhead, on which he affirmatively represented that he was authorized to act on

behalf of the Bank.[5] *See, e.g.*, Compl. ¶¶ 43, 50, 60, 70, & 85. Adana has further alleged that Rafael did so for the benefit of the Bank, and that the Bank did, in fact, benefit. *See id.* ¶¶ 78, 99, 140, & 141. With regard to Bermudez, Adana has similarly alleged that he was acting within the scope of his employment when he opened and managed the Forrest Capital Parties' the Bank accounts. *See, e.g.*, *id.* ¶¶ 25, 140. Similarly, Adana has alleged that Zoch made the fraudulent misrepresentations inside a conference room on Advisors' premises, that he did so within the scope of his employment, and for the benefit of the Bank and/or Advisors. *See, e.g.*, *id.* ¶¶ 21, 37–41, & 139. Specifically, they induced deposits to accounts at the Bank and/or Advisors, which are of course at the heart of the business of each institution, and ultimately the source of fees and interest that supply. These allegations are sufficient to hold the Bank and Advisors liable for the conduct of their employees.[6] *See Blount*, 934 F. Supp. at 1372; *see also Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) ("if Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss").

Moreover, the Complaint alleges facts sufficient to rebut the adverse inference theory advanced by the Bank and Advisors. It simply is not true, as the Bank submits, that "Wells Fargo could not possibly have benefited from" the transactions induced by its employees, acting plainly within the scope of their duties as the Bank officers. *See* Bank Mot., at 12. The Complaint alleges that Rafael and Bermudez acted for the benefit of the Bank as they would in the ordinary course of their employment in inducing deposits:  that is, in obtaining transaction fees. *See* Compl. ¶¶ 78 & 99. Similarly, although Advisors suggests that Zoch was acting adverse to its interests and in secret, it too does not point to a single factual allegation that would fit with that claim.[7] *See* Advisors Mot., at 9–10. Rather, as alleged in the Complaint, Zoch made the fraudulent misrepresentations inside a conference room on Advisors' premises, and Rafael acted

---

[5] That the Bank contests whether Rafael, in actuality, had authority or authorization to make certain misrepresentations does not negate these well-pled allegations. *See Nelson*, 2013 WL 1442202, at *1.

[6] To the extent the Court requires additional factual allegations to support the imputation of the knowledge and conduct of Rafael, Bermudez, and Zoch to the Bank and Advisors, Adana requests leave to amend.

[7] That Advisors makes this argument while simultaneously defending Zoch in a joint motion further undermines its viability.

in the open on the Bank premises and through his the Bank-monitored email account. *See* Compl. ¶¶ 43, 50, 60, 70, 85, 140, & 141 For these reasons, even if it is true that the fraudsters employed by the Bank and Advisors sought, in part, to enrich themselves when they collaborated with the Forest Capital Defendants to victimize Adana, that fact cannot absolve the Bank or Advisors of liability. *See Brandt*, 1997 WL 469325, at *3.

Finally, despite the Bank's and Advisors' protestations that they are separate entities, and therefore their independent knowledge cannot be imputed onto each other, Adana has alleged that the Bank and Advisors worked in tandem, through shared employees, to service customers of the Wells Fargo Private the Bank segment. *See* Compl. ¶¶ 8–11. As relevant here, Bermudez, whose title was "Regional Bank Private Banker," was employed by the Bank while simultaneously a registered broker with Advisors.[8] *See id.* ¶¶ 24 & 26. Further, Zoch, who is an employee of Advisors, was able to control whether Bermudez was associated with certain "customer relationships." *See id*. ¶ 111. As such, the Bank's and Advisors' claims that that certain employees worked for one of them and not the other or that they do not share knowledge should be rejected as mere denials of allegations. *See Nelson*, 2013 WL 1442202, at *1.

### C.   Adana Has Adequately Pled the Aiding and Abetting Conversion Claims.

To state a cause of action for aiding and abetting conversion, a plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1321 (M.D. Fla. 2013) (*citing Lawrence v. Bank of Am., N.A., 455* Fed. App'x 904, 906 (11th Cir. 2012) (citations omitted)). Here, the "underlying violation" is conversion, which involves the following three elements: "(1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *See TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1223 (S.D. Fla. 2012) (citing *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001)); *Warshall v. Price,* 629 So.2d 903, 904 (Fla. Dist. Ct. App. 1993)); *see also Joseph v. Chanin*, 940 So. 2d 483, 487 (Fla. Dist. Ct. App. 2006) ("the essence of an action for conversion is not the acquisition of property by the wrongdoer, but rather the refusal to surrender the possession of the subject personalty after demand for possession by one entitled thereto" (citations omitted)).

