UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16-cv-21562-UNGARO/ OTAZO- REYES

ADANA INVESTING, INC.,

　　Plaintiff,

vs.

WELLS FARGO BANK, N.A. et al.,

　　Defendants.
_____/

**DEFENDANT HERNAN BERMUDEZ' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

　　Defendant Hernan Bermudez ("*Bermudez*"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, and Local Rule 56.1, moves for summary final judgment on the single claim for aiding and abetting conversion asserted against him by Plaintiff, Adana Investing, Inc. ("*Adana*").

**INTRODUCTION**

　　Bermudez is entitled to summary judgment as a matter of law based upon the undisputed material facts. There is a lack of significantly probative evidence upon which a jury could reasonably find him liable for aiding and abetting conversion of Plaintiff's funds.

　　This case arises from a film financing scheme orchestrated by, among others, non-parties Benjamin McConley, Jason Van Eman, Forrest Capital Partners, Inc., Forrest Capital & Co., LLC, Weathervane Productions, LLC, and WVP Holding, LLC (collectively, the "*Forrest Capital Parties*.").

　　The scheme involved the use of two accounts held at Wells Fargo Bank ("*WFB*") opened by the Forrest Capital Parties at the 1395 Brickell Avenue Branch in Miami (the "Miami

Accounts").[1] As a result of the scheme, Adana's funds were deposited into one of the Miami Accounts in three separate wire transactions (the "Adana Funds") and thereafter converted by the Forrest Capital Parties.

Bermudez was employed during the relevant period at WFB's Commercial Boulevard Branch in Fort Lauderdale. Bermudez had nothing to do with the Miami Accounts – he did not open them, nor was he the banker responsible for managing them.

Discovery has revealed that Bermudez was a complete stranger to the Adana transactions. He never had any communications with Adana or its representatives: *no* meetings, *no* telephone calls, *no* emails, *no* letters, and *no* text messages.

In late-October 2015, after the Adana Funds had been converted, Bermudez received two emails from Adana's lawyers in London inquiring about the status of Adana's funds. This was the first time that Bermudez heard the name "Adana." Bermudez never responded to the emails and instead forwarded them to the WFB compliance department.

Adana has no direct evidence that implicates Bermudez in substantially assisting the conversion of the Adana Funds. Moreover, the circumstantial evidence is so negligible that no reasonable jury could conclude that Bermudez provided "substantial assistance" to the underlying conversion of the Adana Funds. Accordingly, because Adana cannot muster the quantum of proof necessary to establish aiding and abetting liability, the Court should grant summary final judgment to Bermudez.

## UNDISPUTED MATERIAL FACTS

In lieu of repetition, Bermudez incorporates and adopts his contemporaneously filed Statement of Undisputed Materials Facts ("**UMF**") as if fully set forth herein.

---

[1] / The Miami Accounts include two accounts: one ending in 5075 (the "5075 Account") and one ending in 5059 (the "5059 Account").

## THERE IS NO SIGNIFICANTLY PROBATIVE EVIDENCE THAT BERMUDEZ SUBSTANTIALLY ASSISTED IN THE CONVERSION OF THE ADANA FUNDS

### A. The Summary Judgment Standard.

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp.* 357 F.3d at 1260; *see Underwriters At Lloyds Subscribing to Cover Note MC-1151 v. Fedex Truckload Brokerage, Inc.,* 2010 WL 2681224, *2 (S.D. Fla. July 7, 2010) ("A genuine dispute requires more than 'some metaphysical doubt as to the material facts.'") (citation omitted)).

Rule 56(c) "mandates" the entry of summary judgment if a plaintiff fails to make a showing sufficient to establish the existence of an element essential to its case and on which the plaintiff will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

Here, summary judgment in favor of Bermudez is appropriate on the single claim against him for aiding and abetting conversion because Adana has not adduced "significantly probative" evidence to satisfy the element of substantial assistance.

### B. There is No Significantly Probative Evidence That Hernan Bermudez Provided "Substantial Assistance" To the Underlying Conversion.

The elements necessary to prove aiding and abetting conversion under Florida law are: (1) an underlying conversion on the part of the primary wrongdoer; (2) knowledge of the underlying conversion by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the conversion by the alleged aider and abettor. *See, e.g., Lawrence v. Bank of Am., N.A.,* 455 Fed. Appx. 904, 906 (11th Cir. 2012); *LBS Petroleum, LLC v. Demir*, 1:15-CV-22880-UU, 2015 WL 12469064, at *11 (S.D. Fla. Oct. 28, 2015).

