## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 16-CV-21562-UNGARO/OTAZO-REYES

ADANA INVESTING, INC.,

      Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,
BENJAMIN RAFAEL,
HERNAN BERMUDEZ,
and PAUL ZOCH,

      Defendants.

_____/

## WELLS FARGO ADVISORS, LLC'S AND PAUL ZOCH'S MOTION FOR
## SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, Defendants Wells Fargo Advisors, LLC ("WFA") and Paul Zoch ("Zoch") (collectively, the "WFA Defendants") respectfully move for summary judgment on the claims asserted against them by Plaintiff Adana Investing, Inc. ("Adana") and in support thereof submit the following memorandum of law.[1]

## PRELIMINARY STATEMENT

This is not a case about undisputed facts—it is a case about the absence of facts. Adana commenced this action against the WFA Defendants with unsupported, bare bones allegations

_____

[1] WFA and Zoch are named as defendants only in connection with Counts I, III, VI, and VIII of Adana's Complaint [ECF No. 1]. Accordingly, the WFA Defendants only address these counts herein. The WFA Defendants also incorporate and adopt the arguments contained in the motion for summary judgment filed by Defendant Wells Fargo Bank, N.A. to the extent applicable to the claims asserted against the WFA Defendants.

that did not support a legal basis for recovering any damages against them.   The exchange of discovery, including over 40,000 pages of document production by both parties and non-parties, has not uncovered any evidence that would alter that outcome.[2]   There is simply no evidence to support Adana's claims against the WFA Defendants and, as a result, the Court should enter summary judgment in favor of the WFA Defendants in this action.

This action arises out of losses allegedly suffered by Adana when non-party WVP Holding, LLC ("WVP") failed to repay over $28,000,000 in loans pursuant to a series of short-term loan agreements between Adana and WVP.   Adana claims to have deposited the proceeds from those loans into an account with Wells Fargo Bank, N.A. ("WFB") without having completed even a basic amount of due diligence regarding the parties to which it was loaning funds.[3]   (WFA Defendants' Statement of Undisputed Material Facts ("SUMF") ¶¶ 12, 16.) Adana claims, without evidence, that it was fraudulently induced into making the subject bridge loans to WVP as part of a scheme created and orchestrated by non-parties Benjamin McConley, Jason Van Eman and Ross Marroso through their companies—Forrest Capital Partners, Inc. ("FCP"), Forrest Capital and Co., LLC ("FCC"), Weathervane Productions, Inc., and WVP (collectively, the "Forrest Capital Parties")—which they represented they used to operate a film production and financing investment business.

---

[2] The parties were unable to complete discovery because, among other things, two key witnesses in this case—including the only two individuals to have any contact with the WFA Defendants— were initially believed to be U.K. residents.  Subsequently, it was determined that one individual did in fact reside in the U.K. while the second individual had relocated to California, but he successfully evaded service by Defendants.  Although Defendants worked diligently to complete discovery, the process to complete the deposition through the Hague Convention could not be completed before the February 3, 2017 discovery cutoff.  Defendants sought a continuance to complete this and other outstanding discovery, including other crucial depositions, as well as leave to take this and other discovery outside the discovery period, but these requests were denied.

[3] WFB and WFA are two separate, affiliated entities, and neither is the parent company of the other.  SUMF ¶ 1.

Adana, disavowing any personal responsibility for its failed business dealings, now seeks to recover not from the parties that allegedly defrauded it, but rather from the WFA Defendants—with whom Adana itself never had any meetings, any communications, or any dealings whatsoever.  Based on this tenuous theory, Adana asserted state law claims against the WFA Defendants for aiding and abetting conversion (Counts I and III) and fraudulent misrepresentation (Counts VI and VIII).  Adana cannot prove either of these claims.

The documents and information exchanged during discovery has established, among other things, that there is no credible evidence that the WFA Defendants: (i) played any role in any scheme allegedly perpetrated by the Forrest Capital Parties; (ii) had any actual knowledge of the Forrest Capital Parties' conversion of Adana's funds; (iii) assisted in any way, much less substantially, in any conversion or misappropriation of Adana's funds; or (iv) made any material misrepresentations to Adana upon which it relied.  As a result, there are no triable issues of fact as to the claims against the WFA Defendants, and the Court should enter summary judgment as to Counts I, III, VI, and VIII.

