**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ADANA INVESTING, INC.,

      Plaintiff,

      v.                           Case No. 16-CV-21562-UNGARO/OTAZO-REYES

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,
BENJAMIN RAFAEL,
HERNAN BERMUDEZ,
and PAUL ZOCH,

      Defendants.

_____/

**WELLS FARGO ADVISORS, LLC'S AND PAUL ZOCH'S REPLY IN**
**FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

      Defendants Wells Fargo Advisors, LLC ("WFA") and Paul Zoch ("Zoch") (collectively, the "WFA Defendants") respectfully submit this Reply in further support of the WFA Defendants' Motion for Summary Judgment ("Motion"). [1]

**I.**      **INTRODUCTION**

      Plaintiff Adana Investing, Inc.'s ("Adana") response to the Motion (the "Response") [ECF No. 421]  only serves to reiterate the arguments put forward in the Motion—that there is no factual support to establish Adana's claims against the WFA Defendants.  Indeed, because Adana had nothing of substance to work with in the first place, it doubled down in its Response by making even more conclusory and unsupportable allegations than it made in its prior filings in this case.  The Response does nothing more than cobble together a handful of baseless and conclusory allegations concerning Zoch's alleged breach of WFA policies, which it then uses as the sole basis to argue that the WFA Defendants had ***actual knowledge*** of the Forrest Capital Parties' scheme to convert the loans proceeds at issue.  Adana also argues that these alleged policy violations support a finding that the WFA Defendants provided ***substantial assistance*** to

_____

[1]  The WFA Defendants incorporate and adopt the arguments contained in Defendant Wells Fargo Bank, N.A.'s reply in support of its motion for summary judgment to the extent applicable to the claims asserted against the WFA Defendants.

the Forrest Capital Parties in accomplishing their scheme.  It is undisputed, however, that they do not.  In the same vein, Adana's attempt to avoid summary judgment on its fraudulent misrepresentation claim also fails because it cannot establish that the WFA Defendants made misrepresentations to Adana or that Adana justifiably relied on those alleged misrepresentations.

In the end, none of the alleged facts submitted by Adana in the Response diminish the critical and undisputed facts in this case: (i) Adana was not present at the October 30, 2014 meeting; (ii) at the time of the October 30, 2014 meeting, Lee Vandermolen ("Vandermolen") and Alastair Burlingham ("Burlingham") were not agents of Adana; (iii) the WFA Defendants terminated their business relationship with the Forrest Capital Parties in March 2015—months before Adana disbursed any funds which started in May 2015; (iv) there is no evidence that any of Adana's loan proceeds passed through WFA accounts (nor could there be, because the WFA accounts had already been closed); (v) the WFA Defendants had no knowledge of the Forrest Capital Parties' conversion of Adana's funds; (vi) the WFA Defendants did not assist, let alone substantially assist, in any conversion or misappropriation of Adana's funds; and (vii) the WFA Defendants did not make any representations to Adana upon which it relied.  In sum, there is simply no evidence to support Adana's claims against the WFA Defendants and as a result, the Court should enter summary judgment in their favor and against Adana on Counts I, III, VI, and VIII of the Complaint.

II.    **ARGUMENT**

    A. **FRAUDULENT MISREPRESENTATION**

        1.    **There Is No—Let Alone Ample—Evidence that Zoch Made Any Misrepresentations**

The WFA Defendants were correct in their prediction that Adana would attempt to use Vandermolen's and Burlingham's uncontested and unsupported eleventh-hour declarations in an attempt to create an issue of disputed fact.  Unable to avoid the reality that the only "evidence" of what Zoch said at the October 2014 meeting are those declarations, Adana twists Zoch's deposition testimony into something that it's not.  (Resp., pp. 4-5.)  Adana only points to three supposed examples supporting their claim that Zoch made misrepresentations at the October meeting.  Of the three, Zoch didn't make two of the statements Adana attributes to him.  A complete reading of his testimony clearly establishes that it was McConley who made the statements:



(emphasis added).  As to the third example in the Response, Adana again distorts Zoch's testimony with respect to his discussion regarding the products and services available through Wells Fargo Advisors.  Once again, a full reading of the testimony reveals the misleading nature of Adana's argument:





As the testimony clearly establishes, Zoch **never** described how a secured prime line worked in the context that this was the product that "WF Bank was willing to issue for these film financing deals" as misrepresented by Adana.  (Resp., pp. 4-5.)  Zoch's explanation of what a secured prime line is—to counsel's question at the deposition, not Vandermolen's or Burlingham's at the meeting—was not a misrepresentation.  It was an accurate description of how the product works.  The crucial missing link for Adana, however, is that Zoch's explanation was completely unrelated to the transaction that Adana ultimately entered into.  And there is no record evidence that Vandermolen or Burlingham even asked about a secured prime line.  Rather, they asked about and were interested in how checking accounts worked.

