UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16-cv-21562-UNGARO/ OTAZO- REYES

ADANA INVESTING, INC.,

    Plaintiff,

vs.

WELLS FARGO BANK, N.A. et al.,

    Defendants.
_____/

**REPLY BY HERNAN BERMUDEZ IN SUPPORT OF HIS**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Hernan Bermudez, through undersigned counsel and pursuant to Rule 56 and Local Rule 56.1, files this reply in support of his motion for summary judgment (D.E. 317).

**INTRODUCTION**

The issue before the Court is whether there is sufficient record evidence by which a jury reasonably could find that Bermudez substantially assisted in the conversion of Adana's funds. Adana fails to cite any evidence supporting a genuine dispute as to facts material to whether Bermudez' provided substantial assistance. An item-by-item analysis of the "disputed facts" identified by Adana shows that the *admissible* evidence is insufficient to create a *genuine* issue of material fact on the main element of substantial assistance. Thus, a reasonable jury could not return a verdict for Adana on its claim against Bermudez. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,'… if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

In its sparse five-page opposition memorandum, Adana deliberately conflates the evidence allegedly supporting an inference that Bermudez knew of the underlying conversion (which Bermudez is not disputing for purposes of summary judgment) with the separate legal issue of whether Bermudez provided "substantial assistance," which is the key element for establishing aiding and abetting liability. As to this essential legal issue, Adana offers only speculation, hearsay, and conjecture. Accordingly, Adana fails to defeat Bermudez' Motion for

Summary Judgment. *See Kent v. Walgreen Co.,* 05-80753-CIV, 2007 WL 486706, at *1 (S.D. Fla. Feb. 9, 2007) ("The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.")

Adana's heavy reliance on the Eleventh Circuit's recent decision in *Freeman v. JPMorgan Chase Bank, N.A.*, is misplaced. *Freeman* does not apply because it involved a claim for **negligence**.

> As we explained in *Chang*, under Florida law **a bank generally does not owe a duty of care to a noncustomer**. But under an exception to this rule, "a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation."

*Freeman,* No. 15-14944, 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (emphasis added).

With respect to Freeman's negligence claim, the *Freeman* Court found that a fiduciary relationship existed between the customer and the non-customer and thus the bank could be found liable (*i.e.*, that it breached its duty of care) by virtue of "inaction." Here, by contrast, there is no negligence claim against Bermudez or WFB, nor is there any assertion that the Forrest Capital Parties had a fiduciary relationship with Adana. *See* Joint Pretrial Stipulation, D.E. 404, pp. 18-19 (Adana's list of disputed issues of law). Similarly, there is no allegation that trust funds were involved. *Cf. Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) ("Because 'banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled,' a bank's inaction – that is, its failure to stop the theft of such trust funds – can constitute substantial assistance.") (citation omitted)).

The holdings in *Freeman* and *Chang* are factually distinguishable from this case because there is no assertion that Bermudez owed a duty of care to Adana and no allegation of a fiduciary relationship between the Forrest Capital Parties and Adana. Accordingly, Bermudez cannot be deemed to have "substantially assisted" in the conversion of Adana's funds by "inaction."

Adana's "proof" that Bermudez provided affirmative assistance in the conversion of Adana's funds is based solely on inference, supposition, and hearsay. Because a jury's verdict must be based on solid, admissible evidence, not theories and guesswork, this Court should

exercise its gatekeeping role to prevent a jury from engaging in precisely the type of hypothesizing that Adana is advocating. *See, e.g., Bowe v. Public Storage*, 106 F. Supp. 3d 1252, 1278 (S.D. Fla. 2015) ("Plaintiffs' proposed inference that the transfer pricing reports show that Plaintiffs suffered a RICO injury because they purportedly demonstrate that the access fee consisted of pure profit, is unreasonable because it is based on conjecture and speculation").

### A. Plaintiff's Failure to Depose Bermudez is a Red Herring.

Adana's principal argument in opposition to Bermudez' motion is procedural, namely, that Adana's failure to depose Bermudez prevents the entry of summary judgment in his favor. This argument is a red herring. The reason Bermudez was not deposed is because Adana waited too long to notice his deposition. Bermudez did nothing that was nefarious or improper or that constituted a "failure to comply with his discovery obligations," nor did Bermudez "fail to appear" for his deposition.

