UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 16-CV-21562-UNGARO/OTAZO-REYES

ADANA INVESTING, INC.,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO ADVISORS, LLC,
BENJAMIN RAFAEL,
HERNAN BERMUDEZ,
and PAUL ZOCH,

    Defendants.
_____/

### DEFENDANT WELLS FARGO BANK, N.A.'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Wells Fargo Bank, N.A. (the "Bank"), through its counsel and pursuant to Rules 7.1(c) and 56.1 of the Rules for the United States District Court for the Southern District of Florida, replies to the response in opposition to the Bank's motion for summary judgment filed by Plaintiff Adana Investing, Inc. ("Plaintiff") [Doc. 422].

Plaintiff's response begins by stating it is "remarkable" the Bank did not argue factual issues in its summary judgment motion relating to actual knowledge of the Forrest Capital Parties' alleged conversion or Plaintiff's assertion the Bank provided substantial assistance to the conversion. The Bank does dispute it had actual knowledge of the alleged conversion, and disputes that it provided substantial assistance thereto. But, as this Court is well aware, arguing disputed issues of material fact is not productive and has no place in a motion for summary judgment. Rather than argue disputed facts, the Bank's motion is based on undisputed facts that demonstrate Plaintiff has no viable claim.

Plaintiff's response fails to establish the existence of disputed issues of material fact with respect to the Bank's motion and no reasonable jury could find that the evidence supports findings of fact and inferences essential to establish the elements of Plaintiff's claims. The Bank

has demonstrated it is entitled to judgment as a matter of law, and the Bank's motion for summary judgment should be granted.

### A. There Is No Fact Issue to Be Resolved Concerning Reliance or Causation.

#### 1. Plaintiff's Loss was Not Caused by Reliance on Rafael's Alleged Representations.

To prevail on its fraudulent misrepresentation claim, Plaintiff must prove its actual and justifiable reliance on Rafael's alleged misrepresentations and false promises about restrictions on the WVPH Collateral Account [the "WVPH Account"] caused Plaintiff's loss.  Because the WVPH Account never existed, it played no role in Plaintiff's loss and, therefore, could not have caused Plaintiff's loss.  Plaintiff's response establishes that there is no genuine issue of material fact in dispute on this point, and the only reasonable inferences that may be drawn from those undisputed facts support a single conclusion:  Plaintiff's losses were not caused by reliance on alleged promises that the WVPH Account would be, or had been, restricted.  Plaintiff's losses were caused by Plaintiff's decision – on three different occasions – to wire WVPH's "loan" draws to the unrestricted account controlled by FCC, with whom Plaintiff did not even have a contract.

Plaintiff's response argues, for the first time, that Plaintiff "understood" that each tranche of Plaintiff's loans to WVPH was supposed to have moved through the FCC account and then to the WVPH Account.  See Resp. pp. 10 and 13.  Plaintiff now claims the FCC account was the "Master Account." Id.  After the funds were wired to the Master Account, Plaintiff now argues, it "understood the funds would be automatically deposited into the 'Command Account' in the name of WVPH."[1]  Resp. p. 10.  Therefore, Plaintiff argues, the "Master Account" was the FCC account and the "Command Account" was the WVPH Account, and both were supposed to have been restricted.  Id.  Plaintiff's own transaction documents foreclose this argument.

Plaintiff's argument is contrary to the terms of the transaction documents that Plaintiff's own lawyers drafted.  Those documents call for one account at the Bank, the WVPH Account. Plaintiff's Bridging Facility Agreement defines that one account as both the "Master Account"

---

[1] There is nothing in Plaintiff's response to the Bank's statement of material facts to support this new allegation.  Even if there were any parol evidence to support this fact, it is negated by the express terms of Plaintiff's loan documents.