---

[8]   Indeed, it was Advisors that reported Bermudez' termination to FINRA. *See* Compl. ¶ 113.

### i.   The Underlying Conversion

Defendants do not contest the sufficiency of Adana's allegations that the Forrest Capital Parties have "wrongfully assert[ed] dominion and control over" the funds. Rather, Defendants contest the extent to which the funds were the property of Adana and capable of conversion. Specifically, Defendants advance three arguments: (i) "the failure to repay a loan as agreed does not constitute conversion;" (ii) Adana has not alleged the funds are "specific and identifiable;" and (iii) Adana has not alleged "it has an immediate right to possession of the money."[9] *See* the Bank Motion, at 15–17; Advisors Motion, at 4–5; Bermudez Motion, at 5. Here, in turn, is why each of those arguments is meritless.

First, Defendants' argument that "the failure to repay a loan as agreed does not constitute conversion" is of no help where, as here, "the alleged conversion goes beyond the terms of the contract." *See My Classified Ads, L.L.C. v. Greg Welteroth Holding Inc.*, No. 8:14-CV-2365-T-33AEP, 2015 WL 1169857, at *8 (M.D. Fla. Mar. 13, 2015) (denying motion to dismiss conversion claim regarding loaned funds). This is, in short, not a lawsuit about a loan that was simply unpaid. It is about a Ponzi scheme:  a conspiracy of actors within and outside two major financial institutions who were able to divert funds from their intended contractual purposes.

In *Walker v. Figarola*, the lone case relied upon by all of the Defendants in making this argument, the court made clear that a claim for conversion may succeed where there is a contractual relationship between the parties if the "conversion [goes] beyond, and [is] independent from, a failure to comply with the terms of a contract." 59 So. 3d 188, 190 (Fla. Dist. Ct. App. 2011) (citing *Gasparini v. Pordomingo,* 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)). Relying on this exception, courts frequently allow conversion claims to proceed where they concern funds that were loaned, but after lawful possession was obtained, diverted. *See, e.g.*, *My Classified Ads, L.L.C.*, 2015 WL 1169857, at *8 (denying motion to dismiss conversion claim regarding loaned funds); *Lesti*, 960 F. Supp. 2d at 1326 (denying motion to dismiss aiding and abetting conversion claim regarding loaned funds).

---

[9]      Advisors' additional argument that Adana has failed to make a demand on Defendants for the return of the funds, *see* Advisors' Motion, at 5, is of no moment, because Adana is not claiming that Defendants converted the funds, and demand is *not* a required element of conversion. *See Middleton v. M/V GLORY SKY I*, 567 F. App'x 811, 814 (11th Cir. 2014) ("[D]emand is not an element of conversion.").

In an action against the Bank for aiding and abetting conversion in connection with a different Ponzi scheme, the Middle District rejected an identical argument by the Bank—this very same the Bank—that funds subject of a loan agreement could not be converted. *See Lesti*, 960 F. Supp. 2d at 1326. There, the court recognized that "Florida case law has also upheld a verdict of conversion where there was a contractual relationship and evidence of 'a classic embezzlement.'" *See id.* (citing *Masvidal v. Ochoa,* 505 So. 2d 555, 556 (Fla. 3d DCA 1987)). In rejecting the Bank's defense, the Middle District found that the plaintiff has sufficiently alleged conversion where, through an investment contract, the defendant gained lawful possession of the plaintiff's funds but then used those funds for its own purpose. *Id.* ("While there is no allegation that plaintiffs, in their Promissory Notes and Loan Agreements, directed how the money was to be used, the pleading is sufficient to state a plausible claim under *Masvidal*.").

Here, Adana has alleged a conversion that goes beyond and is independent from the terms of the loans. This is not a matter of WVP, the only borrower under the loan agreements, simply not repaying the funds by the due date. Rather, Adana has alleged that individuals and entities that were <u>not</u> parties to the loan agreements misappropriated the loan proceeds for their own use. *See* Compl., at ¶¶ 74–77, 97, & 98 (alleging FCC, FCP, McConley, and Van Eman converted the funds); *id.* at ¶¶ 62, 86, & 93 (alleging that only Adana and WVP Holding were parties to the loan agreements). As such, the conversion claims go well beyond the terms of the loan agreements between Adana and WVP Holding.