Assuming, arguendo, for purposes of this summary judgment motion only, that an underlying conversion occurred (first element) and that Bermudez had actual knowledge of it (second element), the Court should nevertheless grant summary judgment in favor of Bermudez. There is insufficient evidence from which a jury could reasonably conclude that Bermudez provided "substantial assistance" as required by the third element.

The outcome of this motion should be governed by the recent decision in *Richter v. Wells Fargo Bank NA*, 2:11-CV-695-FTM-29, 2015 WL 163086, at *3–5 (M.D. Fla. Jan. 13, 2015), which analyzed the law applicable to the issue of "substantial assistance" in the similar factual context of a claim against a bank for aiding and abetting conversion and granted summary judgment to the bank due to insufficient evidence of substantial assistance.

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying violation] to occur." *Richter*, 2015 WL 163086, at *3; *see also Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350 (M.D. Fla. 2014) (same); *BCJJ, LLC v. LeFevre,* No. 09–CV–551, 2012 WL 3071404, at *34 (M.D. Fla. July 27, 2012) (same); *Hines v. FiServ, Inc.,* No. 8:08–cv–2569–T–30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010) (same).

"[A] failure to act, where there is no duty to act, is not substantial assistance." *Richter*, 2015 WL 163086, at *3 (quoting *Hines v. FiServ, Inc.,* No. 08–CV–2569, 2010 WL 1249838, at *4 (M.D. Fla. Mar.25, 2010)).[2] In addition, "[a [defendant does not provide substantial assistance unless his action, or inaction, was a 'substantial factor in causing the [underlying violation].'" *Richter*, 2015 WL 163086, at *3 (citing *In re Palm Beach Fin. Partners,* L.P., 517 B.R. 310, 348-49 (Bankr. S.D. Fla. 2013)). "Thus, substantial assistance 'will not be found where '[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme.'" *Richter*, 2015 WL 163086, at *3 (citing *Palm Beach Fin. Partners*).

Here, as discussed below, there is no evidence that Bermudez (i) "affirmatively assist[ed]", (ii) "help[ed] conceal," or (iii) "fail[ed] to act when required to do so." *See Richter,* 2015 WL 163086, at *3.

### i. *There Is No Significantly Probative Evidence That Bermudez Affirmatively Assisted in the Underlying Conversion*.

Almost a dozen witnesses have been deposed in this case, and tens of thousands of pages of documents have been exchanged. There is no testimony, nor are there documents, reflecting any affirmative involvement by Bermudez at any stage of the underlying scheme to convert the Adana Funds, let alone any involvement that could be construed as "substantial."

The record evidence adduced during discovery reveals that neither Adana nor any of its representatives had even heard Bermudez's name until two months *after* the last transaction had been funded, which was also two months *after* the proceeds had been withdrawn by the Forrest Capital Parties. *See* UMF ¶¶ 12-14.

---

[2]   Here, Adana has not brought a claim for negligence, nor has it alleged that Bermudez owed a fiduciary duty to Adana, and therefore cannot argue that Bermudez is liable due to his "inaction." *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (holding that "[m]ere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'") (citation omitted)).

The absence of any communication between Adana and Bermudez was reluctantly acknowledged by Simon Groom, Adana's corporate representative, at his deposition:



Deposition of Simon Groom (11/22/16), Vol. II, at 245-46; *see* UMF at ¶ 14 & Exhibit K.

Mr. Groom admitted that neither he nor Adana's lawyers had ever communicated or corresponded with Bermudez before the conversion occurred.



Groom Depo. at 347-48; *see* UMF at ¶ 14 & Exhibit K.

Adana's three lawyers in London confirmed that they had never communicated with Bermudez and never even attempted to communicate with Bermudez until October 2015. *See* Deposition of Marc Trottier (2/2/17) Vol. II at 288-90; Deposition of Graham Shear (1/31/17) Vol. 1 at 37; Deposition of Simon Clarke (2/2/17) at 44; UMF at ¶ 14 & Exhibits I, J, & K.

The account statements for the Miami Accounts demonstrate that the Adana Funds had already been wrongfully taken, and thus converted, before Bermudez even heard of Adana and before Adana's lawyers even tried to contact Bermudez in October 2015. The 5075 Account, owned by Forrest Capital & Co, reflects three separate deposits by Adana:

 a) $15 million on May 15, 2015;
 b) $2,242,480 on June 22, 2015; and
 c) $11,299,980 on July 13, 2015 (the "Adana Funds").

*See* UMF at ¶ 6 & Exhibit B.