## ARGUMENT

### I.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)); s*ee also In re Optical Techs., Inc.,* 246

F.3d 1332, 1334 (11th Cir. 2001) (citation omitted).  Where, as here, the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.* 477 U.S. at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the nonmoving party to establish that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although all reasonable inferences must be viewed in favor of the non-moving party, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citation omitted). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.*  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

Gauged by this standard, the WFA Defendants' Motion for Summary Judgment should be granted.

## II.   Adana Cannot Prove Its Claims For Aiding and Abetting Conversion

In order to prevail on an aiding and abetting claim under Florida law, a party must prove:

"(1) an underlying violation on the part of the primary wrongdoer;

(2) knowledge of the underlying violation by the alleged aider and abetter; and

(3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."

*Richter v. Wells Fargo Bank, NA*, No. 2:11-cv-695-FtM-29DNF, 2015 WL 163086, at *3, (M.D. Fla. Jan. 13, 2015) (granting summary judgment in favor of Wells Fargo Bank on aiding and abetting conversion claim in an alleged Ponzi scheme); *see also Perlman v. Wells Fargo Bank, N.A.,* 559 F. App'x 988, 993 (11th Cir. 2014). Adana cannot prove any of these elements.

Despite Adana's claims throughout this litigation of a "scheme to defraud" it out of $28 million, Adana has not put forth <u>any</u> evidence that its funds were actually converted, that the WFA Defendants had knowledge of the purported conversion, or that the WFA Defendants rendered substantial assistance to the wrongdoers involved in that alleged misconduct. That is because no such evidence exists.

### A.     Adana has not proven that its funds were, in fact, converted.

Adana must prove that there was a conversion in the first place.  It is not enough for Adana to simply allege that it loaned the Forrest Capital Parties funds that were not repaid.  That may entitle Adana to recover against the Forrest Capital Parties for breach of contract, but it does not establish that Adana's funds were converted.  "In order to establish a claim for conversion of funds under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so."  *IberiaBank v. Coconut 41, LLC*, 2:100-CV-321-FTM-29, 2013 WL 6061883, *19 (M.D. Fla. Nov. 18, 2013); *Obregon v. Windmills, Inc*., No. 13-cv-80669, 2015 WL 11348275, at *3-4 (S.D. Fla. Jan. 22, 2015) (granting summary judgment to broker-

dealer on claims of conversion and fraudulent misrepresentation in action involving currency swap investment.)  Adana cannot do so.

To begin with, Adana has not proven that there were "specific and identifiable" funds to which it had an immediate right of possession.  According to Adana, it distributed the proceeds of its loans into an account held by FCC at WFB.  (SUMF ¶ 12.)  Adana has not, however, proven that the account was a trust account, or that the funds were specially earmarked to be returned to Adana with interest.

Adana further claims that its funds were to serve as collateral for a line of credit WFB was to extend to Weathervane.  (Compl. ¶ 33.)  Thus, if Adana's funds were earmarked to be preserved intact at all, they were to be preserved intact for delivery to <u>WFB</u> in the event Weathervane defaulted on its credit line.  Consequently, Adana exchanged its right to possess the bridge loan proceeds for the contractual right to be paid, at future times specified in the loan agreements, a sum equivalent to the principal amount of each loan plus interest.  Thus, based on the undisputed evidence in the record (or lack thereof), while Adana may have had a right to repayment of its funds from third parties at some point in the future, it has not proven that it had an immediate right to possession of those funds, thus failing to prove the second necessary element of conversion.