Moreover, Adana's argument that Zoch was describing the product that was to be used in the Forrest Capital Parties' scheme makes no sense factually.  As Adana has repeated time and time again in its filings, and does so again in its Response (p. 2), the loans Adana made were deposited into accounts at Wells Fargo Bank, which funds were to serve as collateral for a Wells Fargo Bank line of credit.  No part of this transaction involved any funds or collateral held at WFA.  So, by its very definition, which Zoch provided, a secured prime line could **not** have been the product that Wells Fargo Bank allegedly was "willing to use for these film financing deals" because no collateral in the form of securities was ever going to be held "on the brokerage side of the business" at WFA.

Further, the case law that Adana cites does not help it.  As recognized by Adana, the holdings in those cases require that the representor—in this case, Zoch—"understands or expects their misrepresentations to be repeated to the ultimate victim or class of victims."  *Koch v. Royal Wine Merch., Ltd.*, 907 F. Supp. 2d 1332, 1345 (S.D. Fla. 2012); *Dem. Rep. of the Congo v. Air Cap. Group, LLC*, No. 12-20607-CIV, 2013 WL 3223686, at *5 (S.D. Fla. June 24, 2013). (Response, pp. 3-4.)  Here, there is no record evidence that Zoch had any understanding or expectation whatsoever that anything he said in that meeting was going to be repeated to anyone

else.  At no time did Vandermolen or Burlingham represent that they were at that meeting on behalf of anyone else, whether in general or specifically by name.  Again, it bears repeating that Zoch believed that the purpose of the meeting was to simply meet potential new clients, not provide information to "arrangers" who were conducting due diligence that would be reported back to some unnamed and unidentified class of possible investors.  Such a conclusory leap makes no sense and is wholly unsupported by the evidence.

Nor is there any evidence—other than their self-serving, eleventh-hour declarations—that the purpose of the meeting was so Vandermolen and Burlingham could conduct due diligence on behalf of potential lenders.  (Resp., p. 5.)  Again, they did not even know Adana existed in October 2014.  (SUMF, ¶¶ 5-9.)  Thus, they could not have been gathering information to be repeated to an entity they were not even aware of at the time of the meeting.



### 2. Adana Was Not Required To "Root Out" the Truth, But Was Required To Conduct a Cursory Investigation

In its Response, Adana relies on only a piece of the law in Florida—that a party may rely on the truth of a representation, and therefore has no duty to investigate.  Adana repeatedly restates this notion: "a victim of fraudulent misrepresentation 'may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation."  (Resp., p. 6.)  This, however, is not the standard in Florida.  What Adana continues to (and purposefully) leaves out, is the exception established by the Florida Supreme

Court: "if a mere cursory glance would have disclosed the falsity of a representation, its falsity is regarded as obvious under the rule." *Besett v. Basnett*, 389 So.2d 995, 997 (Fla. 1980).[2]  It is this exception that establishes a duty on the part of Adana to investigate the representations.

In *Besett*, the Florida Supreme Court adopted sections 540 and 541 of the Restatement (Second) of Torts (1977). *Id*.  Analyzing the holding in *Besett*, one court noted:

> "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." *Bessett.* at 997 (quoting Restatement § 540). Upon cursory inspection, one would assume that this statement of section 540 of the Restatement resolves the instant case. ***Also important here, however, is the text of comment a to section 540, which contains an important exception.*** It provides, ***"On the other hand, if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious*** under the rule stated in section 541." *Id.* (quoting Restatement § 540 cmt. a). Section 541 of the Restatement goes further to state: ***"The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."*** *Id.* (quoting Restatement § 540). ***Thus, where one has an opportunity to make a cursory examination or investigation and does not do so, he cannot recover.***

*M/I Schottenstein Homes, Inc. v. Azam,* 813 So.2d 91, 93 (Fla. 2002) (emphasis added).