The only deposition notice of Bermudez that Adana served was on January 10, 2017, which was 23 days before the discovery cut-off date of February 3, 2017. *See* Scheduling Order, D.E. 58. It was Adana's obligation to complete discovery on time and to commence discovery sufficiently in advance of the deadline to resolve objections. *Accord* Order, D.E. 290 ("In their Motion, Defendants set forth a litany of reasons as to why the deadlines should be extended several months; however, such justification does not circumvent Defendants' obligations to plan accordingly in scheduling depositions and seeking to compel discovery if Plaintiff failed to comply with their obligations.")

Here, Bermudez timely filed a Motion for Protection (D.E. 235) after Adana noticed his deposition. Unfortunately, Plaintiff refused to agree to the relief sought by Bermudez, namely, restricting the scope of his deposition to the facts of the Adana transaction and not allowing questioning about the related lawsuits pertaining to the Forrest Capital Parties.

Bermudez raised a legitimate objection in his Motion for Protection, which was granted, in part, after a hearing before Magistrate Otazo-Reyes, who issued the following ruling limiting the scope of his deposition:

> 1. Plaintiff Adana Investing, Inc. ("Plaintiff ") may inquire regarding Bermudez's knowledge concerning the plaintiffs in the Related Actions.

3

> 2. If Bermudez denies knowledge as to a particular plaintiff, no further inquiry will be permitted as to that particular plaintiff.
>
> 3. If Bermudez testifies that he has knowledge as to a particular plaintiff, the scope of his deposition shall be limited to such knowledge and to authentication of documents.

D.E. 284.

Due to Adana's delay in noticing the deposition in the first instance, however, the Order on Bermudez' motion for protection was not entered until February 17, 2017, which was past the discovery cut-off.

Plaintiff does not cite to any authority that would support the proposition that a plaintiff is immune from summary judgment due to its own delay in scheduling a defendant's deposition. The Court should reject this self-inflicted excuse for denying summary judgment in favor of Bermudez.

### B. There is No Significantly Probative Evidence That Hernan Bermudez Provided "Substantial Assistance" To the Underlying Conversion.

With or without Bermudez' deposition, Adana needs to carry its burden of proof on the element of substantial assistance, which only occurs when a defendant (i) affirmatively assists, (ii) helps conceal, or (iii) fails to act when required to do so. *Richter v. Wells Fargo Bank NA*, 2:11-CV-695-FTM-29, 2015 WL 163086, at *3–5 (M.D. Fla. Jan. 13, 2015).

Here, Adana has not brought a claim for negligence; it has not alleged that Bermudez owed a duty of care to Adana; and it has not alleged that a fiduciary relationship existed between Adana and the Forrest Capital Parties. Adana therefore cannot argue that Bermudez is liable due to his "inaction." *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (holding that "[m]ere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'") (citation omitted)); *Richter*, 2015 WL 163086, at *3 ("'[A] failure to act, where there is no duty to act, is not substantial assistance.'") (citation omitted)).

Nevertheless, most of the record evidence put forward by Adana falls into this impermissible and irrelevant third category of "inaction," namely, the assertion that Bermudez failed to investigate or take further steps based on "red flags" or other banking "irregularities."

For instance, Simon Groom, Adana's corporate representative, testified:

4

>THE WITNESS: Yes. Mr. Bermudez would have had the opportunity if he was acting in good faith to have advised Adana that the funds did not exist and that the correspondence we had received from Mr. Rafael were fraudulent. That he did not do.
>
>BY MS. RIESBERG:
>
>Q. So is it your testimony that Mr. Bermudez had a responsibility to investigate the situation on Adana's behalf?
>
>MR. COURIEL: Objection to the form.
>
>THE WITNESS: I would have thought that would be a normal banker's obligation and duty, yes.

Deposition of Simon Groom (11/22/2016) Vol. II at pp. 358-59.

>Similarly, Adana's transactional lawyer in London testified:
>
>>As I've said about five times now, [Bermudez] was copied on an email chain. We sent him documents asking him to explain -- I can read the email – that we've attached these documents signed by one of his colleagues at Wells Fargo, asking for an explanation, saying, "We note that you've been informed by Mr. McConley below that you're the relationship person now," and we received no response. There's clear evidence in those documents that something was wrong if you're a Wells Fargo employee, and we received no response. The fact that your client is copied and associated in an email chain and named by these fraudsters was a red flag. We can cut it into any number of items. Basically this email and its contents put off alarm bells.