2

and the "Command Account."  The Bridging Facility Agreement[2] identifies Plaintiff as "Lender" and WVPH as "Borrower," and defines the following additional terms:

> "Account Bank" means Wells Fargo Bank, N.A. or such other bank now or in the future with whom [Plaintiff] nominates the Master Account is held.
>
> *"Master Account" means the account defined as the "Command Account" in the Account Bank Confirmation.*
>
> "*Account Bank Confirmation*" means the written irrevocable confirmation from the Account Bank to [Plaintiff] and [WVPH] confirming, amongst other things that:
> (a) the Account Bank shall only act, in relation to all matters concerning the Master Account, in accordance with the provisions of the Funding Agreement, including without limitation, that the Account Bank shall, unless otherwise instructed by [Plaintiff], return all sums standing to the credit of the Master Account to [Plaintiff] on the Business Day following the Final Repayment Date; [and]
> (b) the Account Bank shall provide various confirmations to the Lender and the Borrower, including: (i) confirmation of the receipt of the sums referenced in the Utilisation Request; (ii) confirmation that the Master Account has been fully and irrevocably opened; and (iii) confirmation of the actual signature cards for the Master Account.

See, e.g., May 15, 2015 Bridging Facility Agreement, § 1.1, pp. 1-2, Ex. 9 to Tr. of Nov. 21-22, 2017 Dep. of Simon Groom (hereinafter, "Groom Dep.") [Doc. 321] (emphasis added).  Based on Plaintiff's definition, the "Master Account" *is* the "Command Account" as the Command Account is *defined in the* Account Bank Confirmation.

The alleged Account Bank Confirmation is the May 12, 2015 letter purportedly signed by Rafael.  It also was drafted by Plaintiff's lawyers and it defines a single command account: "the

---

[2] The "Bridging Facility Agreement" is the principal loan document on which Plaintiff purports to rely for its claims against the Bank and other defendants in this case.  See, e.g., Aff. of Trottier Doc. 22-1 (identifying Bridging Facility Agreements alone as the "Loan Agreements," and neither referring to nor attaching the "Funding Agreements" upon which Mr. Trottier relied in his deposition testimony cited in Plaintiff's response).  Among other things, the Bridging Facility Agreement is the agreement on which Plaintiff relies for the choice of English law clause Plaintiff argues renders the criminally usurious nature of its loan irrelevant in this case.

3

command account to be opened at Wells Fargo [] in the name of WVPH (the 'Command Account')." Groom Dep. Ex. 15, p. 1. The Bridging Facility Agreement further provides that WVPH was permitted to maintain only two accounts: the "production account" at Arvest Bank and the "Master Account" at the Bank. See Bridging Facility Agreement, § 1.1, p. 3 (defining "Production Account") and § 17.3.1, p. 11 (providing "Other than the Production Account, the Master Account shall be the only account of [WVPH]"). The Bridging Facility Agreement is clear that the "Master Account" is the same account as the "Command Account" to be opened at the Bank "in the name of WVPH."

Plaintiff may not avoid, or attempt to rewrite, its transaction documents to avoid summary judgment. The undisputed evidence of record establishes that Plaintiff chose to wire funds into the FCC account, despite having no contract with FCC, no security agreement over FCC's accounts, and no representation from Rafael that the FCC account would be (or had been) restricted. Plaintiff's response argues this very point—that FCC was not a party to Plaintiff's agreements—in an attempt to support Plaintiff's contention that it need not specifically identify the funds allegedly converted upon FCC's transfer of them from the FCC account to an account held by FCP. See Resp. p. 13. Plaintiff's response offers no plausible argument that evidence exists from which a jury reasonably could infer that Plaintiff's loss was caused by its reliance on promises or representations made by Rafael. Therefore, Plaintiff's misrepresentation claim fails, and the Bank is entitled to judgment on that claim as a matter of law.