Second, because the individuals and entities alleged to have concerted the funds were <u>not</u> parties to the loan agreements, Adana is not obligated to specifically identify the funds. *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1109 (11th Cir. 1998) (holding that the "specific fund requirement" is inapplicable where "[t]here was no contractual relationship between [plaintiff] and the persons who converted the [funds]"). That said, Adana has sufficiently identified the funds that have been converted, because Adana has alleged that each tranche of the funds was "delivered at one time, by one act and in one mass." *See Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970) ("[m]oney is capable of identification where it is delivered at one time, by one act and in one mass"); *see, e.g.*, *Mandel v. Howard*, Case No. 11–23620–Civ, 2012 WL 1069182, at *5 (S.D. Fla. Mar. 29, 2012) (denying motion to dismiss conversion claim where plaintiff "identifie[d] eight transactions by the date the transaction occurred, the specific amount of money transferred, and the company or person who

received the transfer"); *Galstaldi v. Sunvest Cmty. USA, LLC*, 637 F. Supp. 2d 1045, 1060 (S.D. Fla. 2009) (denying motion to dismiss conversion claim, in the absence of allegations of a discrete account, where plaintiff alleged payments were made "at one time, by one act, in one mass"). More specifically, Plaintiff has identified the date of each of the three deposits, the amount of each of the three deposits, and the holder and number for the account into which each tranche of the funds was deposited. *See* Compl. ¶¶ 63, 88, 95, 149–152. In addition, contrary to Defendants' characterizations of the Complaint, Plaintiff also has alleged that these funds were to be held in a specific account, and that "ADANA's loan proceeds would not be removed from the account without ADANA's express consent." *Compare id.* ¶¶ 60, 65, 85, *with* Bermudez Motion, at 5. As such, to the extent Adana is required to specifically identify the funds (which it is not), it has done so.

Third, Defendants' claim that Adana has failed to plead that it has a right to possess the funds is undermined by the fact Adana has alleged that, under the terms of the loan agreements, it had an immediate right to possess the converted funds. *See, e.g.*, Compl. ¶¶ 131–133. Defendants' challenges to this allegation all turn on denials of the allegations or assumed facts outside the Complaint, which are not appropriate grounds for a motion to dismiss. *See Nelson*, 2013 WL 1442202, at *1. For instance, Defendants' suggestions that the lines of credit would give the Bank the right to possession of the funds, *see* Advisors Mot., at 5; Bermudez Mot., at 5, are negated by Adana's allegation that "there never was a line of credit." *See* Compl. ¶ 73. Additionally, Defendants' contention that Adana was not entitled to possession of the funds because it "exchanged its right to possess the loan proceeds for the contractual right to be paid," *see* Advisors Mot., at 5; Bermudez Mot., at 5, assumes facts about the terms of the loan agreements (and, apparently, assumes there is no default provision) that are not present on the face of the Complaint. At this stage, Adana is required only to put Defendants on notice of its claims, not prove them. By pleading that the loan agreements gave Adana the right to possess the funds, Adana has satisfied its pleading obligations.[10]

---

[10]     Lest there be any doubt, under the terms of the loans agreements, Adana was a secured lienholder with an immediate right of possession of the funds upon WVP's breach. Under Eleventh Circuit precedent, "[a] lienholder is considered to be an 'owner' for the purposes of conversion if he has a present right of possession." *Bel-Bel Int'l Corp.*, 162 F.3d at 1108.

Accordingly, because none of the Defendants' challenges to the underlying conversion claims has any merit, the Court should find that Adana has sufficiently alleged the conversion of its funds.[11]

### ii.   Knowledge and Substantial Assistance

Defendants Advisors, Zoch, and Bermudez argue that Adana has not sufficiently pled the elements of actual knowledge and substantial assistance.[12] *See* Advisors Mot., at 5–12; Bermudez Mot., at 5–7. They claim that Adana's allegations amount to nothing more than "red flags" that were missed; that the employees' roles in the scheme were "minor," at best. *See* Advisors Mot., at 9–10. The clear allegations of the Complaint put these arguments to rest: each of Advisors, Zoch, and Bermudez played an indispensable role in the scheme that victimized Adana, and did so with the required degree of knowledge.[13]

First, Adana has not alleged merely "red flags" that went unheeded. Adana has alleged that employees of both the Bank and Advisors actively participated in the Forrest Capital Parties' scheme. This participation included pitches to potential lenders, verbal misrepresentations about the magnitude of the Forrest Capital Parties' assets, verbal and written misrepresentations that the lender's funds would be held in restricted accounts, and written misrepresentations about the status of the loan proceeds to conceal the conversion. Such conduct is a far cry from, for example, failing to follow up on an inconsistency or omission in transaction documents. Adana has alleged active use of the instrumentalities of the Bank and Advisors to conduct a months-long Ponzi scheme. Adana has alleged that months before Adana was defrauded, the Bank and Advisors had already been sued by one of the Forrest Capital Parties' earlier victims. There can be no question that the Bank and Advisors had actual knowledge of the Forrest Capital Parties' fraudulent scheme.