By the end of July 2015, the Adana Funds had been transferred to the account ending in 5059, which was owned by an affiliated entity, "Forrest Capital Partners, Inc.," and then withdrawn at various times and amounts until the 5059 Account was substantially depleted by July 27, 2015. *See* UMF at ¶ 7 & Exhibit C.

Bermudez had no contemporaneous awareness that any of these transactions were occurring. UMF at ¶ 11. The first time he heard the name "Adana" was when he received the October 20, 2015 emails from Adana's lawyers in London inquiring as to the status of the Adana Funds. *See* UMF at ¶ 12. By this time, the money was already gone.

This is significant because, pursuant to the Funding Agreements and the letters sent to Adana (purportedly) signed by Benjamin Rafael required the Adana Funds to be held in a

"master account" and not transferred or removed without Adana's prior express written consent. *See* UMF ¶¶ 9-10 & Exhibit D (Funding Agreement) at p. 5, ¶ 5(E) ("At no time shall there be any transfer or removal of the Bridge Finance from the Master Account without the prior express written consent of ADI.") & Exhibit E (May 12, 2015 Letter) at p. 1, ¶ 4(b) ("At no time shall there be any transfer or removal of the Bridge Finance from the Master Account without the prior express consent of ADI.").

Thus, the conversion of the Adana Funds had been completed **two months** before Bermudez even heard the name "Adana" (and two months before Adana heard the name Bermudez). Because the money had already been converted, nothing Bermudez did after that point would have constituted any type of "assistance." This is similar to the facts and conclusion reached by the *Richter* court, which reasoned:

> The nature of a claim of conversion is also relevant. The last act necessary to make a defendant liable for the tort of conversion occurs when the wrongdoer exercises wrongful dominion and control over the property to the detriment to the rights of its actual owner. *Envases Venezolanos, S.A. v. Collazo,* 559 So.2d 651, 652 (Fla. 3rd [sic] DCA 1990). **The conversion is complete upon the wrongful deprivation of the property**, not the acquisition of the property by the wrongdoer. *Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc.,* 759 F.2d 873, 878 (11th Cir. 1985) ("**The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation**."); *see also Collazo,* 559 So.2d at 652–53 (collecting cases).
>
> It is undisputed that all of the proceeds from the Ponzi scheme were taken from the Wells Fargo PCOM Accounts before December 15, 2007. By that time, the 7271 Account had been closed for over a month, and the 5057 Account had a negative balance that was never recouped. None of the ministerial activity taken by Wells Fargo thereafter aided or abetted the conversion by Engler or Fuchs in any way. … Simply transferring money from the Personal Accounts to Fuchs did not provide substantial assistance to the completed conversion.

*Richter,* 2015 WL 163086, at *4 (emphasis added).

8

Applying the holding in *Richter* to the facts here, summary judgment should be entered in favor of Bermudez because the scheme to convert Adana's funds was already a *fait accompli* by the time Bermudez learned that Adana existed. Thus he cannot be said to have affirmatively assisted in the underlying conversion.

### ii. *There Is No Significantly Probative Evidence That Bermudez Concealed the Underlying Conversion*.

Similarly, there is no evidence that Bermudez helped "conceal" the underlying conversion. In fact there is evidence to the contrary: upon receiving the emails on October 20, 2015 from Adana's lawyers in London, Bermudez took prudent action by forwarding the emails to the compliance department.

Even Adana's corporate representative could not fault Bermudez for his silence, especially given that Adana was not a customer of WFB. *See* Groom Depo. (11/22/16), Volume II, at 365 ( ███████████████████████████████████████████████████████████████████████████████████████████ ); *see* UMF at ¶ 16.

Even if Bermudez knew about the underlying conversion, because he took no further action other than forwarding the two emails to compliance, there is no significantly probative evidence that he "concealed" the underlying conversion.

### iii. *There Is No Significantly Probative Evidence That Bermudez Owed A Duty To Adana To Take Action*

Finally, there is no legitimate basis to claim that Bermudez substantially assisted the underlying conversion by virtue of his "inaction." Adana has not brought a claim for negligence,

9

nor has it alleged that Bermudez owed it a fiduciary duty. This case is thus factually distinguishable from the recent decision of the Eleventh Circuit in *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017).

The holding in *Chang* applies only to a situation where a defendant knows that funds have been deposited in trust. *See Chang,* 845 F.3d at 1098 ("Because 'banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled,' a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance.") (citation omitted)). Absent a fiduciary duty, therefore, Bermudez cannot be liable for aiding and abetting by virtue of his inaction.