Adana has also failed to prove that an "unauthorized act" deprived it of its funds.  On the contrary, the evidence shows that Adana expressly authorized the Forrest Capital Parties to utilize the loan proceeds as collateral or "matching funds" for the purpose of producing films.  (SUMF ¶ 13.)  That Adana may have a claim against the Forrest Capital Parties for failure to repay a loan simply does not equate to conversion, and cannot form the basis of a claim for aiding and abetting conversion against the WFA Defendants.  Under Florida law, the failure to

repay a loan as agreed does not constitute conversion, even when the borrower is alleged to have accepted delivery of loan proceeds with "no intention of repaying the loan." *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011), review denied, 76 So. 3d 939 (Fla. 2011); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (vacating judgment for conversion and stating "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.").

Because Adana has not proven an underlying claim for conversion, Adana's claim against the WFA Defendants for aiding and abetting conversion cannot withstand summary disposition.

### B. There is no evidence that the WFA Defendants had actual knowledge of the alleged conversion of Adana's funds.

"[W]hen a claim of aiding and abetting is asserted against a bank, the second element – knowledge – will only be satisfied if the plaintiff establishes facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Perlman*, 559 F. App'x at 993. Indeed, "[t]here is no authority in Florida tort law for imposing aiding-and-abetting liability on a bank that is reckless but lacks actual knowledge of an underlying wrong." *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1246-47 (M.D. Fla. 2013). Thus, Adana must prove more than "constructive knowledge," and allegations that the WFA Defendants "should have known" of the purported conversion will not suffice. *Id.* at 1244.

Along these same lines, "Florida law does not require banking institutions to investigate transactions." *Lawrence*, 455 F. App'x at 906. Consequently, facts that merely "rais[e] red flags," such as atypical transactions, procedural oddities, and inconsistent account activity, do not equate to "actual knowledge." *Perlman*, 559 F. App'x at 993-94. The same reasoning applies to other financial institutions, including brokerage firms. *See In re Agape Litig.*, 681 F. Supp. 2d

7

352, 361 (E.D.N.Y. 2010) (holding that, "[i]t is well-established that brokers…do not owe a general duty of care to the public at large," and finding that a brokerage firm's failure to "conduct a more diligent inquiry" into a client's affairs did not mean that the brokerage firm "had actual knowledge of the fraud"); *Frederick v. Smith,* 7 A.3d 780, 783 (N.J. App. Div. 2010) (holding that "a brokerage firm is under no obligation to be a fraud watchdog for non-customers"); *Freeman v. Dean Witter Reynolds, Inc.,* 865 So. 2d 543, 548-49 (Fla. 2d DCA 2003) (holding that, similar to banks, other "financial institutions" do not owe a fiduciary duty to their clients "to investigate or disclose the manner in which the client or its authorized agents use[] their money").

To be clear, there is no record evidence that Adana was ever a WFA customer or that any of the funds that were purportedly converted were ever deposited with WFA.  Adana purports to seek recovery from the WFA Defendants based upon a <u>single</u> meeting Zoch attended on October 30, 2014, in which he purportedly made the following representations to third parties Lee Vandermolen ("Vandermolen") and Alastair Burlingham ("Burlingham"): (1) that Zoch was FCP's banker and financial advisor, (2) that FCP and McConley were clients of WFA; (3) that WFB and WFA were involved in similar and successful film financing deals between the Forrest Capital Parties and other lenders; (4) that FCP and its family office had hundreds of millions of dollars; and (5) that FCP had $100 million in assets with WFA.  (SUMF ¶ 2; Compl. ¶¶ 37, 39-40.)  Importantly, Adana was <u>not</u> present at that meeting, the meeting took place more than two months before Adana learned of the possible opportunity to participate in a film financing loan transaction, approximately five months before Adana first learned of Vandermolen and Burlingham, and more than six months before Adana made its first bridge loan to WVP.  (SUMF ¶¶ 2-3, 8-9, 12.)

In fact, Adana's corporate representative concedes that at the time of the October 2014 meeting, Vandermolen and Burlingham had not yet had any contact with Adana and had no contractual relationship with Adana.  (SUMF ¶¶ 5, 9.)  And Adana's corporate representatives have <u>never</u> met or spoken with Vandermolen or Burlingham, or had any written communications with them.  (SUMF ¶ 10.)  In reality, ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ not for any purpose related to Adana or any other investors.[4]  (SUMF ¶ 4.)