Adana purposely fails to address what rises to the level of *obvious* and therefore requires the party who purports to rely on a statement to make a cursory examination or investigate its truthfulness.  In Florida, the falsity of a representation is *obvious* "when a mere cursory glance would have disclosed the falsity of the representation." *Id*.  Further, ***"a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence."*** *JDI Holdings, LLC v. Jet Management, Inc*., 732 F.Supp.2d 1205, 1234 (N.D. Fla. 2010) (*emphasis added*); *see also David v. Davenport,* 656 So.2d 952, 953 (Fla. 3d DCA 1995); *Wasser v. Sasoni,* 652 So.2d 411, 412 (Fla. 3d DCA 1995).

And Adana's reliance on *Chris Berg, Inc. v. Acme Min. Co., Inc*., 8963 F.2d 1235 (11th Cir. 1990) is likewise wrong.  *Chris Berg* was distinguished by the holding in *Fuddruckers Inc. v. Fudpucker's Inc*., 436 F. Supp. 2d 1260 (N.D. Fla. 2006) where the court noted that the plaintiff's reliance on *Chris Berg* was misplaced because, despite plaintiff's failure to put forth

---

[2] It is unclear how Adana continues to miss this portion of the law in Florida given that Adana cites to a string of cases, all of which follow and restate the Supreme Court of Florida's decision in *Besett*.

evidence of any fraudulent misrepresentations or omissions by defendants, the information plaintiffs *claim* was misrepresented to them "was either known to plaintiffs actually or constructively *or so obvious that it could have easily been discovery or reasonably inferred simply by examining certain documents."* *Fuddruckers*, 436 F. Supp. 2d at 1267 (emphasis added).

Applying the accurate standard, the truthfulness of Zoch's alleged statement, for example, that Forrest Capital had approximately $100 million in assets with WFA, could have easily been proven or dispelled by one document—an account statement.  At the meeting, Vandermolen and Burlingham could have—and should have—requested that Zoch show them an account statement to support his representation.  If the purpose of the meeting, according to Adana, was for Vandermolen and Burlingham to conduct due diligence into Forrest Capital's relationship with WFA and WFA's management of Forrest Capital's assets, requesting to see a document supporting Zoch's statements regarding those issues amounts to a cursory review.  This would not have required them—or later, Adana or its lawyers—to conduct a full-scale investigation to "root out" a fraud as Adana argues it was not obligated to do.  Its obligation was much simpler than that.  And the same holds true for proving or disproving the other purported misrepresentations that Vandermolen and Burlingham pin on Zoch in their declarations regarding the extent of Forrest Capital's assets.

At the end of the day, Adana has not put forth any evidence in its Response that prevents the Court from entering summary judgment in favor of the WFA Defendants on Adana's claims for fraudulent misrepresentation.

**B. AIDING AND ABETTING CONVERSION**

**1.    Adana Cannot Prove That Its Funds Were Converted**

Adana's first argument, that it does not have to specifically identify the funds converted, is in complete opposition with well-established Florida law.  Adana's reliance on the "specific fund requirement" is wholly misplaced.  Florida law is clear that in order to prove a claim for conversion of money, the money must be "specific" and "capable of identification." *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (4th DCA 1970).  The "specific fund requirement" is merely an exception to the rule that "an action in tort is inappropriate where the claim is based on a breach of contract" and provides a mechanism for a party to recover in tort when the alleged converted funds were the subject of a contractual relationship whereby a party had a contractual

right to payment and the money could come from anywhere.  *Bel-Bel Int'l Corp. v. Comm. Bank of Homestead*, 162 F. 3d 1101, 1108-09 (11th Cir. 1998).

Likewise, Adana's proposition that it has in fact identified specific monies that were converted by alleging monies that were "delivered at one time, by one act and in one mass" is incorrect.  The same case Adana relies on for this premise (*Belford Trucking*), proves Adana does not have a claim for conversion because once again, Adana has cited to only the first part of the legal proposition.  *Belford Trucking* states: "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special **and** the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Belford Trucking*, 243 So. 2d at 648 (emphasis added).