Deposition of Marc Trottier (02/02/17) Vol. II at p. 299; *see also* Deposition of Graham Shear (2/1/17) Vol. II at pp. 287-88 ("We asked Mr. Bermudez and your legal department to tell us exactly what had happened with respect to these funds, and we got absolutely no response from them.")

Of course, as discussed in Bermudez' motion, these emails from London were sent two months after Adana's money had been withdrawn from the Miami Accounts and thus, even if Bermudez had a duty to act, which he did not, by October 2015 it would have been too late. Bermudez's non-responsiveness to these after-the-fact emails also cannot be the basis for an inference that he helped "conceal" the conversion because, again, he had no duty to respond. Ironically, his lack of response, which obviously was a cause for concern for Adana's lawyers,

5

probably had the opposite effect – instead of concealing wrongdoing, it alerted Adana that there was a serious problem because the banker that McConley purportedly told them was assisting him was apparently *not* assisting him.

Moving past inaction, which is legally irrelevant here, and concealment, which is factually insupportable, the totality of the "disputed facts" establishing that Bermudez "affirmatively assisted" the underlying conversion simply do not add up to a colorable claim of substantial assistance.

### i. *Bermudez Opened Unrelated Accounts for the Forrest Capital Parties*

Adana repeats *ad nauseam* the completely unimportant fact that Bermudez was "added as a team member" on the Forrest Capital Account by WFB's internal sales management software. *See* Adana's Response to Statement of Undisputed Material Facts, D.E. 420, at ¶¶ 4, 5, 8, 11, 16, 17, & 28 (hereinafter, the "UMF Response").

Yes, Bermudez opened an unrelated account for the Forrest Capital Parties. But he did not open the two Miami Accounts that were involved in the Adana transactions. Again, Adana is conflating the "actual knowledge" requirement with the "substantial assistance" requirement. The suggestion that Bermudez theoretically *should have known* of improprieties in the Miami Accounts, even assuming this inference could be made based on sound logic, would not lead to the conclusion that Bermudez assisted, substantially or otherwise, in the conversion of Adana's funds because Bermudez neither opened nor managed the Miami Accounts.[1]

### ii. *Bermudez Received Business Credit for Certain Forrest Capital Accounts*

Adana concedes that Bermudez was not an officer of WFB and did not hold a managerial position. *See* UMF at ¶ 1 & UMF Response at ¶ 1. Adana also concedes that Bermudez did not open either of the two Miami Accounts into which Adana's funds were deposited. Nonetheless, it claims that Bermudez received a business credit on an unrelated account (ending in 5631) opened by Zoch. *See* UMF Response at ¶ 4.

Merely because Bermudez may have received a sales credit from unrelated accounts, however, does not make it more likely than not that Bermudez "substantially assisted" in the conversion of Adana's funds from the Miami Accounts. Otherwise, every bank employee who is

---

[1] Likewise, Adana offers no record evidence to support its unfounded speculation that Bermudez is the "unidentified" banker who was seeking permission to send wires, nor does Adana explain how those requests by an unidentified person related in any way to Adana. There is nothing in the record to suggest that Bermudez wired any money from the Miami Accounts.

associated in any way with a customer by sales management software could be deemed, in hindsight, to have substantially assisted in wrongful conduct merely because he or she received a sales credit

Adana's proposed inference that Bermudez was "managing" the Miami Accounts because of this unrelated sales credit is illogical and unsupported by any record evidence.

### iii. *The Dane Miller Emails and Lawsuit*

The Dane Miller emails, and the lawsuit that he filed in 2014, which did not name Bermudez as a defendant, are simply irrelevant to the issue of whether Bermudez gave substantial assistance to the conversion of Adana's funds in the summer of 2015. The reasons this information is irrelevant to the element of "substantial assistance" is because the Dane Miller emails and lawsuit both *predate* the Adana transaction by half a year. Moreover, Adana concedes that it is offering the information only to establish that "Bermudez had knowledge of McConley's fraudulent dealings" – *not* to prove substantial assistance in connection with Adana.

### iv. *The October 2015 Emails From London*

These after-the-fact emails are discussed extensively in Bermudez' motion for summary judgment as being temporally irrelevant to the element of affirmative assistance because Adana's funds had already been withdrawn from the Miami Accounts two months before the emails arrived. Nothing that Bermudez did or didn't do after receiving the emails could have "substantially assisted" in their conversion, which had already happened. Nor are these emails relevant to establishing concealment: Bermudez forwarded the emails up the chain of command, without responding to them, which was a prudent decision by a non-managerial bank employee.