## 2. No Actual or Justifiable Reliance on Rafael's Alleged Representations

Plaintiff's response does not raise any genuine dispute concerning the material facts identified by the Bank as demonstrating Plaintiff did not actually or justifiably rely on Rafael's allegedly false promises or representations as a matter of law. Nor does Plaintiff's response raise even a metaphysical doubt: no reasonable jury could find the Bank is liable to Plaintiff based on Rafael's alleged misrepresentations.

Plaintiff's response argues "the record is replete with evidence" that Rafael's alleged false promises and representations were made within the scope of his employment at the Bank so, according to Plaintiff, the Bank has *respondeat superior* liability. Resp. p. 11. But Plaintiff's own argument reveals that Rafael's alleged representations had nothing to do with his work responsibilities.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ But the misconduct Plaintiff accuses Rafael of engaging in has nothing to do with such tasks: Plaintiff's complaint is based on Rafael's alleged conduct in making representations to noncustomers that the Bank would extend multimillion-dollar commercial credit lines to prospective customers, and making representations to noncustomers that the Bank would restrict (or had restricted) transactions in customer accounts to only transactions approved by noncustomers.  It strains credulity for Plaintiff to argue that Rafael's alleged conduct in making such representations to noncustomers of the Bank is conduct of "the kind [Rafael was] hired to perform," or was even incidental to the work he was hired to do.  ████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ There is no evidence that Rafael had any role in the issuance of commercial lines of credit (much less multi-million dollar lines of credit), and no evidence that his work ever involved restricting customer accounts at the Bank.

It is equally implausible for Plaintiff to argue that Rafael undertook such conduct even "in part" to serve the Bank's interests.[3]  Id.; see Restatement (Second) of Agency § 229 ("to be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized") § 235 ("an act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service" he is employed to provide).  Involving the Bank in a transaction designed to result in the Bank's loan proceeds being used to purchase the collateral to secure the Bank's loan is not an act that serves the Bank's interest and is not an act the Bank's employees are hired to perform.  The evidence is undisputed that, assuming Rafael made the representations Plaintiff alleges, he did so entirely in disservice to the Bank's interests.

---

[3] There is no citation to anything in the record to support the allegation in Plaintiff's response that the Bank "received revenues of approximately $30,000.00 from the 'McConley, Benjamin & Forrest Capital' relationship over a 12-month period."  And the evidence of record demonstrates that the Bank received no transaction fees in connection with the transfer of Plaintiff's loan proceeds out of the FCC account; all of those transfers were conducted online by the accountholder, without charge.  See Ex. 27 to Tr. of Jan. 20, 2017 Dep. of Amanda Granzella [Doc. 336, Ex. 17].

Plaintiff's reliance on decisions addressing an employer's *respondeat superior* liability for physical assault by one employee upon another is misplaced. Those decisions have no bearing on claims seeking to hold an employer liable to a third party for pecuniary loss caused by an employee's deception. See Restatement (Second) of Agency § 229 cmt. a (noting that "scope of employment" factors there listed "have primary reference to the physical activities of servants. The special rules which deal with situations in which the master may be liable for deceit . . . are stated in" section 257); Restatement (Second) of Agency § 249 (employer's liability for pecuniary loss caused by employee's misrepresentations is determined according to the same rules that govern any principal's liability for misrepresentations of an agent).

The issue before this Court is whether, on the undisputed facts of record, any reasonable jury could find the Bank liable to Plaintiff for pecuniary loss due to Rafael's alleged misrepresentations. The answer to that question is "no" because, to succeed on that claim, Plaintiff must prove that Rafael had either actual or apparent authority to speak for and bind the Bank to the statements on which Plaintiff claims to have relied. See, generally, Restatement (Second) of Agency § 257 (a principal is liable for loss caused to a third party by tortious representation of an agent where the representation is authorized or apparently authorized). To justify a finding of actual authority, Plaintiff must establish that the Bank acknowledged Rafael's power to bind the Bank to the matters Rafael allegedly represented to Plaintiff; that Rafael accepted the responsibility of representing the Bank in such matters; and that the Bank retained control over Rafael's conduct with respect to such matters. See, e.g., Florida State Oriental Medical Ass'n, Inc. v. Slepin, 971 So. 2d 141, 145 (Fla. 1st DCA 2007). There is no evidence to support the required findings of actual authority. All evidence regarding Rafael's employment establishes he did not have actual authority to bind the Bank concerning the subject matter of the alleged misrepresentations. And, as explained in detail in the Bank's summary judgment motion, even before Plaintiff's first loan to WVPH, Plaintiff knew Rafael did not have authority to bind the Bank to the representations on which Plaintiff claims to have relied.