---

[11]     The extent the Court requires additional facts in support of the underlying conversion claim, Adana requests leave to amend.

[12]     Other than to argue that the knowledge and conduct of Rafael and Bermudez should not be imputed onto it, the Bank does not challenge the sufficiency of the allegations of actual knowledge or substantial assistance.

[13]     The extent the Court requires additional facts in support of the actual knowledge and substantial assistance elements, Adana requests leave to amend.

Courts have found that allegations that a the Bank "vouched" for the fraudster, "disregarded overtly suspicious activity," provided letters that purported to restrict funds when no such restrictions were in place, permitted accounts to remain open despite receiving a notice that the account holders may be engaged in a fraud, and provided documents misrepresenting account balances were sufficient to allege both the actual knowledge and substantial assistance elements of an aiding and abetting claim. *See, e.g.*, *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014) (denying motion to dismiss aiding and abetting claim where the Bank "disregarded overtly suspicious activity," and "provid[ed] letters that 'vouched' for Defendant"); *Coquina Inv. v. Rothstein*, Case No. 10-60786-CIV, 2011 WL 197241, at *6 (S.D. Fla. Jan. 20, 2011) (denying motion to dismiss aiding and abetting claim where the Bank's employee "sign[ed] fraudulent or misleading letters purporting to restrict funds in a TD the Bank account for the sole benefit of the Plaintiff, when in fact there was no restriction on the funds, and [] generat[ed] fraudulent documents misrepresenting [Plaintiff]'s account balances"); *Lesti*, 960 F. Supp. 2d at 1325 (denying motion to dismiss aiding and abetting conversion claim, and finding that plaintiff plausibly alleged actual knowledge and substantial assistance where Wells Fargo permitted accounts to remain open despite receiving notice that its account holder may be engaged in fraud and conducting an investigation); *see also*, *cf.* *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 995–96 (11th Cir. 2014) (reversing denial of leave to amend where plaintiff sought to allege facts that the Bank permitted an account to remain open for multiple months despite its fraud and loss management departments detecting and confirming questionable activity sufficient to close the accounts).

In that vein, the cases replied upon by Defendants, *Perlman*, *Wiand*, and *Lawrence*, are readily distinguishable. In each, the plaintiff asked the Court to infer actual knowledge based on the Bank ignoring or failing to investigate "red flags," "procedural oddities," and "atypical transactions." *See Perlman*, 559 F. App'x at 993 ("Perlman alleges a multitude of atypical transactions and procedural oddities"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1246 (M.D. Fla. 2013) (the facts the Receiver relies on are no more than "red flags"); *Lawrence*, 455 F. App'x at 907 ("Plaintiffs alleged the transactions were atypical"). Such "red flags," "procedural oddities," and "atypical transactions" pale in comparison to what is alleged here.

13

### *Zoch's Knowledge and Substantial Assistance*

Zoch and his <u>current</u> employer, Advisors, try to downplay his role in the Forrest Capital Parties' scheme by claiming "that, *at most*, he may have been aware of atypical transactions related to FCP's accounts," and by relegating his involvement to "attend[ing] only a <u>single</u> meeting." *See* Advisors Mot., at 6 & 7 (emphasis in original). Given that the purpose of that "single meeting," held on premises at Advisors, was to pitch to Mr. Burlingham and Mr. Vandermolen to satisfy their due diligence questions on behalf of potential lenders, Zoch's role at that meeting is more than sufficient, as a matter of law, to constitute substantial assistance.[14] During this pitch, Zoch represented that the Forrest Capital Parties had assets on deposit that far exceeded what they actually had. *See* Compl. ¶¶ 39 & 40. Although omitted from Advisors' and Zoch's summary of misrepresentations in their Motion, the Complaint also alleges that Zoch misrepresented that "FCP had $100 million in assets with WELLS FARGO ADVISORS that was dedicated to investing in Weathervane's film financing projects." *See id.* ¶ 41. Mr. Burlingham and Mr. Vandermolen later relayed Zoch's misrepresentations to Adana, who, in turn, relied on them. *See, e.g.*, *id.* ¶¶ 36 & 83.