Here, there is no evidence Bermudez knew that Adana had been told that the accounts were restricted. *See* UMF at ¶ 11 & Exhibit P, Groom Depo. at 371-72 (███████████████████████████████████████████████████████████████). Bermudez was not involved in the negotiation over the deal; he never saw the Funding Agreements or other legal documents pertaining to the deal; and he had no awareness of the letters and emails containing misrepresentations that were allegedly sent to Adana's representatives.[3] *See* UMF at ¶¶ 9-11.

Accordingly, because Bermudez had no reason to believe that promises had been made to Adana about restrictions on the 5075 Account, there is no basis to find that Bermudez owed a fiduciary duty to Adana because from Bermudez' perspective this was a normal business checking account, not a trust account. *Compare Chang v. JPMorgan*, 845 F.3d at 1098 ("Chang's allegations establish that the Bank (through Padgett-Perdomo) knew that OPT Title was holding the funds in escrow …. Thus, the bank owed a fiduciary duty to Chang.").

---

[3]/   Even if Bermudez had seen the account statements themselves, which he did not, there was no objective indication on them that the accounts were "restricted." *See* UMF at ¶ 11.

10

Even assuming, arguendo, that there was some evidentiary basis to suggest that Bermudez owed a fiduciary duty to Adana (which there is not), and thus aided by his "inaction" (which he did not), the impact of his inaction would have been "exceedingly minor 'in comparison to the massive scope of [the] overall fraudulent scheme'" and thus, by definition, not substantial. *See Richter,* 2015 WL 163086, at *4 ("Wells Fargo played no role in convincing Richter and others to invest with PCO, and Fuchs had already transferred the last of the investors' funds to her Personal Accounts by the time Wells Fargo is alleged to have aided and abetted her. Thus, it cannot be said that Wells Fargo's inaction was a 'substantial factor in causing' the conversion.") (citation omitted)).

Simon Groom, Adana's corporate representative, testified in deposition that he was not aware of any facts to support the contention that Bermudez "worked behind the scenes" to assist in the underlying conversion, except for his speculation that Bermudez had received a "commission."[4]



---

[4]  Groom also speculated that WFB had terminated Bermudez's employment due to the Adana matter, *see* Groom Depo. at 370-81, but again he offered no proof in support of his conjecture, and the written, record evidence, as set forth on Bermudez's U-5, is otherwise. *See* UMF at ¶ 21 & Exhibit O ("Did not follow Bank's procedures relating to the opening of business accounts. Specifically, relied upon information received by email instead of speaking with or meeting with the account owners.").

11



Groom Depo. (11/22/16), Vol. II, at 349-52; *see* UMF at ¶ 20 & Exhibit N.

Groom's speculation that Bermudez received a commission is based on a document showing that Bermudez received a $7,500 wire transfer from a company called "Capital B" on September 21, 2015, approximately two months after the Adana Funds had been converted. *See* UMF at ¶ 20. It became apparent on further examination, however, that Groom's "understanding" about the $7,500 payment was total conjecture.



Groom Depo. at 356-57; *see* UMF at ¶ 11 & Exhibit N.

Wild speculation is insufficient to defeat summary judgment. *See, e.g., Gadsby v. Am. Golf Corp.*, 557 Fed. Appx. 837, 839-40 (11th Cir. 2014) ("We have said repeatedly that speculation about a fact or result is insufficient to survive summary judgment. An inference based on speculation and conjecture is not reasonable.") (quotation omitted); *Kaplan v. AXA Eq. Life Ins. Co.,* 15-21174-CV, 2016 WL 3920245, at *3 (S.D. Fla. July 15, 2016) ("Facts, rather than speculation or conjecture, are required to defeat a motion for summary judgment."); *Miles v. Jones*, 08-20612-CIV, 2010 WL 5574324, at *7 (S.D. Fla. Nov. 22, 2010) ("Although the Court is required to draw all reasonable inferences in favor of the party opposing summary judgment, those inferences must be based on facts in the record. The Court is not required, or even permitted, to deny a summary judgment motion based on unreasonable inferences that amount to nothing more than speculation or conjecture.").

Putting aside the wild speculation about a "commission," conclusory suggestions of "complicity," and false conjecture about the reasons for Bermudez's termination, it is apparent that Adana cannot point to any "significantly probative" evidence to support its contention that Bermudez assisted – substantially or otherwise -- in the conversion of Adana's money. *See, e.g., LBS Petroleum*, 2015 WL 12469064, at *11 ("Substantial assistance requires a showing that a defendant affirmatively assisted, concealed, or failed to act when required to do so. Yet all Plaintiff can provide with respect to Robinson's participation in the fraud are the broad, conclusory—and insufficient allegations—that she 'provided substantial assistance and facilitated the fraud perpetrated by Demir by soliciting investors...'") (citations omitted)).