Adana simply has no evidence to support its wholly conclusory allegation that "Zoch had knowledge of the Forrest Capital Parties' conversion of Adana's funds."  (Compl. ¶¶ 111, 169.)  On the contrary, the limited evidence that is in the record supports a finding that the WFA Defendants had <u>no</u> knowledge of any intention of the Forrest Capital Parties to convert or misappropriate Adana's funds.  To begin with, there is no evidence that WFA and Zoch—the primary WFA employee who handled the Forrest Capital Parties' accounts at WFA—had any knowledge of Adana's loan agreements with WVP, Adana's disbursement of $28 million to WVP between May and July 2015, or WVP's intention to convert or misappropriate those funds at any time.  (SUMF ¶ 14.)  In fact, over three months before Adana entered into the first loan agreement with WVP, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███.[5]  (SUMF ¶ 11.)  Further, the WFA Defendants are not parties to the bridge loan agreements between Adana and WVP, and there is no evidence that the WFA Defendants were

---

[4] ████████████████████████████████████████████████████████

████████████████████████████████████ (SUMF ¶ 18.)

There is no evidence that Weathervane, WVP, or Van Eman ever had accounts with WFA.

involved in the negotiation of those agreements.   Indeed, there is no evidence that the WFA Defendants had any knowledge of Adana's existence.   Accordingly, Adana cannot establish that the WFA Defendants had actual knowledge of the Forrest Capital Parties' conversion of, or intention to convert or misappropriate, Adana's funds.   For that reason alone, Adana's claim for aiding and abetting conversion fails.

Significantly, it is undisputed that ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████—months before Adana disbursed any funds to WVP starting in May 2015.  (SUMF ¶ 11.)  Indeed, there is no evidence, nor can there be, that any of the loan proceeds that Adana disbursed to WVP passed through WFA accounts—because the accounts had been closed.   In reality, what the undisputed evidence in the record actually shows is that Zoch provided routine financial services to some of the Forrest Capital Parties for a period of time, and that the WFA Defendants terminated their relationship with the Forrest Capital Parties months before the purported conversion.[6]

Similarly, Adana cannot prove its allegation that WFA's knowledge of an unrelated lawsuit involving the Forrest Capital Parties, *Buzbee v. Dickie,* Case No. BC562400 (Cal. Sup. Ct.) (the "*Buzbee* Case"), demonstrates that the WFA Defendants had actual knowledge of the alleged conversion of Adana's funds.  (Compl. ¶¶ 124-25, 145.)  Not only was the *Buzbee* case filed by parties unrelated to Adana, but WFA was not served with the complaint in the *Buzbee* case until November 6, 2014, <u>after</u> the October 30, 2014 meeting on which Adana bases its claims; nearly a month <u>before</u> Adana entered the scene; and more than six months <u>before</u> Adana

---

[6] Adana also cannot prove its allegation that WFA had knowledge of the alleged conversion through "monitoring of employee emails." (Compl. ¶ 143.)  Nothing produced by any party in discovery supports that allegation.

made its first bridge loan to WVP.  *(*SUMF ¶ 19.)  Thus, at most, the *Buzbee* case may have raised a "red flag," but it certainly cannot establish that the WFA Defendants had actual knowledge of a purported conversion that occurred months later.  And, in any event, mere "red flags" are not enough to prove Adana's claim.  *See Perlman,* 559 F. App'x at 993-94; *Wiand,* 938 F. Supp. 2d at 1244.

Moreover, Adana is precluded from imputing any actual knowledge of the alleged conversion that WFB or its employees may have had, if any, to the WFA Defendants.[7]  To be clear, WFB and WFA are two separate entities, and there is no evidence in the record, nor can there be, that one is the agent of the other.  (SUMF ¶ 1.)  Therefore, Adana has not established, and cannot establish, that any knowledge of WFB can be imputed to WFA as a matter of law.