Adana states in its Response that it has "identified the date of each of the three deposits, the amount of each of the three deposits, and the holder and number for the account into which each of the tranche of the funds was deposited" and therefore Adana has identified specific funds that were converted.  But that is only half of the requirement.  Where Adana's claim fails is that it cannot establish that the identical funds it deposited were kept separate.  First, Adana deposited its assets into an account in the name of Forrest Capital and Co. at WFB, not an account in its name.  (WFB's Statement of Material Facts, ¶ 27 [ECF No. 336]).  Second, Adana's funds were commingled with funds from other sources within that same account at WFB.  (*Id.*)  Thus, Adana's funds were not separate and capable of identification as soon as they were deposited into that account.

Further, Adana's argument that the "funds were to be held in a specific, restricted account" and from there "they would be automatically released into the WVP Command Account" (Resp., p. 9) only goes to further the WFA Defendant's position that Adana did not have the right to possess the monies allegedly converted.  Fundamental to the claim of conversion, in Florida, is that a party must be in possession of the monies or has the immediate right to possession of the monies *at the time of conversion.*  *Nat'l Ventures Inc. v. Water Glades 300 Condominium Assoc.*, 847 So.2d 1070, 1073 (Fla. 4th DCA) (emphasis added).  Clearly Adana was not "in possession of" and did not have "immediate right to possession of the monies at the time of the conversion" in this case because it had transferred the moneys to an account controlled by Forrest Capital and Co. and, as repeatedly alleged by Adana, were almost immediately transferred out of the account, *i.e. converted*.

### 2. No Actual Knowledge By The WFA Defendants

Adana's Response does not dispute, nor can it, that it must establish that the WFA Defendants had ***actual knowledge*** that the Forrest Capital Parties intended to convert their loan proceeds. Additionally, to establish substantial assistance in a fraudulent scheme to steal funds, "knowledge of the underlying fraud is the crucial element." *Freeman v. JP Morgan Chase Bank N.A.*, No. 15-14944, 2017 WL 128002 (11th Cir. Jan. 13, 2017) (internal quotations omitted). Despite Adana's repeated statements in its Response that there is "ample" and "overwhelming" evidence to show the WFA Defendants had actual knowledge of the Forrest Capital Parties' intent to misappropriate and convert Adana's funds, in reality, Adana is not able to point to *any* such evidence, and as such, the WFA Defendants are entitled to summary judgment.

Due to the absence of evidence on the most important element of actual knowledge, Adana proffers only a handful of irrelevant facts that establish nothing. Specifically, Adana continuously alleges that Zoch violated WFA policies and procedures, and therefore this, and this alone, means WFA had actual knowledge of the Forrest Capital Parties' actions. Yet Adana cannot establish that Zoch violated any policy. Nonetheless, in support of this claim, Adana relies solely on *Freeman,* and once again, Adana's reliance is misplaced. Nowhere in *Freeman* did the court hold, as stated by Adana in its Response, that opening accounts contrary to internal policies was per se evidence of actual knowledge. Once again, Adana has no evidence of any such WFA policies that Zoch violated.

And the fact that Zoch referred to the accounts that he opened at WFA as "sub-accounts" proves nothing by way of actual knowledge, despite Adana's arguments to the contrary (Resp., p. 11). Lastly, Adana's labeling the factors supporting WFA's decision to exit the Forrest Capital as "indicative of money laundering" does not make it so, and this label cannot transform the facts into what rises to the level of actual knowledge. Despite Adana's continual reference to "ample" evidence that the WFA Defendants had actual knowledge, that is simply unsupported.

### 1. No Substantial Assistance By The WFA Defendants

Adana argues in its Response that the above "actual knowledge" combined with the alleged statements made in the October 30, 2014 meeting (which it still has no proof of) equate to *substantial assistance* in the "first step of conversion." Not only does Adana not cite to any legal authority for this conclusory statement, but Adana fails to address how the WFA Defendants substantially assisted with the underlying conversion.

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying violation] to occur." *BCJJ, LLC v. LeFevre,* No. 09–CV–551, 2012 WL 3071404, at *34 (M.D.Fla. July 27, 2012). A defendant does not provide substantial assistance unless his action, or inaction, was a "substantial factor in causing the [underlying violation]." *In re Palm Beach Fin. Partners,* L.P., 517 B.R. 310, 348 (Bankr.S.D.Fla.2013). ***Thus, substantial assistance will not be found where "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme."*** *Id.* at 349 (emphasis added).  To determine whether a defendant provided substantial assistance, courts examine a variety of factors including "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, [and] his relation to the other and his state of mind."  *In re Temporomandibular Joint Implants,* 113 F.3d 1484, 1495 (8th Cir.1997).