### v. *McConley's Hearsay Statement that Bermudez was Assisting*

Graham Shear, one of the transactional lawyers for Adana in London, testified: "My understanding is that Adana's representatives were advised that Mr. Rafael was no longer involved in the transactions and that his role would be taken over by Mr. Bermudez." Shear. Dep. Vol. II, p. 246.

This is inadmissible double hearsay because it is based on something that McConley *told* to somebody who in turn *told* Shear. As a general rule, hearsay statements cannot be relied upon to defeat summary judgment. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 09-61490-CIV, 2011 WL 1807676, at *1 (S.D. Fla. May 12, 2011) (same).

7

Accordingly, McConley's hearsay statement is therefore incompetent and inadmissible to defeat summary judgment.[2]

### vi. The $7,500 Wire Transfer

Adana admits that it does not have any evidence linking the $7,500 wire to the conversion of Adana's funds and therefore can only speculate on its purpose. *See* Opp. Mem., D.E. 420, p. 5 ("[W]as it, for example, a kickback for letting McConley continue to slide? An inducement not to return Adana's calls or otherwise blow the whistle? Having never been deposed, Bermudez will have to answer these questions at trial.") The point of summary judgment, however, is to avoid the danger of a jury speculating in the absence of objective evidence. *See, e.g., Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'[U]nsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'") (citation omitted)).

The only admissible evidence regarding the $7,500 wire is from Bermudez' Declaration: "The $7,500 wire payment that I received on September 21, 2015 from Capital B LLC was not a "commission" or any type of compensation for assisting the Forrest Capital Parties or anyone else in depriving Adana of any of its funds." Bermudez Decl., D.E. 320, at ¶ 27.[3]

The time for Adana to come forward with evidence connecting the $7,500 to some affirmative action by Bermudez has passed. Adana has failed and instead now relies entirely on semantics by lifting the word "payment" out of context from Bermudez' Declaration, where it was used as a synonym for "transfer," and instead arguing an entirely new, unintended meaning. It is obvious from the context that Bermudez was ***denying*** that he received the wire transfer in compensation for assisting in the conversion of Adana's funds. Adana cannot convert a synonym (that directly conflicts with sworn testimony) into "evidence" to defeat summary judgment. The

---

[2] Also irrelevant is the repeated assertion that Bermudez had a meeting scheduled with McConley in August 2015. *See* UMF Response at ¶¶ 11, 16, 17 & 31. There is no suggestion that the meeting had anything to do with Adana, whose funds had already been withdrawn before the meeting occurred.

[3] Adana argues that the payments relate to emails sent the same day to Bermudez's Gmail account "asking him to sign for ***other*** movie deals." *See* UMF Response at ¶ 33 (emphasis added). Adana itself thus tacitly suggests that the $7,500 wire pertains to something *other* than the transaction with Adana, specifically a different movie deal. Under this reading, the evidence would therefore also be irrelevant to establishing substantial assistance in converting Adana's funds.

Court should not indulge Adana's linguistic gamesmanship. *See Whitmore v. Fed. Express Corp.*, 16-CV-80589, 2016 WL 6995612, at *1 (S.D. Fla. Nov. 30, 2016) ("Thus, the Court declines to indulge Plaintiff in his attempted game of "gotcha.")

### vii.    WFB Terminated Bermudez' Employment

The undisputed evidence – Bermudez' Form U-5 – proves that the termination of his employment was totally unrelated to Adana, and instead was the result of failing to follow account opening procedures in September 2015 for an account owned by Aaron McConley. *See* Bermudez Decl. at ¶ 21. Because WFB did not terminate Bermudez for anything concerning Adana, the fact of his termination is legally and factually irrelevant to the issue of substantial assistance. Adana offers no objective, corroborating evidence to the contrary.

### viii.    Emails to Soral, LLC

Adana baldly asserts, without a shred of admissible evidence, that "Bermudez participated in defrauding" a company called "Soral, LLC" in "another matched film financing scheme." *See* Opp. Mem., (D.E. 420), p. 2. This "other bad acts" evidence from related lawsuits is inadmissible for the reasons set forth in Defendants' Motion in Limine Regarding Other Litigation and Other Investors, the arguments of which are incorporated herein by reference. *See* D.E. 359, p. 7 ("Because reference to these current lawsuits constitutes improper evidence of 'other acts' and will cause unfair prejudice to Defendants, such evidence is inadmissible.")