There is also no evidence Rafael had apparent authority to speak for and bind the Bank concerning the subject matter of the representations. The evidence of record requires the conclusion that Rafael did not have apparent authority to bind the Bank concerning the subject matter of the alleged misrepresentations. Apparent authority cannot arise from representations by the agent or on the subjective perception of the third party dealing with the agent; it arises

only based on the principal's "holding out" the agent as having authority to bind the principal to the matters represented. Florida State, 971 So. 2d at 145. The third party seeking to hold the principal liable must establish that the principal held out the agent as "possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority." H.S.A. Inc. v Harris-in-Hollywood, Inc., 285 So. 2d 690, 693 (Fla. 4th DCA 1973). The principal's "holding out" must be such that the third party can establish that it knew facts that led it to "reasonably believe" the agent had the authority to bind the principal on the particular matter at issue. See Florida State, 971 So. 2d at 145-46; H.S.A. 285 So. 2d at 693 (to establish apparent authority, third party must prove it "knew of the facts [that supported the agent's apparent authority to make a particular representation], and acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority"); Lensa Corp. v. Poinciana Gardens Ass'n, 765 So. 2d 296, 298 (Fla. 4th DCA 2000).

Plaintiff's response insists that the Bank's evidence that Plaintiff did not actually or justifiably rely on the alleged representations should be rejected because Plaintiff had no duty "to seek assurances from an authorized representative of the Bank" concerning the extent of Rafael's authority because Plaintiff had no duty to "conduct such an investigation." Resp. p. 9. Plaintiff's response conflates the Bank's arguments, and misapprehends the law on this point.

As set forth above, in order to prevail on its fraud claim against the Bank, Plaintiff is required to establish that it relied on representations by someone in authority at the Bank—not on representations of Rafael himself—in arriving at the conclusion that it had a good faith, reasonable basis "to believe, and did actually believe," that Rafael had authority to bind the Bank to the matters Rafael allegedly represented to Plaintiff. See, e.g., Perper v. Sonnabend, 221 F.2d 142, 144-45 (5th Cir. 1955) (applying Florida agency law to affirm directed verdict entered for defendant principal, where plaintiff failed to present evidence that anyone other than agent had made a representation to plaintiff concerning authority of agent to bind the principal); Florida State, 971 So. 2d at 145; H.S.A. 285 So. 2d at 693; Lensa, 765 So. 2d at 298. Plaintiff bears the burden of proving that at the time of Plaintiff's alleged reliance on Rafael's apparent authority, it had in its possession facts that gave rise to Plaintiff's good faith, reasonable belief that Rafael had authority to bind the Bank to the statements on which Plaintiff claims to have relied. See, e.g., Rushing v. Garrett, 375 So. 2d 903, 906 (Fla. 1st DCA 1973) ("manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the

action or manifestation of authority must be reasonable"); H.S.A. 285 So. 2d at 693 ("Manifestly, a party dealing with an agent must prove that the facts giving color to the agency were known to him when he dealt with the agent and believed the agent was acting within his authority if he has no knowledge of such facts, he does not act in reliance upon them and is in no position to claim anything on account of them.").