As the Forrest Capital Parties' financial advisor, Zoch would have known those statements were false. That he knowingly made such false statements at a pitch to potential lenders in order to induce them to lend funds to WVP leads to the inescapable inference that he had knowledge of the Forrest Capital Parties' fraudulent scheme. It also qualifies as substantial assistance. *See e.g.*, *Gevaerts*, 56 F. Supp. 3d at 1342; *Coquina Inv.*, 2011 WL 197241, at *6; *Lesti*, 960 F. Supp. 2d at 1325.

Indeed, the sole case relied upon by Zoch and Advisors for the proposition that Zoch's role in the scheme was too minor to qualify as "substantial assistance" actually suggests that Zoch's conduct is the exact type that would qualify as "substantial assistance." *See* Advisors Mot., at 10–11 (citing *Richter v. Wells Fargo Bank NA*, Case No. 2:11-CV-695-FTM-29, 2015 WL 163086 (M.D. Fla. Jan. 13, 2015)). In *Richter*, the court ruled on summary judgment that the

---

[14]     It does not matter that Adana was not present at the meeting, that Zoch did not know about Adana, or that Adana was not yet a potential lender, because Zoch knew that his misrepresentations would be relayed to potential lenders and Adana eventually become a member of that class. *See Koch v. Royal Wine Merch., Ltd.*, 907 F. Supp. 2d 1332, 1345 (S.D. Fla. 2012) ("It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given." (internal citations omitted).

Bank's inaction (again, the same Bank) in failing to freeze an account after the alleged conversion, standing alone, was too minor in the grand scheme to constitute "substantial assistance." 2015 WL 163086, at *4. In finding the Bank's inaction to be minor, the *Richter* Court specifically noted that there was no evidence that the Bank played a role in convincing the plaintiff to invest in the scheme, indicating that such conduct would have qualified as "substantial assistance." *See id.* That is precisely what Adana alleges Zoch did here.

### *Bermudez' Knowledge and Substantial Assistance*

Adana has alleged that Bermudez opened the business the Bank accounts in the names of FCC and FCP, and that, when he did so, he did "not follow [the] Bank's procedures relating to the opening of business the Bank accounts." *See* Compl. ¶¶ 113 & 114. Adana has also alleged that Bermudez was an associated the Banker for the "FORREST CAPITAL & COMPANY Relationship," and then, on the very same day Adana made its first loan, for the "MCCONLEY, BENJAMIN & Forrest Capital Relationship." *See id.* ¶¶ 111. Adana has further alleged that Bermudez was the Banker contact when the Forrest Capital Parties defrauded Dane Miller almost a year before they defrauded Adana. *See id.* ¶ 120. Adana also alleges that, on the very same day, the Bank closed the Forrest Capital Parties' accounts for "Loss Prevention," Bermudez proceeded to open new accounts in the name of "FCP Master Holdings LLC," with McConley's brother as the signatory, so that the Forrest Capital Parties could continue their scheme. *See id.* ¶ 127.

These allegations, taken as a whole, lead to the inference that Bermudez had actual knowledge of the Forrest Capital Parties' scheme. Given this knowledge, Bermudez' maintenance of the "relationship" between the Forrest Capital Parties and the Bank and/or Advisors and the opening and management of their accounts constitutes substantial assistance in their scheme. Given these allegations, construed in the light most favorable to Plaintiff, the Court should deny Bermudez' Motion.[15]

---

[15]     To the extent the Court requires additional factual allegations of Bermudez' actual knowledge of the Forrest Capital Parties' scheme, Adana requests leave to amend. In addition to the allegations in the Complaint, Adana would proffer allegations about Bermudez' active role in defrauding at least two other victims of the Forrest Capital Parties' scheme, which occurred during substantially the same timeframe as when Adana was defrauded. These allegations would include reference to a series of emails from summer and fall 2015, among Bermudez, McConley, Van Eman, and the other victims, in which Bermudez reprises Rafael's role as the Bank's banker who lies to the victims about FCP making a matched contribution. That Bermudez was actively engaged in the defrauding of other victims leads to the reasonable inference that he had actual knowledge that the Forrest Capital Parties were using their

### *Advisors' Knowledge and Substantial Assistance*

As set forth in Section III.B, Advisors had knowledge of and substantially assisted in the conversion through its employees. In addition, Adana has also alleged that Advisors had knowledge of the Forrest Capital Parties' scheme independent of the knowledge of its employees by virtue of being a named defendant and participating in the *Buzbee* action, and that it substantially assisted by failing to close accounts. *See* Compl. ¶¶ 121–125.