Just like the *Richter* case, the Plaintiff here cannot point to "a single action" taken by Bermudez that "in any way contributed" to the underlying conversion of funds from Adana. In fact, his name, for the most part, is nowhere to be found in the thousands of pages of emails and

13

documents that have been produced in discovery. Any role by Bermudez would have been infinitesimally minor compared to what was, in hindsight, a multi-jurisdictional scheme that has resulted in numerous civil lawsuits. *See Richter*, 2015 WL 163086 at *3; *see also In re Palm Beach Fin. Partners, L.P.*, 517 B.R. at 348–49 ("Assuming it were true that GECC did every one of the things alleged in paragraphs *349 (c), (h), (j), (k), (1), (m), (n), and (p), it is still not plausible that these actions amount to "substantial assistance" to Petters' multi-billion dollar fraud. The amount of assistance alleged is minor in comparison to the massive scope of Petters' overall fraudulent scheme.").

Accordingly, based on the compelling authority and precedent of *Richter*, this Court should grant summary judgment in favor of Bermudez on the single claim asserted against him in this action for aiding and abetting conversion.

## CONCLUSION

WHEREFORE, Bermudez respectfully requests that the Court enter an Order granting summary final judgment in his favor and all other relief this Court deems appropriate and just.

Respectfully submitted,

RIESBERGLAW

Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, Florida  33133
Telephone:  (305) 371-9617
Facsimile: 1 (305) 371-9628
Email: Barbara@riesberglaw.com

By: /s/ Barbara J. Riesberg
    BARBARA J. RIESBERG
    Florida Bar No.: 965715

*Counsel for Defendant Hernan Bermudez*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on February 24, 2017 by email on all counsel, and via U.S. Mail on all Pro Se parties of record on the attached Service List.

By: /s/ Barbara J. Riesberg
    BARBARA J. RIESBERG

**SERVICE LIST**

John Daniel Couriel, Esquire
Stephanie L. Hauser, Esquire
Kobre & Kim, LLP
2 South Biscayne Boulevard, 35th Floor
Miami, Florida  33131
Main Telephone: (305) 967-6100
Facsimile: (305) 967-6120
Email: john.couriel@kobrekim.com; stephanie.hauser@kobrekim.com;
waleska.moncada@kobrekim.com
*Counsel for Adana Investing, Inc.*

Brad H. Samuels
Kobre & Kim, LLP
1919 M Street, NW
Washington D.C., 200036
Telephone: (202)664-1900
Email: brad.samuels@kobrekim.com
*Co-Counsel for Adana Investing, Inc.*

Jay Y. Mandel, Esquire
Kobre & Kim, LLP
800 Third Avenue
New York, New York  10022
Telephone: +1 (212) 488-1200
Facsimile: +1 (212) 488-1220
Email: jay.mandel@kobrekim.com
*Co-Counsel for Adana Investing, Inc.*

Bradley Muhs, Esquire
Charles M. Harris, Esquire
Beth A. Cronin, Esquire
Stephanie S. Leuthauser, Esquire
Brigid A. Merenda, Esquire
Trenam, Kemker
200 Central Avenue, Suite 1600
St. Petersburg, Florida  33701
Telephone: (727) 896-7171
Facsimile: (727) 820-0835
Email: Bmuhs@trenam.com; bmerenda@trenam.com; charris@trenam.com;
bcronin@trenam.com; sleuthauser@trenam.com; bshepard@trenam.com;
gkesinger@trenam.com; slord@trenam.com; jamer@trenam.com; RAnctil@trenam.com
*Counsel for Wells Fargo Bank, N.A.*

Eva Spahn, Esquire
Beth A. Black, Esquire
Joseph A. Vallo, Esquire
Greenberg Traurig, P.A.
Phillips Point - East Tower
777 S. Flagler Drive, Suite 300E
West Palm Beach, Florida  33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
Email: valloj@gtlaw.com; tousap@gtlaw.com; hernandezt@gtlaw.com; blackb@gtlaw.com; FLService@gtlaw.com; spahne@gtlaw.com; cruzm@gtlaw.com
*Counsel for Wells Fargo Advisors & Zoch*

Benjamin Rafael
11111 Biscayne Boulevard
Unit 1900
Miami, Florida 33181
*Pro Se*