Because Adana cannot prove that the WFA Defendants had actual knowledge of the alleged conversion of its funds, there are no triable issues of fact as to Adana's claims for aiding and abetting conversion in Counts I and III.  *See, e.g. Celotex Corp.* 477 U.S. at 325 (holding that where the non-moving party bears the burden of proof at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case.")

**C.    There is no evidence that the WFA Defendants substantially assisted in the alleged conversion.**

Given the complete lack of involvement of the WFA Defendants in the loan transactions at issue, Adana cannot prove that the WFA Defendants substantially assisted in the alleged conversion of its funds.  Substantial assistance will not be found where "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent

---

[7] Adana alleges that Hernan Bermudez was an employee of "Wells Fargo Bank and/or Wells Fargo Advisors."  (Compl. ¶ 24.)  Bermudez was an employee of Wells Fargo Bank, not WFA.  (SUMF ¶ 21.)  Thus, any knowledge he may have had cannot be imputed to WFA.

scheme." *Richter*, 2015 WL 163086, at *9 (quotation omitted).  Additionally, "when the alleged aider and abettor is not an integral part of the underlying violation, '[c]ourts must also consider the potentially devastating impact aiding and abetting liability might have on commercial relationships.'" *Id.* (internal citation omitted).  In particular, a bank's failure to freeze an account does not constitute substantial assistance when such failure is alleged as part of a larger, fraudulent scheme.  *Id.* at *12 (finding that extending aiding and abetting liability to a bank for failure to freeze an account used in a fraudulent scheme "would have a chilling effect on commercial banking relationships by requiring banks to preemptively freeze accounts on their own accord lest they risk liability for aiding and abetting misconduct by their account holders").  This is because, to support a claim for aiding and abetting conversion, a party's substantial assistance must relate to "the wrongful deprivation of property, not the acquisition of the property by the wrongdoer." *Id.* at *9-10 (emphasis added).

As set forth above, there is no evidence that the WFA Defendants: (1) had any knowledge of Adana's existence before Adana executed the loan agreements with WVP in May 2015; (2) were aware of Adana's loan agreements with WVP at all; or (3) had any knowledge of Adana's disbursement of funds to WVP's account with WFB.  Indeed, there is no evidence that Adana had any accounts with WFA or that any of Adana's funds passed through WFA.

To the extent Adana bases its claims on Zoch's purported representations to Vandermolen and Burlingham, these, too, do not prove that the WFA Defendants "substantially assisted" in the conversion of Adana's funds. Adana's own corporate representative concedes that Adana had no contractual relationship with, or had even heard of, Vandermolen and Burlingham when Zoch allegedly made those representations.  (SUMF ¶¶ 5, 9.)  But even if they were Adana's agents in October 2014, taking Adana's tenuous theory of recovery as true, Zoch's

representations related, at most, to "the acquisition of the property by the wrongdoer" by purportedly inducing Adana to deposit funds into WVP's account at WFB. *See Richter*, 2015 WL 163086, at *9-*10.  Such "assistance" cannot support a claim for aiding and abetting conversion, and Adana cannot point to any evidence (because none exists) of the WFA Defendants' substantial assistance in the actual "wrongful deprivation of [Adana's] property." *Id.*

And, the evidence shows that ██████, far from assisting the Forrest Capital Parties in the alleged conversion, ████████████████████████████████████████████████, well before Adana's loan proceeds were disbursed between May and July 2015.  (SUMF ¶ 11.) So even if Adana could prove that WFA assisted in the conversion by failing to freeze or close the Forrest Capital Parties' accounts at WFA (which Adana does <u>not</u> allege were used as part of the Forrest Capital Parties' alleged "scheme") before March 2015, such inaction could not constitute "substantial assistance" to support Adana's claims.  *See Richter*, 2015 WL 163086, at *9.