Here, Adana merely states without support that: (i) Zoch's actions were violations of WFA's policies and therefore evidence that Zoch had actual knowledge of Adana's fraudulent activity, (ii) Zoch tried to conceal the policy violations from WFA, and (iii) WFA's decision to terminate its relationship with the Forrest Capital Parties, and failure to terminate Zoch, leads to the conclusion that WFA had actual knowledge of the scheme.

As supposed support for the above, Adana refers to an email Zoch received and which Adana describes it as a customer complaint, that Zoch, according to Adana, should have escalated to WFA management according to WFA policy.  (Resp., p. 11.)



As such, he did not violate any WFA policy.

In an attempt to create an issue of fact to defeat summary judgment, Adana takes great liberties with the record evidence, both by misconstruing or misinterpreting it.  These efforts,

however, do not have their intended effect.  At the end of the day, there simply is no evidence to support Adana's aiding and abetting conversion claim against the WFA Defendants.

## II.   CONCLUSION

Based on the foregoing, the WFA Defendants respectfully request the Court grant their Motion and enter summary judgment in their favor on Counts I, III, VI, and VIII of the Complaint, and grant such other relief as the Court deems just, necessary or proper.

Dated: March 17, 2017

**GREENBERG TRAURIG, P.A.**

By:*/s/  Beth A. Black*
    Joseph A. Vallo, Esq., FBN: 972096
    valloj@gtlaw.com
    tousap@gtlaw.com
    Beth A. Black, Esq., FBN: 116371
    blackb@gtlaw.com
    hernandezt@gtlaw.com
    FLService@gtlaw.com
    777 South Flagler Drive, Suite 300 E
    West Palm Beach, Florida 33401
    Telephone:  (561) 650–7900
    Facsimile:  (561) 655-6222

    Eva M. Spahn, Esq., FBN 0092063
    spahne@gtlaw.com
    cruzm@gtlaw.com
    FLService@gtlaw.com
    333 S.E. 2nd Avenue, Suite 4400
    Miami, Florida 33131
    Telephone:  (305) 579-0500
    Facsimile:  (305) 579-0717

    ***Attorneys   for   Defendants   Wells   Fargo Advisors, LLC and Paul Zoch***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2017, the foregoing document was served on all counsel of record identified on the attached Service List via the method designated below.

By: */s/Beth A. Black*

BETH A. BLACK, ESQ.
Florida Bar No. 116371
Blackb@gtlaw.com
JOSEPH A. VALLO, ESQ.
Florida Bar No. 972096
Valloj@gtlaw.com
EVA SPAHN, ESQ.
Florida Bar No. 0092063
Spahne@gtlaw.com
GREENBERG TRAURIG , P.A.
777 South Flagler Drive, Third Floor East
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222

*Attorneys for Defendants Wells Fargo*
*Advisors and Paul Zoch*

## SERVICE LIST

Adana Investing, Inc. v. Wells Fargo Bank, N.A., et. al.
Case No. 1:16-cv-21562-UNGARO
United States District Court, Southern District of Florida

John D. Couriel, Esq. (via email)
Stephanie D. Hauser, Esq. (via email)
KOBRE & KIM LLP
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
john.couriel@kobreim.com
Stephanie.hauser@kobrekim.com
*Counsel for Adana*

Barbara J. Riesberg, Esq. (via email)
RIESBERG LAW
Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, FL 33133
barbara@riesberglaw.com
*Counsel for Defendant Hernan Bermudez*

Charles M. Harris, Esq. (via email)
Beth A. Cronin, Esq. (via email)
Stephanie S. Leuthauser, Esq. (via email)
TRENAM, KEMKER
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
charris@trenam.com
gkesinger@trenam.com
bcronin@trenam.com
slord@trenam.com
sleuthauser@trenam.com
jammer@trenam.com
*Counsel for Defendant Wells Fargo Bank, N.A.*

Benjamin Rafael (via Certified Mail Return Receipt Requested)
11111 Biscayne Boulevard
Unit 1900
Miami, FL 33181