To the extent that the evidence is not excluded for the reasons argued in the motion in limine, it is nevertheless *irrelevant* to proving the substantial assistance prong. There is no logical syllogism that starts with "Bermudez defrauded Soral" and ends with "and thus substantially assisted in the conversion of Adana's funds."

## CONCLUSION

Setting aside speculation, hearsay, and inadmissible 404(b) references, there is less than a scintilla of evidence that Bermudez provided any affirmative assistance, let alone "substantial assistance," to the conversion of Adana's funds. *See Flamingo S. Beach I Condo. Ass'n, Inc. v. Sel. Ins. Co. of S.E.,* 492 Fed. Appx. 16, 26–27 (11th Cir. 2012) ("A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party."); *Kaplan v. AXA Eq. Life Ins. Co.,* 15-21174-CV, 2016 WL 3920245, at *3 (S.D. Fla.

July 15, 2016) ("Facts, rather than speculation or conjecture, are required to defeat a motion for summary judgment.")

Stated otherwise, Bermudez is so tangential to this case that the Court should apply the black letter rule from *Richter* that substantial assistance "will not be found where '[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme.'" *Richter*, 2015 WL 163086, at *3.

Accordingly, Bermudez respectfully requests that the Court grant his motion for summary final judgment.

                              Respectfully submitted,

                              RIESBERGLAW

                              Biscayne Bank Tower, Suite 1100
                              2601 South Bayshore Drive
                              Miami, Florida  33133
                              Telephone:  (305) 371-9617
                              Facsimile: 1 (305) 371-9628
                              Email: Barbara@riesberglaw.com

                              By:    /s/ Barbara J. Riesberg
                                         BARBARA J. RIESBERG
                                         Florida Bar No.: 965715

*Counsel for Defendant Hernan Bermudez*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on March 17, 2017 by email on all counsel, and via U.S. Mail on all Pro Se parties of record on the attached Service List.

By:  /s/ Barbara J. Riesberg
BARBARA J. RIESBERG

**SERVICE LIST**

John Daniel Couriel, Esquire
Stephanie L. Hauser, Esquire
Kobre & Kim, LLP
2 South Biscayne Boulevard, 35th Floor
Miami, Florida  33131
Main Telephone: (305) 967-6100
Facsimile: (305) 967-6120
Email: john.couriel@kobrekim.com; stephanie.hauser@kobrekim.com;
waleska.moncada@kobrekim.com
*Counsel for Adana Investing, Inc.*

Brad H. Samuels
Kobre & Kim, LLP
1919 M Street, NW
Washington D.C., 200036
Telephone: (202)664-1900
Email: brad.samuels@kobrekim.com
*Co-Counsel for Adana Investing, Inc.*

Jay Y. Mandel, Esquire
Kobre & Kim, LLP
800 Third Avenue
New York, New York  10022
Telephone: +1 (212) 488-1200
Facsimile: +1 (212) 488-1220
Email: jay.mandel@kobrekim.com
*Co-Counsel for Adana Investing, Inc.*

Bradley Muhs, Esquire
Charles M. Harris, Esquire
Beth A. Cronin, Esquire
Stephanie S. Leuthauser, Esquire
Brigid A. Merenda, Esquire
Trenam, Kemker
200 Central Avenue, Suite 1600
St. Petersburg, Florida  33701
Telephone: (727) 896-7171
Facsimile: (727) 820-0835
Email: Bmuhs@trenam.com; bmerenda@trenam.com; charris@trenam.com;
bcronin@trenam.com; sleuthauser@trenam.com; bshepard@trenam.com;
gkesinger@trenam.com; slord@trenam.com; jamer@trenam.com; RAnctil@trenam.com
*Counsel for Wells Fargo Bank, N.A.*

Eva Spahn, Esquire
Beth A. Black, Esquire
Joseph A. Vallo, Esquire
Greenberg Traurig, P.A.
Phillips Point - East Tower
777 S. Flagler Drive, Suite 300E
West Palm Beach, Florida  33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
Email: valloj@gtlaw.com; tousap@gtlaw.com; hernandezt@gtlaw.com; blackb@gtlaw.com; FLService@gtlaw.com; spahne@gtlaw.com; cruzm@gtlaw.com
*Counsel for Wells Fargo Advisors & Zoch*

Benjamin Rafael
11111 Biscayne Boulevard
Unit 1900
Miami, Florida 33181
*Pro Se*