The requirement that a third party have a "reasonable" belief in the representor's apparent authority is unaffected by authorities holding that a third party's reliance on the truth of the representation need not be "reasonable," but only "justifiable."[4] See Lensa, 765 So. 2d at 298; Restatement (Second) of Agency § 257, Cmt. a. ("statement is apparently authorized if the other party to a transaction reasonably believes from conduct for which the principal is responsible that the agent is authorized to make the representations as made. For such statements, the principal's liabilities do not depend upon the theory of *respondeat superior* but upon the reason underlying liability upon authorized or apparently authorized contracts"); Fla. Standard Jury Instr. No. 409.7 (fraudulent misrepresentation claimant may rely on a false statement even though its falsity could have been discovered had claimant made an investigation; but claimant may not rely on a false statement if it knew it was false or its falsity was obvious).

Plaintiff failed to establish Rafael's actual or apparent authority. For this reason, the Court must reject the argument in Plaintiff's response that it was reasonable for Plaintiff to rely on Rafael's own statements of his authority because the Bank failed to publicly announce limits thereon. See Resp. p. 9; Human Services Plaza Partnership v. Huntington Nat'l Bank, 79 F.3d 1148, Nos. 94-3362, 94-3365, *2-*3 (6th Cir. Mar. 15, 1996) (unpublished) (affirming trial court's entry of judgment as a matter of law for defendant bank, rejecting plaintiff's argument that plaintiff was entitled to rely on apparent authority of "relationship banker" to bind bank to issue letter of credit based on the fact that plaintiff "had no way of knowing [the banker's] actual

---

[4] Plaintiff's response argues that there is no requirement under Florida law that a plaintiff's reliance be "justifiable." Plaintiff is incorrect. As explained in the Bank's response in opposition to Plaintiff's motion for partial summary judgment (Doc. 415, pp. 14-19) under Florida law, a plaintiff asserting a claim for fraudulent misrepresentation is not required to demonstrate it undertook a reasonable inquiry to ascertain the truth of a representation before relying upon it. But a plaintiff cannot rely on a representation plaintiff knew was false or that was obviously false. In other words, even one asserting a fraudulent misrepresentation claim is not free to turn a blind eye to facts in its possession or under its control that put it on inquiry notice that reliance on the representation is unwarranted.

authority due to the confidentiality of the Bank's internal loan approval process," and holding defendant bank's conduct in keeping limits of banker's actual authority confidential was "not a 'holding out' of [the banker] as having any type of lending authority whatsoever").

Furthermore, as set forth in detail in the Bank's summary judgment motion,  As a matter of law, Plaintiff cannot claim to have reasonably believed that Rafael had apparent authority to bind the Bank to an agreement with Plaintiff that was contrary to the Bank's interests. See, e.g., Security Union Title Ins. Co. v. Citibank, Fla., 715 So. 2d 973 (1998) (citing Restatement (Second) of Agency §§ 261, 262 (principal is not liable to third party where third party has notice that agent is acting for his own purposes contrary to interests of principal)).

Plaintiff's response argues the evidence in this case is "remarkably similar" to the circumstances presented in Coquina Investments v. Rothstein, 2011 WL 4971923 (S.D. Fla. Oct. 19, 2011) and that this Court therefore should allow a jury to determine whether Rafael was acting within the scope of his employment or for the Bank's interests when he purportedly signed letters to Plaintiff "on [Bank] letterhead" or met with or emailed Plaintiff's purported agents, Burlingham and Vandermolen. But, this case is nothing like Coquina.

In Coquina, the accounts at issue were attorney trust accounts, clearly accounts that contain "other people's money," and so may be subject to special restrictions on the account holder's use of the funds on deposit therein. Id. at *1. In this case, the account at issue is an ordinary business checking account held by FCC. In Coquina, the bank employee alleged to have made fraudulent misrepresentations in letters was the bank's Regional Vice President. Id. at *2. Rafael was not an officer of the Bank. He was a Personal Banker 1, an entry-level retail customer service position. Common sense dictates that a jury reasonably could infer that a bank's regional vice president had apparent authority to bind the bank to promises and representations he made in writing, on original authentic bank letterhead, signed by him,