In its Motion, Advisors makes much of the fact that it did not receive notice of *Buzbee* case until after Zoch took part in the pitch to the Forrest Capital Parties' lenders. *See* Advisors Mot., at 8–9. The sequence of these events is irrelevant, as both occurred prior to Adana depositing the loan proceeds. Advisors also asserts that it could not have substantially assisted, because Advisors and Zoch could not have had access to accounts at the Bank. *See* Advisors Mot., 11. Adana, however, has alleged that the Bank and Advisors worked in tandem, through shared employees, to service customers of the Wells Fargo Private the Bank segment. *See* Compl. ¶¶ 8–11. This is further demonstrated by the fact that Bermudez, whose title was "Regional Bank Private Banker," was employed by the Bank while simultaneously a registered broker with Advisors, and by the fact that Zoch, who is an employee of Advisors, was able to control whether Bermudez was associated with certain "customer relationships." *See id*. ¶¶ 24, 26, & 111. Given these allegations, Advisors cannot escape liability for substantially assisting this scheme by simply denying it had access to the accounts. *See Nelson*, 2013 WL 1442202, at *1 ("A denial is not a basis or ground to grant a motion to dismiss since the Court is required to accept the all of the allegations of the complaint as true.").

### *The Bank's Knowledge and Substantial Assistance*

As set forth in Section III.B, the Bank had knowledge of and substantially assisted in the conversion through its employees. In addition to the imputed knowledge of Rafael and Bermudez, Adana has alleged that the Bank had actual knowledge of the Forrest Capital Parties' scheme based on its monitoring of Rafael's emails,[16] and "by virtue of being [a] named

---

accounts at the Bank to defraud lenders and convert the loan proceeds. One of these defrauded victim has since sued the Forrest Capital Parties in California.

[16]   Presumably, there were additional emails between Rafael and the Forrest Capital Parties that would have provided actual notice to the Bank. The Bank, however, deleted the entirety of Rafael's email account upon his termination.

defendant[] in the *Buzbee* case" in November 2014. *See* ¶¶ 121–125, 143, 145. Adana has also alleged that, independent of the conduct of Rafael and Bermudez, that the Bank substantially assisted in the conversion by "failing to shut down and/or prevent the opening of accounts in the name of and/or controlled by FCC and FCP after receiving actual knowledge that FCC and FCP were using their accounts at . . . WELLS FARGO BANK to perpetrate a fraudulent film financing scheme to convert lenders' funds." *See* Compl. ¶ 146. These allegations, standing alone, are sufficient to state the elements of actual knowledge and substantial assistance against the Bank,[17] and the Bank does <u>not</u> challenge the sufficiency of them. As such, even if the Court were to find that additional allegations are necessary to support the inference that Rafael and Bermudez were acting within the scope of their employment (it should not), that finding would not impact the viability of Count I against the Bank.

### D.  Adana Has Sufficiently Pled the Fraudulent Misrepresentation Claims.

Adana asserts fraudulent misrepresentation claims against the Bank, Advisors,  and Zoch. To state a cause of action for fraudulent misrepresentation, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985) (*citing Huffstetler v. Our Home Life Ins. Co.*, 67 Fla. 324 (1914)). Pursuant to Fed. R. Civ. P. 9(b), Plaintiff's fraudulent misrepresentation claim must be "stated with particularity." *See* Fed. R. Civ. P. 9(b). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988) (emphasis in original).

Collectively, the Bank, Advisors, and Zoch make four challenges to the sufficiency of the fraudulent misrepresentation claims, each of which should be rejected.[18]

First, the Bank, Advisors, and Zoch argue that the complaint "fails to show that Plaintiff relied on any representations by Wells Fargo," because the misrepresentations were made to Mr.

---

[17]     *See Gevaerts*, 56 F. Supp. 3d at 1342; *Perlman*, 559 F. App'x at 995–96.

[18]     The first three arguments were briefed by The Bank, and joined by Advisors and Zoch. *See* The Bank Mot., at 17–19; Advisors Mot., at 1 (adopting The Bank's arguments on pages 10–19). The fourth argument under Rule 9(b) was made by Advisors and Zoch only, as The Bank did not join in their Motion. *See* Advisors Mot., at 12–13.