Simply put, the record evidence shows that the WFA Defendants: (1) had <u>no</u> knowledge of Adana's existence at the time Adana claims they "aided and abetted" the conversion; (2) had <u>no</u> knowledge of, or involvement in, the negotiation of the loan agreements between Adana and the Forrest Capital Parties; (3) had <u>no</u> knowledge of, or involvement with, the loan transactions or movement of funds of which Adana complains; (4) had <u>no</u> contact whatsoever with Adana or anyone acting as Adana's agent or representative at the time of the alleged "aiding and abetting;" and (5) terminated their relationship with the Forrest Capital Parties well <u>before</u> the alleged conversion of Adana's funds.  As a result of these undisputed facts, Adana cannot prevail on its aiding and abetting claim, and summary judgment should be entered in favor of the WFA

Defendants on Counts I and III. *Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.")

### III.    Adana's Claims for Fraudulent Misrepresentation Fail as a Matter of Law

Counts VI and VIII for fraudulent misrepresentation must suffer the same fate.   To prevail on a claim for fraudulent misrepresentation, a plaintiff must prove: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Washington v. Lasalle Bank Assoc.*, 817 F. Supp. 2d. 1345, 1349-50 (S.D. Fla. 2011) (granting summary judgment to defendant lender in mortgage action on claim for fraudulent misrepresentation.); *Czarerecki v. Roller*, 726 F. Supp. 832 (S.D. Fla. 1989) (granting summary judgment to seller of yacht on claim of fraudulent misrepresentation by buyer).[8]  Because Adana cannot prove that the WFA Defendants made any false statements to Adana, or that Adana could not have uncovered the purported falsity of those statements, the WFA Defendants are entitled to summary judgment in their favor on Counts VI and VIII.

---

[8] Adana's fraudulent misrepresentations claims also fail as a matter of law because Adana has not pled, much less proven, the elements of such a claim. Specifically, Adana fails to allege that the WFA Defendants "gained" anything by the alleged fraud. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (holding that, to plead a cause of action sounding in fraud, a plaintiff must allege "what the defendant gained by the alleged fraud"). Although Adana alleges WFB received transaction fees (Compl. ¶ 78), Adana makes no such allegations with respect to the WFA Defendants—because they received no such fees. Similarly, while Adana alleges that Rafael, an employee of WFB, received payment from the Forrest Capital Parties (Compl. ¶ 105), it makes no such allegation with respect to Zoch. Instead, Adana makes only conclusory statements that Zoch acted "for the benefit of" WFB or WFA (Compl. ¶¶ 139, 195), without proving what benefit WFA (or Zoch) actually received. Discovery has revealed none.

**A.      There   is   no   evidence   that   the   WFA   Defendants   made   false misrepresentations of material facts to Adana.**

Adana bases its fraudulent misrepresentation claims against the WFA Defendants on a single meeting between Zoch, McConley, Van Eman, Burlingham, and Vandermolen on October 30, 2014.  Adana claims that Zoch told Vandermolen and Burlingham (1) that Zoch was FCP's banker and financial advisor, (2) that FCP and McConley were clients of WFA (3) that WFB and WFA were involved in similar film financing deals between the Forrest Capital Parties and other lenders that were successful, and (4) that FCP had hundreds of millions of dollars in assets. (Compl. ¶¶ 37, 39, 41.)

In an attempt to create an issue of disputed fact, Adana will likely rely on declarations prepared by Vandermolen and Burlingham, which purport to state facts that go well beyond the allegations of Adana's Complaint.  Adana produced these self-serving declarations to Defendants at 11:20 p.m. on February 3, 2017, the discovery cut-off date.  As the Court is aware, although Adana represented throughout its Complaint and in court filings that Vandermolen and Burlingham were its representatives, Adana nonetheless refused to produce them for deposition. Defendants, through various means and separate counsel, attempted to depose Vandermolen and Burlingham, but were unable to do so by the February 3 discovery deadline.  Despite not producing their "representatives" for deposition, Adana was nonetheless somehow able to obtain extensive and detailed declarations on the very last day of discovery, knowing that Vandermolen and Burlingham could not be questioned in depositions on the substance or veracity of any of the statements in their declarations.