9

particularly in the absence of evidence that the complaining party was ever given any reason to doubt that authority.  In contrast, the undisputed facts in this case compel the conclusion that a jury could <u>not</u> reasonably infer that Plaintiff actually and reasonably believed that Rafael had apparent authority to bind the Bank regarding the conduct Plaintiff attributes to him.  Similarly, in <u>Freeman v. JPMorgan Chase Bank, N.A.</u>, 2017 WL 128002, *1-*2 (Jan. 13, 2017), also cited in Plaintiff's Response, the account at issue was titled as an escrow account, and the bank employee alleged to have been involved was an officer of the defendant bank.  Neither <u>Coquina</u> nor <u>Freeman</u> presents facts comparable to those presented in this case.

**B. <u>Plaintiff Has No Aiding and Abetting Conversion Claim.</u>**

Plaintiff's response does not contest that WVPH, not Plaintiff, had the right to possess the loan proceeds at the time FCC allegedly converted them.  Instead, Plaintiff's response argues that the Bank's failure to shut down the Forrest Capital Parties' accounts before Plaintiff made its first loan to WVPH is sufficient to render the Bank liable for aiding and abetting FCC's conversion of the loan proceeds.  Plaintiff cites no authority for the proposition that "the first step of conversion [is] acquiring the property," because as described in the Bank's motion for summary judgment that is not the law.  Plaintiff's argument seeks to avoid summary judgment on its aiding and abetting conversion claim by attempting to recast it as an aiding and abetting fraud claim.  Plaintiff may not amend its complaint by arguments made in response to a motion for summary judgment.  The Bank's motion explains why Plaintiff's aiding and abetting conversion claim fails, and Plaintiff's response does nothing to controvert the material facts identified in support of the Bank's position that Plaintiff has no claim against the Bank for aiding and abetting conversion.  The Bank is entitled to judgment in its favor and against Plaintiff on that claim as a matter of law.

      Respectfully submitted,

      **TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**

      <u>/s/ Charles M. Harris, Jr.</u>
      Charles M. Harris, Jr.  – FBN: 967459
      (Lead Trial Counsel)
      charris@trenam.com; gkesinger@trenam.com
      Beth A. Cronin – FBN: 0054933
      bcronin@trenam.com; slord@trenam.com

Stephanie Leuthauser – FBN: 44981
sleuthauser@trenam.com; jamer@trenam.com
200 Central Avenue, Suite 1600
St. Petersburg, FL  33701
727-896-7171  /  727-822-8048 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will forward a copy of the foregoing, together with the notice of electronic filing of same, via email to all counsel of record on the Service List below and a true and correct copy was sent via U.S. Mail to Benjamin Rafael, 11111 Biscayne Boulevard, Unit 1900, Miami, FL 33181 on this 17th day of March, 2017.

/s/ Charles M. Harris, Jr.
Attorney

**SERVICE LIST**

John D. Couriel, Esq.
Stephanie L. Hauser, Esq.
Kobre & Kim LLP
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
john.couriel@kobreim.com
stephanie.hauser@kobrekim.com
*Counsel for Plaintiff*

Beth A. Black, Esq.
Joseph A. Vallo, Esq.
Eva Spahn, Esq.
Greenberg Traurig LLP
blackb@gtlaw.com
hernandezt@gtlaw.com
valloj@gtlaw.com
tousap@gtlaw.com
spahne@gtlaw.com
FLService@gtlaw.com
777 South Flagler Drive, Suite 300 E
West Palm Beach, FL  33401
*Counsel for Defendants Wells Fargo Advisors, LLC and Paul Zoch*

Barbara J. Riesberg, Esq.
RiesbergLaw
Biscayne Bank Tower, Suite 1100
2601 South Bayshore Drive
Miami, FL 33133
barbara@riesberglaw.com
*Counsel for Defendant Hernan Bermudez*

11