Burlingham and Mr. Vandermolen, and not directly to Adana. *See* Bank Mot., at 17–18. This is a distinction without a difference. Under Florida law, there is no requirement that Mr. Burlingham and Mr. Vandermolen be agents of Adana, as long as Zoch and Rafael intended or expected their misrepresentations to be repeated to the ultimate victim. *See Koch*, 907 F. Supp. 2d at 1344–45 (citing Rest. (Second) of Torts § 533 (1977)). Moreover, where, as here, the misrepresentations are fraudulent, there is no requirement that Zoch or Rafael even know the identity of Adana as long as they intended or expected their misrepresentations to repeated to potential lenders in general. *See id.*, at 1345 ("It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given." (internal citations omitted)).

Here, Adana has alleged that Mr. Burlingham and Mr. Vandermolen were conducting due diligence on behalf of Adana, and that each misrepresentation made by either Zoch or Rafael, on behalf of their respective employers, to Mr. Burlingham and Mr. Vandermolen was, in turn, relayed to Adana, which then relied on it. *See* Compl. ¶¶ 35, 36, 47, 53. That Zoch and Rafael made their misrepresentations to Mr. Burlingham and Mr. Vandermolen in the context of pitching the potential deals to potential lenders means they intended or expected that Mr. Burlingham and Mr. Vandermolen would relay those misrepresentations to the potential lender. As such, Adana has sufficiently alleged that it received and relied upon the misrepresentations that were made by Rafael, on behalf of the Bank, to Mr. Burlingham and Mr. Vandermolen.

In addition to the representations passed on through Mr. Burlingham and Mr. Vandermolen, Adana alleges misrepresentations that were made directly to Adana by Rafael, on behalf of the Bank. Those representations include those made in Rafael's May 2, 2015 email, as well as the May 12, 2015 and June 18, 2015 letters on the Bank letterhead.[19] *See id*. ¶ 70 ("on June 2, 2015, RAFAEL, from his WELLS FARGO BANK email address (benjamin.rafael@wellsfargo.com), emailed the following representation to ADANA"); *see id*. ¶¶ 60 & 85. Considering the May 12 and June 18 letters—each of which was on the Bank letterhead and "signed by RAFAEL as 'Duly authorised signatory for and on behalf of WELLS FARGO BANK, N.A.'"—the Bank is simply incorrect when it claims that "[t]he only written

---

[19]     In addition to those letters being provided to Adana, each of those letters was addressed to Adana. To the extent the Court deems it necessary, Adana requests leave to add that allegation.

statement purportedly directly attributable to a Wells Fargo employee is the statement in Rafael's June 2, 2015 e-mail . . . ." *See* Bank Mot., at 18.

The Bank's second argument, that the allegations do not support the inference that Rafael intended for Adana to rely on his June 2 email, is similarly misguided. *See* Bank Mot., at 18. The Complaint plainly alleges that "RAFAEL, from his WELLS FARGO BANK email address (benjamin.rafael@wellsfargo.com), emailed the following representation to ADANA[.]" *See* Compl. ¶ 70. That Rafael sent the email to Adana after being asked to do so does not negate the inference that he intended Adana, on one of the email's recipients, to rely on its contents, particularly where, as here, all inferences must be construed in favor of Adana. *See Benson*, 61 F. Supp. 3d at 1279.

The Bank's third argument, that "[t]he complaint fails to allege any actionable representations by Wells Fargo," is similarly without merit. *See* Bank Mot., at 17–19. As an initial matter, the Bank misstates Florida law when it claims that "[a] claim for fraudulent misrepresentation may be based only on a false statement concerning a specific material fact, not on general statements or promises to do or not do something at some unspecified future time." *See* Bank Mot., at 19 (citing *Thompkins v. Lil' Joe Records*, 476 F.3d 1294, 1315-16 (11th Cir. 2007)). Rather, as the case relied on by the Bank makes clear:  "Under Florida law, a fraud claim cannot be premised on a promise to do something in the future <u>except where the promise 'is made without any intention of performing or made with the positive intention not to perform.</u>'" *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1316 (11th Cir. 2007) (emphasis added); *see also Democratic Republic of Congo v. Air Capital Grp., LLC*, Case No. 12-20607-CIV-UU, 2012 WL 12549575, at *5 (S.D. Fla. May 21, 2012) (J. Ungaro) ("There is an exception to this rule 'where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform.'" (internal citation omitted)). Here, the representations about the Bank's willingness to extend credit and hold the loan proceeds in restricted accounts are actionable, because, pursuant to the scheme, the Bank was never going to do either of these things. The remaining misrepresentations listed by the Bank are neither "vague and general" nor "promises to take future action."[20] *See* Bank Mot., at 18. For instance, Zoch's representation that "FCP had $100 million in assets with WELLS FARGO

---

[20]     The Bank does not challenge the misrepresentations made in the May 12 letter, the June 18 letter, or the June 2 email.