Other than these self-serving, eleventh-hour declarations, Adana cannot prove that any of the statements they claim were made by the WFA Defendants were, in fact, made.  (SUMF ¶ 6.) But far more fatal to Adana's claims is the undisputed fact that Adana did not attend the October

30, 2014 meeting or have any knowledge that the meeting was taking place.  (SUMF ¶ 3.)  In fact, the meeting took place more than two months before Adana even became aware of a potential opportunity to participate in a film financing loan transaction, and approximately five months before Adana first learned of Vandermolen and Burlingham.  (SUMF ¶¶ 8-9.)  Given that Vandermolen and Burlingham had not even had contact with Adana at the time of the meeting, they certainly could not have agreed at that time to act as Adana's agents.  *See Kaloe Shipping Co. v. Goltens Serv. Co.,* 778 F. Supp. 2d 1346, 1351 (S.D. Fla.  2011) (holding that the party relying on the existence of an agency relationship bears the burden of establishing it).  Indeed, Adana's corporate representatives have never met or spoken with Vandermolen or Burlingham, or had any written communications with either of them.  (SUMF ¶ 10.)  And Adana never communicated directly with the WFA Defendants.  (SUMF ¶ 17.)

There is also no reliable evidence to suggest that Vandermolen and Burlingham discussed any other investors' potential investment with the Forrest Capital Parties at the meeting, much less Adana's.  Certainly, there is no evidence that the WFA Defendants made any other statements to Adana, Burlingham or Vandermolen at any other time that Adana eventually relied on in connection with its decision to make the bridge loans to the Forrest Capital Parties.  (SUMF ¶¶ 7, 17.)

At bottom, there is a complete "absence of evidence to support" Adana's fraudulent misrepresentation claims because Adana cannot prove that the WFA Defendants made any false statement to Adana or one of its agents and, as a result, there are no triable issues of fact as to Counts VI and VIII.  *See, e.g., Celotex Corp.*, 477 U.S. at 325; *Walker*, 911 F.2d at 1577.

**B.** **Adana's failure to perform its own due diligence regarding its transactions with the Forrest Capital Parties is fatal to its claims.**

Even if the WFA Defendants made the statements described above to Vandermolen and Burlingham at the October 30, 2014 meeting (which they did not), and even if Vandermolen and Burlingham were acting as Adana's agents at that time (which they were not), these statements are not actionable as a matter of law because Adana could have discovered the "falsity" of Zoch's purported representations using ordinary diligence. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (holding that the recipient "may rely on the truth of a representation . . . unless he knows the representation to be false or its falsity is obvious"); *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 93 (Fla. 2002) (holding that the falsity of a representation is "obvious" when "a mere cursory glance would have disclosed the falsity of the representation"). "[A] misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence." *JDI Holdings, LLC v. Jet Mgmt., Inc.,* 732 F. Supp. 2d 1205, 1233 (N.D. Fla. 2010).

During the negotiation of the three loans, Adana, a highly sophisticated investment vehicle, and its business associates utilized two different law firms to represent their interests. These attorneys consisted of Robb Klein of the Sheppard Mullin Richter Hampton LLP (a 500+ attorney law firm based in Los Angeles, California) and at least three attorneys, including Graham Shear, Marc Trottier and Simon Clarke, employed with the international law firm of Berwin Leighton Paisner LLP (800+ partners, consultants, lawyers and paralegals). (SUMF ¶ 15.) These highly experienced professionals exchanged hundreds of emails with the Forrest Capital Parties while negotiating the loans with them. This large group of legal advisors could have—and should have—easily investigated the accuracy of any representations concerning the

Forrest Capital Parties' financial success and wealth and alleged experience in film financing.[9] Yet not one of them did.

For example, Adana complains of a purported representation by Zoch that the Forrest Capital Parties had hundreds of millions of dollars in assets, which could have easily been confirmed by reviewing the Forrest Capital Parties' financial documents. But Adana's corporate representative concedes that Adana did not request or receive any financial-related documents before entering into loan agreements with WVP. (SUMF ¶ 17.) There is no evidence in the record that Adana, or any of its agents or army of attorneys, took one step to confirm any of the representations it now claims the WFA Defendants made to them. (SUMF ¶ 17.)