ADVISORS that was dedicated to investing in Weathervane's film financing projects" when, in reality, FCP had far less than $100 million on deposit with Advisors cannot possibly be construed as "a mere broken promise." *Cf. Plantation Key Dev., Inc. v. Colonial Mortg. Co. of Indiana*, 589 F.2d 164, 172 (5th Cir. 1979) ("Although such action is not condoned, a mere broken promise does not constitute fraud."). Accordingly, the Court should reject this argument.

Advisors and Zoch's fourth challenge to the fraudulent misrepresentation claims should as be rejected because it relies on an incorrect interpretation of the Rule 9(b) pleading requirements. Advisors contends that Adana's Complaint fails to allege that Advisors or Zoch "'gained' anything by the alleged fraud." *See* Advisors Mot., at 12 (citing to *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997)). In *Brooks*, the Eleventh Circuit recognized that although "Rule 9(b) *may* be satisfied" if the complaint sets forth certain details of fraudulent misrepresentations, including "what the defendants 'obtained as a consequence of the fraud,'" it also acknowledged that "alternative means are also available to satisfy the rule." 116 F.3d at 1371 (citing *Durham,* 847 F.2d at 1512) (emphasis added).

Here, for each of the fraudulent misrepresentations, Adana has alleged the maker, the date, the means if written or the location if verbal, the substance, and the recipient. *See* Compl. ¶¶ 37–42. These particulars are more than sufficient to meet the requirements of Rule 9(b). *See Durham*, 847 F.2d at 1512 ("Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity"); *see also Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1305–06 (S.D. Fla. 2013) (J. Ungaro) ("To satisfy Rule 9(b), a plaintiff must establish the who, what, when, where, and how of a fraud." (internal citation omitted)); *see also, e.g.*, *Coquina Inv.*, 2011 WL 197241, at *6 (denying motion to dismiss fraudulent misrepresentation claim where plaintiff "sufficiently plead the who, what, where, when, and how of TD the Bank's alleged misrepresentations"). Accordingly, the Court should find that Adana's allegations satisfy Rule 9(b).[21]

IV.   CONCLUSION

For the foregoing reasons, Adana respectfully requests that the Court deny Defendants' Motions to Dismiss in their entirety. Alternatively, to the extent the Court requires additional facts to be pled in support of Adana's claims, Adana requests leave to amend.

---

[21]   To the extent the Court requires Adana to plead additional facts in support of the fraudulent misrepresentation claims or to satisfy Rule 9(b), Adana requests leave to amend.

Dated:  July 11, 2016

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ John D. Couriel
John D. Couriel
Fla. Bar No. 831271
Stephanie L. Hauser
Fla. Bar No. 92765
2 South Biscayne Boulevard
Miami, FL 33131
Tel: +1 305 967 6100
Fax: +1 305 967 6120
john.couriel@kobrekim.com
stephanie.hauser@kobrekim.com

*Attorneys for Plaintiff Adana Investing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed on July 11, 2016, with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified in the following Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ John D. Couriel
John D. Couriel

## SERVICE LIST

Lauren R. Whetstone
Joseph A. Vallo
Beth A. Black
GREENBERG TRAURIG LLP
Phillips Point - East Tower
777 S Flagler Drive, Suite 300E
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
Email: whetstonel@gtlaw.com;
valloj@gtlaw.com; blackb@gtlaw.com
*Counsel for Defendants*
*Wells Fargo Advisors, LLC and Paul Zoch*

Justin L. Dees
Charles M. Harris
Stephanie S. Leuthauser
Beth A. Cronin
TRENAM KEMKER
200 Central Avenue, Suite 1600
St. Petersburg, Florida 33701
Telephone: (727) 896-7171
Facsimile: (727) 820-0835
Email: jdees@trenam.com;
charris@trenam.com;
sleuthauser@trenam.com;
bcronin@trenam.com
*Counsel for Defendant Wells Fargo Bank, N.A.*

Barbara J. Riesberg
RIESBERGLAW
Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, Florida 33133
Telephone: (305) 371-9617
Email: Barbara@riesberglaw.com
*Counsel for Defendant Hernan Bermudez*

Donald Thomas
LEWIS & THOMAS, LLP
165 East Palmetto Park Road
Suite 200
Boca Raton, FL 33432
Tel.: (561) 368-7474
Email: don@beltlawyers.com
*Counsel for Defendant Benjamin Rafael*