In fact, Adana's director and corporate representative admitted that Adana did not conduct any independent due diligence before handing over $28 million to the Forrest Capital Parties, but rather relied solely on due diligence performed by others. (SUMF ¶ 16.) That Adana is now disappointed at the outcome of its foolhardy business decision does not render the WFA Defendants liable for its bad decision. Because Adana could have discovered the truth behind any purported misrepresentations using "ordinary diligence," it cannot prevail on its claims for fraudulent misrepresentation. Accordingly, the Court should enter summary judgment in favor of the WFA Defendants on Counts VI and VIII as well.

---

[9] To be sure, much of the information that Adana claims proves that the WFA Defendants "knew or should have known" of the Forrest Capital Parties' wrongdoing could just as easily have been discovered by Adana itself. For example, a simple litigation search (which is standard in sophisticated credit transactions like this one) would have revealed pending litigation involving the Forrest Capital Parties. In fact, Adana's corporate representative concedes that Adana was aware of the *Buzbee* Case before entering into the loan agreements with WVP. (SUMF ¶ 20.)

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Wells Fargo Advisors, LLC and Paul Zoch request that the Court enter summary judgment in their favor on Counts I, III, VI, and VIII of the Complaint, and grant such other relief as the Court deems just, necessary or proper

Dated: February 24, 2017

**GREENBERG TRAURIG, P.A.**

By:/s/ *Eva M. Spahn*
    Joseph A. Vallo, Esq., FBN: 972096
    valloj@gtlaw.com
    tousap@gtlaw.com
    Beth A. Black, Esq., FBN: 116371
    blackb@gtlaw.com
    hernandezt@gtlaw.com
    FLService@gtlaw.com
    777 South Flagler Drive, Suite 300 E
    West Palm Beach, Florida 33401
    Telephone:  (561) 650–7900
    Facsimile:  (561) 655-6222

    Eva M. Spahn, Esq., FBN 0092063
    spahne@gtlaw.com
    cruzm@gtlaw.com
    FLService@gtlaw.com
    333 S.E. 2nd Avenue, Suite 4400
    Miami, Florida 33131
    Telephone:  (305) 579-0500
    Facsimile:  (305) 579-0717

    *Attorneys for Defendants Wells Fargo Advisors, LLC and Paul Zoch*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 24, 2017, the foregoing document was served on all counsel of record identified on the attached Service List via the method designated below.

By: _____/s/Eva M. Spahn_____

BETH A. BLACK, ESQ.
Florida Bar No. 116371
Blackb@gtlaw.com
JOSEPH A. VALLO, ESQ.
Florida Bar No. 972096
Valloj@gtlaw.com
EVA SPAHN, ESQ.
Florida Bar No. 0092063
Spahne@gtlaw.com
GREENBERG TRAURIG , P.A.
777 South Flagler Drive, Third Floor East
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222

*Attorneys for Defendants Wells Fargo*
*Advisors and Paul Zoch*

## SERVICE LIST

Adana Investing, Inc. v. Wells Fargo Bank, N.A., et. al.
Case No. 1:16-cv-21562-UNGARO
United States District Court, Southern District of Florida

John D. Couriel, Esq. (via email)
Stephanie D. Hauser, Esq. (via email)
KOBRE & KIM LLP
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
john.couriel@kobreim.com
Stephanie.hauser@kobrekim.com
*Counsel for Adana*

Barbara J. Riesberg, Esq. (via email)
RIESBERG LAW
Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, FL 33133
barbara@riesberglaw.com
*Counsel for Defendant Hernan Bermudez*

Charles M. Harris, Esq. (via email)
Beth A. Cronin, Esq. (via email)
Stephanie S. Leuthauser, Esq. (via email)
TRENAM, KEMKER
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
charris@trenam.com
gkesinger@trenam.com
bcronin@trenam.com
slord@trenam.com
sleuthauser@trenam.com
jammer@trenam.com
*Counsel for Defendant Wells Fargo Bank, N.A.*

Benjamin Rafael (via Certified Mail Return Receipt Requested)
11111 Biscayne Boulevard
Unit 1900
Miami, FL 33181

21