**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:16-cv-21562-UU

ADANA INVESTING, INC.,

      Plaintiff,

v.

WELLS FARGO BANK, N .A., *et al.*,

      Defendants.

                                              /

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff's Motion for Sanctions against Defendants for Failing to Appear for Duly Noticed Depositions, or, in the Alternative, to Compel Defendants to Appear for Depositions (D.E. 241), Plaintiff's Supplemental Motion for Sanctions against Defendants Wells Fargo, N.A. and Wells Fargo Advisors, LLC (D.E. 326), and Plaintiff's Motion for Partial Summary Judgment (D.E. 341).

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises.

On May 2, 2016, Plaintiff, Adana Investing, Inc. ("Plaintiff"), filed this action against Defendants, Wells Fargo Bank, N.A. ("Wells Fargo Bank"), Wells Fargo Advisors, Inc. ("Wells Fargo Advisors"), Benjamin Rafael ("Rafael"), Hernan Bermudez ("Bermudez"), and Paul Zoch ("Zoch") (collectively, "Defendants"). D.E. 1. Plaintiff's case arises from Defendants' alleged involvement in aiding and abetting the conversion of more than $28.5 million dollars that Plaintiff deposited into a bank account at Wells Fargo Bank. According to Plaintiff, Defendants'

1

employees, Rafael, Bermudez, and Zoch, made fraudulent misrepresentations to induce Plaintiff to deposit the funds, which were almost immediately converted and dissipated by Defendants.

At this stage of litigation, discovery is complete.  Throughout discovery, there were nearly twenty discovery motions filed by the parties, five hearings on discovery-related matters before Magistrate Judge Otazo-Reyes, and three motions for sanctions filed by Plaintiff.  Yet despite all of this, in Plaintiff's third motion for sanctions filed after the discovery deadline, Plaintiff informs the Court that due to Defendants' failure to cooperate with Plaintiff during discovery, only one out of five Defendants' depositions had taken place, which occurred on the eve of the Court's discovery deadline.  Plaintiff further informs the Court that Defendants have defied a number of Court orders, along with this Court's Scheduling Order by conducting discovery outside of the Court-imposed deadline, and also dumped a number of relevant document and witness identities on Plaintiff at and after the close of discovery.

Defendants' responses to Plaintiff's Motion for Sanctions are replete with excuses, for which this Court has little to no sympathy.  The Court finds it difficult to believe that for almost nine months, Defendants were unable to find an attorney in their army of lawyers who would be available to defend their clients' depositions, were unable to locate the pertinent documents that Plaintiff addresses in its Motion, and were unable to finish discovery in a timely manner in a case involving common law tort claims.  Defendants' position that Plaintiff is not unduly prejudiced by their late disclosures because Plaintiff will have the opportunity to question the undisclosed witnesses on the belatedly-produced documents at trial not only fails, but it is offensive and flies in the face of the spirit and intent of the discovery process.  In fact, the Court believes this very scenario epitomizes what it is contemplated by the unduly prejudiced standard set forth in the Federal Rules of Civil Procedure.  *See Gratton v. Great American Commc'ns.*, 178 F.3d 1373,

1374-75 (11th Cir. 1999) ("Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process.").

As relief, Plaintiff requests that this Court enter default judgment against Defendants, strike Defendants' affirmative defenses, and/or prohibit Defendants from opposing certain elements of Plaintiff's claims. Based on the Court's review of Defendants' overall conduct throughout litigation, the Court finds sanctions are warranted. However, the Court does not find that default judgment should be entered against Defendants at this stage, as the Court believes a less drastic sanction in the form of striking Defendants' affirmative defense will suffice. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) ("[T]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.").

At the same time that it is moving for sanctions, Plaintiff is also moving for partial summary judgment as to Defendants' affirmative defenses. Notwithstanding the Court's ruling striking Defendants' affirmative defenses, the Court will also consider Plaintiff's Motion for Partial Summary Judgment as to Defendants' Affirmative Defenses on the merits. Because the Court finds there is no genuine issue of material fact as to Defendants' affirmative defenses, the Court is granting Plaintiff's Motion for Partial Summary Judgment.

The Court separately considers each Motion below.

## PLAINTIFF'S MOTIONS FOR SANCTIONS

Plaintiff moves for sanctions[1] based on Defendants' discovery violations as they pertain to two categories: (1) Defendants' failure to cooperate with Plaintiff in coordinating depositions

---

[1] In this Order, the Court is considering Plaintiff's Motion for Sanctions against Defendants for Failing to Appear for Duly Noticed Depositions, or in the Alternative, to Compel Defendants to Appear for Depositions (D.E. 241), which was filed on January 27, 2017, before the discovery deadline expired, as well as Plaintiff's Supplemental Motion for Sanctions against Defendants,

and Defendants' subsequent failure appear for their depositions[2] and (2) Defendants' failure to timely produce key documents and witnesses.

## A. Background

### 1. Defendants' Depositions

On December 21, 2016,[3] Plaintiff requested dates of availability for the depositions of the individual Defendants, Zoch, Bermudez, and Rafael, and proposed dates upon which the depositions might take place.[4]  On December 23, 2016, Plaintiff provided 30(b)(6) topics to both Wells Fargo Bank and Wells Fargo Advisors and requested dates of availability for their corporate representatives' depositions.   The Court addresses the circumstances surrounding Defendants' depositions below.

#### a. *Wells Fargo Bank*

After Wells Fargo Bank received the proposed 30(b)(6) topics from Plaintiff on December 23, 2016, Wells Fargo Bank informed Plaintiff that it would be unable to provide

---

Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC (D.E. 326), which was filed on February 24, 2017, after the discovery deadline expired.

[2] In addressing Defendants' discovery violations as they pertain to the depositions, the Court is referring to Defendants, Wells Fargo Bank, Wells Fargo Advisors, N.A., and Bermudez. Defendant Zoch was ultimately deposed prior to the expiration of the discovery deadline; therefore, the Court will not address the circumstances surrounding Zoch's failure to appear for his January 23, 2017 noticed deposition.  In addition, Defendant Rafael's belligerent failure to participate in discovery will be addressed in a separate forthcoming order.

[3] In considering these sanctions motions, one must be aware of the time constraints set forth by this Court.  On August 1, 2016, this Court issued her Scheduling Order for Pretrial Conference and Trial, setting February 3, 2017 as the deadline for the completion of discovery in this case. D.E. 58.  In her Scheduling Order, the Court forewarned the parties that the "[f]ailure to comply with the time schedule may result in dismissal or other sanctions."  *Id.*

[4] Plaintiff informs the Court that it was unable to take depositions of Defendants prior to January because Wells Fargo Bank and Wells Fargo Advisors continued to produce responsive documents to Plaintiff's First Request for Production, which was served on July 29, 2016, well into January 2017.

dates of availability for over a week, at least until the week of January 2.  On January 6, 2017, counsel for Wells Fargo Bank informed Plaintiff that he was personally unavailable January 23-25, 2017, and at that time, he did not propose additional dates.  Counsel for Wells Fargo Bank also advised that they believed the 30(b)(6) topics were overbroad, and informed Plaintiff that it would provide written objections to Plaintiff by the week of January 9, 2017.  Wells Fargo Bank failed to do so and never provided written objections to the 30(b)(6) topics until the second to last day of discovery – February 2, 2017 – and only after Plaintiff filed its second Motion for Sanctions (D.E. 241).

After receiving no response from Wells Fargo Bank's counsel and being mindful of the impending discovery deadline, Plaintiff noticed the deposition of Wells Fargo Bank's 30(b)(6) corporate representative on January 10, 2017 and scheduled the deposition for January 25, 2017. In the e-mail to Wells Fargo Bank, Plaintiff advised that it was hopeful that one of the other attorneys of record for Wells Fargo Bank[5] would be available on January 25, but Plaintiff also informed Wells Fargo Bank that it was willing to work with counsel to reschedule the deposition for a mutually-agreeable date prior to the discovery cutoff.

On January 13, 2017, Wells Fargo Bank's counsel advised that he was unavailable on January 25, 2017, and no other attorney of record was permitted to defend the deposition.  In addition, counsel did not propose an alternative date.  That same day, Plaintiff asked Wells Fargo Bank to propose an available date before the February 3 discovery cut-off, and Plaintiff reconfirmed that it was willing to reschedule the deposition.  Wells Fargo Bank's counsel did not respond, did not file a motion for protective order, and did not appear for its deposition on January 25, 2017.

---

[5] As of the date of this Order, Wells Fargo Bank has four attorneys listed of record.  It is worth noting that the law firm representing Wells Fargo Bank has over sixty lawyers.

**b.** *Wells Fargo Advisors*

After receiving the 30(b)(6) topics on December 23, 2016, counsel for Wells Fargo Advisors informed Plaintiff that they would also not provide dates of availability until the week of January 2, 2017, similar to counsel for Wells Fargo Bank.  On January 4, 2017, counsel for Wells Fargo Advisors said they were available for depositions on January 23-25, 2017, contingent upon their witness's availability.   Counsel for Wells Fargo Advisors informed Plaintiff in a general manner that they believed the 30(b)(6) topics were overly broad; however, Wells Fargo Advisors never formally served objections to the topics until after its corporate representative failed to appear for its noticed deposition.

After receiving no response from Wells Fargo Advisors' counsel and being mindful of the upcoming discovery deadline, Plaintiff noticed the deposition of Wells Fargo Advisors' corporate representative on January 10, 2017, and scheduled the deposition for January 23, 2017. Similar to Wells Fargo Bank, in the e-mail to Wells Fargo Advisors' counsel, Plaintiff informed opposing counsel that if there was a conflict with the date, Plaintiff would be open to rescheduling the deposition for a mutually-agreeable date prior to the February 3 discovery cut-off deadline.

On January 13, 2017, counsel for Wells Fargo Advisors advised that they were unable to produce a corporate representative on January 23, did not provide an alternate date, did not designate a corporate representative, did not serve objections to the topics, did not file a motion for protective order, and did not initiate any conferral on the scope of the topics in advance of the January 23 deposition.   No corporate representative appeared for the noticed deposition on January 23, 2017.

### c. *Bermudez*

On January 6, 2017, Bermudez' counsel informed Plaintiff that she would not produce Bermudez for deposition before receiving a ruling on a pending Motion to Intervene, which was filed by non-parties.   On January 10, 2017, after not receiving dates of availability for the deposition, Plaintiff noticed the deposition of Bermudez for January 27, 2017.   On January 25, 2017, the Court denied the Motion to Intervene, and Plaintiff sought assurances from Bermudez' counsel that Bermudez would appear for his deposition on January 27.   On January 26, 2017, the day before the noticed deposition, Bermudez filed a motion for protective order and argued that his deposition should be limited in light of his being named a defendant in other lawsuits alleging that he participated in defrauding other victims.   On January 27, 2017, Bermudez failed to appear for his deposition without any explanation whatsoever.

### 2. <u>Production of Key Documents and Witnesses</u>

As of January 25, 2017, Plaintiff had taken certificates of non-appearance for Defendants, Wells Fargo Bank, Wells Fargo Advisors, Rafael, and Zoch.   On that same day, Defendants moved this Court for a four-month extension of her Scheduling Order and argued that they required additional time to complete crucial discovery.   D.E. 231.   On February 3, 2017, Wells Fargo Bank moved for a limited extension of the discovery deadline to take additional depositions.   D.E. 261.   However, on February 22, 2017, this Court denied both of Defendants' motions for extension of time and ordered that all deadlines remain in place.   D.E. 290.

### a. *Discovery Outside of the Court's Ordered Deadline*

Much to the surprise of this Court, Plaintiff informs the Court that without securing leave of Court or conferring with Plaintiff on dates of availability, Wells Fargo Bank served a notice of witness deposition for March 1, 2017 in London, which is undisputedly outside this Court's

ordered discovery deadline of February 3, 2017.  Apparently, Wells Fargo Bank and Wells Fargo Advisors obtained an order from a London court for letters rogatory.  On February 23, 2017, Plaintiff learned that Wells Fargo Bank and Wells Fargo Advisors intended to proceed with the deposition of this witness on March 1, 2017, notwithstanding this Court's previous Order denying Wells Fargo Bank's request for leave to do so.

### b.  *Key Documents Related to Amanda Granzella*

On January 20, 2017, Plaintiff deposed Wells Fargo Bank employee, Amanda Granzella ("Granzella"), who was the Wells Fargo Bank District Manager during the relevant time period. During her deposition, Granzella testified that she did not know the reason why Forrest Capital Partners' account was closed at Wells Fargo – a fact that would be relevant to Defendants, Wells Fargo Bank and Wells Fargo Advisors' knowledge that Forrest Capital Partners was engaged in wrongful behavior.[6]  However, on the last day of discovery – February 3, 2017 – Wells Fargo Bank produced an e-mail chain from May 15, 2015[7] from Granzella.  In the e-mail, Granzella states, "This is ugly lol!!!  What do we need to do to start the process to close [McConley from Forrest Capital Partners] out?"

Defendant Wells Fargo Bank insists that Plaintiff was not prejudiced by not having the May 15, 2016 e-mail because Wells Fargo's production vendor did not complete processing the responsive documents until February 2, 2017, and it was Plaintiff's fault for proceeding with this deposition, despite not having all of the documents before the deposition.

---

[6] The Court included a brief recitation of Plaintiff's claims and factual allegations in the Court's discussion of Plaintiff's Motion for Partial Summary Judgment, *infra*.

[7] In this case, May 15, 2015 is a significant date because it was the date upon which Plaintiff deposited its first tranche of $15 million with Wells Fargo Bank.

### c. *Smart Station Notes*

At Zoch's deposition on February 3, 2017 – the last day of discovery – Zoch testified to the existence of a note-taking system for client interactions, called the "Smart Station." According to Plaintiff, Zoch testified at his deposition that he documented a meeting with McConley in the Smart Station.  It was only at that point that Plaintiff had learned of the existence of the Smart Station notes, including one note that documented a meeting between Zoch and McConley that took place on September 29, 2014.

However, throughout discovery, Wells Fargo Advisors had not produced any document pertaining to this system, despite Plaintiff's requests.  These notes are arguably responsive to Requests Numbers 8, 9, and 59 of Plaintiff's First Request for Production, which was initially served six months prior, on July 29, 2016.  On February 17, 2017, two weeks after Zoch's deposition and two weeks after the close of discovery, Wells Fargo Advisors produced the Smart Station notes accounts held by McConley and his Forrest Capital Entities.

Wells Fargo Advisors claims that its failure to produce the Smart Station notes was an "inadvertent oversight."  It further claims that Plaintiff is not prejudiced by the late production because "Plaintiff will have ample opportunity to question Mr. Zoch about the Smart Station notes at trial."

### d. *Failure to Schedule Witnesses*

Wells Fargo Bank and Wells Fargo Advisors also failed to cooperate with Plaintiff in scheduling the depositions of three employees, who are likely to have knowledge about the facts relevant to this case – Jeff King, Jesse Paino, and Thomas Joyce.  Jeff King was identified by Wells Fargo Advisors as a Wells Fargo Advisors Compliance Consultant and designated him as an e-mail custodian.  Jesse Paino is a Senior Business Banking Relationship Manager with Wells

Fargo Bank.   Thomas Joyce is a Senior Regional Fiduciary Manager at Wells Fargo Private Bank.  In support of its argument that these witnesses are highly relevant to this case, Plaintiff points to e-mails, which demonstrated that these witnesses may have had knowledge of McConley's and/or Forrest Capital's improper conduct.

On December 21, 2016, Plaintiff requested dates of availability for the depositions of these employees, and proposed January 3-6, January 9-13, and January 23-25 as available dates for the depositions.  Plaintiff also asked that Defendants confirm that all outstanding discovery would be served by December 23, 2016.  Despite having served document requests on July 29, 2016, September 30, 2016, and obtaining orders compelling production against Wells Fargo Bank, neither Wells Fargo Advisors nor Wells Fargo had completed production by December 23, 2016.

On December 22, 2016, counsel for Wells Fargo Bank responded that they were available for the depositions on January 11, 12, and 13 and January 30-February 3, 2017.  On December 27, 2016, Wells Fargo Advisors produced a batch of e-mails and documents, which included e-mails with Paino and Joyce.  On January 10, 2017, Plaintiff noticed the depositions of King, Paino, and Joyce for January 28, 29, and 30.  Plaintiff also informed Defendants that if those days did not work, Plaintiff would work to reschedule the depositions for mutually-agreeable dates.  On January 13, 2017, Wells Fargo Advisors advised that King was not available on January 28, and when asked whether King was available on a different date, Wells Fargo Advisors did not respond.  On January 13, 2017, Wells Fargo Bank advised that they were looking to clear dates for the depositions of Paino and Joyce, and that production from these witnesses' e-mail addresses was not yet complete.  Wells Fargo bank suggested that the depositions be postponed until at least January 31.

On January 23, 2017, Plaintiff followed up with counsel for Wells Fargo Bank and Wells Fargo Advisors about the scheduling of the depositions for King, Paino, and Joyce, and asked when those witnesses would be available during the week of January 30 through February 3; however, neither Wells Fargo Bank nor Wells Fargo Advisors responded.

On January 25, 2017, Plaintiff again followed up with Wells Fargo Bank and Wells Fargo Advisors about dates of availability for the depositions of Paino, Joyce, and King, but no response was given nor alternative dates provided.  On January 27, 2017, Wells Fargo Bank advised that Joyce was not available for the deposition that Plaintiff noticed for January 30, 2017, and advised that Wells Fargo Bank would attempt to get another date and would reach out to coordinate as soon as possible; however, Wells Fargo Bank did not provide dates of availability for the depositions of Joyce or Paino within the discovery time period.  On January 28, King did not appear for his noticed deposition.  On January 29, 2017, Paino did not appear for his deposition.  On January 30, 2017, Joyce did not appear for his deposition.

In response, Wells Fargo Bank informs the Court that it "attempted to clear alternative dates before February 3, 2016, but given the already double and triple-booked depositions the last week of discovery," it was unable to do so.  Wells Fargo Bank argues that given the insignificance of King's role in this case, King's deposition was not a priority in Wells Fargo Bank's mind, and therefore, it did not accommodate Plaintiff's request.

### e.  *Belated Disclosure of Key Witnesses and Documents*

On January 28, 2016, Plaintiff served interrogatories on Wells Fargo Bank, requesting that Wells Fargo Bank identify individuals whose responsibilities included, and who did "prepare, review, submit, or respond to any fraud alert reports or Anti-Money Laundering alert reports generated regarding the Forrest Capital Accounts," as well as individuals who

11

"conducted or participated in any investigation of fraud alert reports, Anti-Money Laundering alert reports, or other internal reports of suspected wrongdoing generated regarding the Forrest Capital Report." D.E. 326-9.

Wells Fargo Bank then served objections to the interrogatories, and Plaintiff moved to compel. D.E. 164. On December 19, 2016, Magistrate Judge Otazo-Reyes overruled the objections and ordered Wells Fargo Bank to serve better answers to Interrogatory Numbers 3, 5, 6, and 7. D.E. 163. However, Wells Fargo Bank waited until February 2, 2017 – the second to last day of the discovery period – to serve its supplemental answers.

In its answers served on February 2, 2017, Wells Fargo Bank identified Joe Atkinson, South Florida Regional President, as an employee with responsibilities in compliance, and further directed Plaintiff to "the individuals listed on the Loss Prevention UW reports produced and logged by Wells Fargo." D.E. 326-9. The Loss Prevention UW reports were produced the same day and the following day, along with numerous database note entries, which identified 25 potential witnesses who were involved in preparing, reviewing, submitting, responding to, and investigating suspected fraud in connection with the Forrest Capital Accounts, as well as the ultimate decision to close the accounts. D.E. 326-10.

According to Plaintiff, the Loss Prevention UW reports and database entries reveal that during the same time period that Plaintiff's funds were being deposited and then misappropriated from the Forrest Capital Accounts, there was activity within Wells Fargo Bank about whether to close the Forrest Capital Accounts and whether to continue to approve wires from those accounts. For example, on May 17, 2015, a Wells Fargo Bank employee, Michael Crisostomo made a note that recommended closing Benjamin McConley's accounts after obtaining "investigative information" that was "creating some concern." D.E. 326-11. Then, on May 29,

2015, an employee named Laurie Christopher made an entry to "retain relationship." D.E. 326-12. On June 16, 2015, the day after Wells Fargo Bank sent the closing letter to Forrest Capital, the date that Defendant Rafael's company received a $250,000 wire from FCP, and two days before Defendant Rafael was terminated, another Wells Fargo Bank employee, Vera Knight, noted: "banker kept insisting I give permission to do wires" after the decision to terminate the relationship. D.E. 326-10. Then, on July 17, 2017, another employee Nancy Landry, made a note that an extension of the account closure from July 17, 2015 to July 28, 2015, had been approved. *Id.*

Wells Fargo Bank takes the position that Plaintiff did not specifically request the Loss Prevention UW Reports, and/or that the Loss Prevention UW Reports are not properly categorized as "fraud alert reports" or "Anti-Money Laundering alert reports." Wells Fargo Bank also maintains that even if the reports were responsive to Plaintiff's discovery requests, Plaintiff has not been prejudiced because Wells Fargo Bank has since produced them, albeit on the eve of the discovery deadline. It further insists that "[t]he individuals who entered the loss prevention notes are unlikely to have any relevant discoverable information regarding the Forrest Capital Entities."

### f.  *Wire Transfer Requests and Authorizations*

On September 21, 2016, Plaintiff filed a Motion to Compel Wells Fargo Bank to produce "confidential bank records" that Wells Fargo was withholding based on Florida Statute section 655.069 and Article 1, Section 23 of the Florida Constitution. D.E. 98.

On October 13, 2016, Magistrate Judge Otazo-Reyes granted Plaintiff's Motion to Compel, in part, and ordered Wells Fargo Bank to produce account records and to continue conferring on any remaining issues. D.E. 113. On October 25, 2016, Plaintiff inquired as to the

status of Wells Fargo Bank's production of the Court-ordered account records.  The next day, Wells Fargo Bank represented that it would produce, among other documents, those documents that were responsive to Request Number 3 of the First Requests, which specifically called for "All Documents and Communications evidencing incoming deposits and outgoing remittances, including but not limited to . . . wire transfers[.]"

By November 30, 2016, Wells Fargo Bank still had not produced the responsive documents, and Plaintiff filed its Motion to Compel and for Sanctions.  D.E. 138.  On December 19, 2016, the Magistrate Judge denied Plaintiff's motions without prejudice based upon Wells Fargo Bank's representations that it had completed its production of account records on December 7, 2016, and that it anticipated making production of outstanding documents by December 23, 2016.  D.E. 160 at 2 n.2, 4.  However, on December 22, 2016, Wells Fargo Bank's counsel advised Plaintiff's counsel that it was "not in a position to commit that production will be complete by tomorrow."  Wells Fargo Bank did not produce any documents on December 23, 2016.

On January 20, 2017, Plaintiff deposed Graciela Taleno, who was a manager of Wells Fargo Bank's Brickell branch and Defendant Rafael's supervisor during the relevant time period.  At her deposition, Taleno testified that McConley would come to the Brickell Branch to do wire transfers.  She testified that she would frequently go to Defendant Rafael's office to review "the information that [McConley] provided us with the wire transfers to avoid mistakes, and I would approve it."  D.E. 326-13, 53:16-10.  She also testified that an approval for a wire transfer is required "[a]ll the time."  *Id.*, 54:24-55:1.

Following Taleno's deposition, Plaintiff followed up with Wells Fargo Bank on January 23, 2017 to confirm that they would be producing wire transfer records.  In response, Wells

14

Fargo Bank's counsel advised that they did not know what was meant by "wire transfer records," and directed Plaintiff to the previously-produced account statements. It was not until February 24, 2017 – more than twenty days after the discovery deadline – that Wells Fargo Bank produced hundreds of pages of documents relating to wire transfers. The wire transfer records clearly reflect that even after Wells Fargo Bank shut down the Forrest Capital accounts, Wells Fargo Bank bankers continued to approve wire transfers, including from the FCC account. One entry documents that a "banker kept insisting I give permission to do wires" after the decision to terminate the relationship – this includes the wire transfers from Plaintiff's account to the Forrest Capital accounts. *See* D.E. 326-10.

According to Wells Fargo Bank, it was never under an obligation to produce these specific wire transfer documents. Wells Fargo Bank claims that it did not know what Plaintiff intended by "wire transfer requests" in its Requests, and only after Plaintiff provided more detail regarding the wire transfer documents in February 2017, well beyond the discovery deadline, was Wells Fargo Bank able to locate the documents that Plaintiff was requesting.

## B. Legal Standard

"It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir. 1985)). Sanctions are "intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Van Wagner v. Broward Cty. Sheriff's Office*, 554 Fed. Appx. 889, 890 (11th Cir. 2014) (citing *Gratton v. Great Amer. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999)).

Under Federal Rule of Civil Procedure 37, "[i]f a party . . . fails to obey an order to prove or permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just." Fed. R. Civ. P. 37(b)(2). Federal Rule of Civil Procedure 37(b) provides that a district court may impose sanctions for failure to comply with discovery orders. *See Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006); *see also* Fed. R. Civ. P. 37(b). Such sanctions include "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

Entering a default judgment as a discovery sanction is "appropriate only as a last resort" and requires a finding of willfulness or bad faith on the part of the offending party. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Furthermore, imposing a discovery sanction that is not "specifically related to the particular claim which was at issue in the order to provide discovery" violates a party's due-process rights. *Serra Chevrolet*, 446 F.3d at 1151 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982)). "Violations of a court order 'caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment.' . . . Moreover, a default judgment is appropriate only as a 'last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Maus v. Ennis*, 513 Fed. Appx. 872, 878 (11th Cir. 2013) (quoting *Malautea v. Suzuki*, 987 F.2d at 1542)).

A court may also impose sanctions for litigation misconduct under its inherent power. *Eagle Hosp. Physicians, LLC v. SRF Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). The court's inherent power derives from the court's need "to manage [its] own affairs so as to achieve the orderly and

expeditious disposition of cases." *Eagle Hosp. Physicians*, 561 F.3d at 1306 (citing *Chambers*, 501 U.S. at 43) (quotation marks and citation omitted).   This power, however, "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).  "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) (quoting *United States v. Sigma Int'l, Inc.*, 244 F.3d 841, 852 (11th Cir. 2001)).

Sanctions authorized under the court's inherent powers include the striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorney's fees, and outright dismissal of a lawsuit.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373-74 (S.D. Fla. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332 (11th Cir. 2002) (dismissing with prejudice); *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536 (11th Cir. 1993) (striking answers and entering default judgment); *State Exch. Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) (striking pleadings); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987) (entering default judgment against defendant); *Pelletier v. Zweifel*, 987 F.2d 716 (11th Cir. 1993) (entering Rule 11 sanctions for parties' frivolous violation of mandate rule).

### C. Analysis

Throughout their Responses to Plaintiff's Motions for Sanctions, Defendants claim ignorance and engage in the blame game.  In almost each category of discovery violations that Plaintiff complains of, Defendants admittedly concede that such action occurred, but for one reason or another, they should not be sanctioned.  For example, Defendants admit that they failed

to timely produce e-mails, wire transfer records, employees with knowledge of the underlying scheme for deposition, and an entire note-taking system, but because such information was either not "explicitly" requested, or because Defendants deemed the documents and/or purported testimony to not be relevant in their own minds, Defendants failed to produce the requested discovery documents and witnesses.  However, it is not lost on this Court that once Plaintiff filed its Motion for Sanctions, Defendants decided to step back and "review" their produced discovery "in an abundance of caution."   In other words, once Defendants' conduct was brought to the Court's attention, Defendants took steps to ensure they had complied with their discovery obligations before the Court considered their conduct.  However, Defendants' assumption that Plaintiff now is not prejudiced because the documents have been produced, regardless whether the production occurred within the discovery time period and that therefore sanctions are not warranted, is unavailing.

Defendants' conduct is exactly the type of conduct that is condemned under federal law and the Federal Rules of Civil Procedure.  Also, there is no question that Plaintiff is unduly prejudiced at this stage.  Had only one of the complained-of discovery violations occurred, then this Court might be less inclined to impose sanctions.  Accordingly, and given the totality of the circumstances and the events that have occurred since discovery closed, the Court is left with no choice but to sanction Defendants.

In the Court's assessment, the proportional and otherwise appropriate sanction is the striking of Defendants' affirmative defenses and re-opening discovery for the sole purpose of allowing Plaintiff to conduct the depositions that it was precluded from conducting within the Court's discovery deadline.  Accordingly, Plaintiff's Motion for Sanctions against Defendants for Failing to Appear for Duly Noticed Depositions, or, in the Alternative, to Compel Defendants

to Appear for Depositions (D.E. 241), Plaintiff's Supplemental Motion for Sanctions against Defendants Wells Fargo, N.A. and Wells Fargo Advisors, LLC (D.E. 326) are GRANTED.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Plaintiff's Claims and Underlying Facts

Benjamin McConley ("McConley"), Jason Van Eman ("Eman"), and Ross Marroso ("Marroso"), and their companies, Forrest Capital Partners, Inc. ("FCP"), Forrest Capital and Co., LLC ("FCC"), Weathervane Productions, Inc. ("Weathervane"), and WVP Holding, LLC ("WVP") (collectively, the "Forrest Capital Parties") purport to be in the film production financing and investment business. D.E. 1 ¶ 29.

In January 2015, the Forrest Capital Parties approached Plaintiff about making short-term loans to Weathervane. *Id.* ¶ 30. The Forrest Capital Parties represented to Plaintiff that Weathervane had the opportunity to produce three films and wanted to obtain a line of credit, but Weathervane was required to put up collateral. *Id.* The Forrest Capital Parties represented that FCP had already committed to provide half of the collateral needed, but before FCP could do so, FCP's charter required Weathervane, as the borrower, to secure "matched funding" equal to the amount to be contributed by FCP. *Id.* ¶ 31. The Forrest Capital Parties proposed that Plaintiff make short-term loans to WVP, a special purpose vehicle created by Weathervane. *Id.* ¶ 32. WVP would then use the loan proceeds as the "matched funding" portion of the collateral to obtain the line of credit to be used as permanent financing for the production of the films. *Id.*

Based upon representations made by Defendants' employees that FCP and McConley were clients of Wells Fargo Advisors, that Wells Fargo Advisors had administered and managed FCP's trust assets, and FCP's family office had assets of hundreds of millions of dollars (D.E. 1 ¶ 39), Plaintiff deposited $28,542,500 into a bank account at Wells Fargo Bank. D.E. 342-1 ¶¶

19

7-12.   Almost immediately after the funds were deposited, Plaintiff's funds were wrongly misappropriated by the Forrest Capital Parties.  *Id.* ¶¶ 13-15.  Each time FCP wired Plaintiff's funds out of Wells Fargo Bank, Wells Fargo Bank received transaction fees.  *Id.* ¶ 16.  Plaintiff was never repaid for the loans it made to WVP.  *Id.* ¶ 18.

On May 2, 2016, Plaintiff filed this action against Defendants, Wells Fargo Bank, N.A. ("Wells Fargo Bank"), Wells Fargo Advisors, Inc. ("Wells Fargo Advisors"), Benjamin Rafael, Hernan Bermudez, and Paul Zoch (collectively, "Defendants").  D.E. 1.  In the Complaint, Plaintiff alleges the following claims: (1) Aiding and Abetting Conversion against Wells Fargo Bank and Wells Fargo Advisors; (2) Aiding and Abetting Conversion against Rafael; (3) Aiding and Abetting Conversion against Zoch; (4) Aiding and Abetting Conversion against Bermudez; (5) Fraudulent Misrepresentation against Wells Fargo Bank; (6) Fraudulent Misrepresentation against Wells Fargo Advisors; (7) Fraudulent Misrepresentation against Rafael; and (8) Fraudulent Misrepresentation against Zoch.  *Id.*  On July 29, 2016, Defendants filed their Answers and Affirmative Defenses.  D.E. 54, 55, 56, 57.

## B.  Legal Standard

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967).

The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

### C. Analysis

In its Motion for Partial Summary Judgment, Plaintiff moves for summary judgment as to each of the affirmative defenses in Defendants' Answers and Affirmative Defenses (D.E. 54-56, 57). Specifically, Plaintiff argues that Defendants' affirmative defenses fail for the following reasons: (1) Defendants' purported bank fraud conspiracy theory fails as a matter of law; (2) Defendants' usury affirmative defenses fail because Defendants do not have standing to raise usury as a defense; (3) Defendants' *in pari delicto* affirmative defenses fail because there is no evidence that Plaintiff acted in concert with any of the Defendants; (4) Defendants' unclean hands defenses fail because Plaintiff is not seeking equitable relief; (5) Defendants' justifiable reliance and due diligence defenses fail because they are immaterial; and (6) Defendants' boilerplate waiver and estoppel defenses fail because they are improperly pleaded and are not supported by record evidence. The Court separately considers each argument.

### 1. Bank Fraud Conspiracy Theory

In their Answers and Affirmative Defendants, Defendants raise a defense that appears to be premised on the statute criminalizing bank fraud.[8]  *See* D.E. 54 at 61 ("Plaintiff cannot recover from transactions that are illegal and unenforceable."); D.E. 54 at 62 ("Plaintiff's claims

---

[8] The Court had difficulty in separately addressing the arguments raised in Plaintiff's Motion for Partial Summary Judgment due to Defendants' sloppiness in pleading their defenses. For example, Defendants attempt to plead their theory involving bank fraud within their *in pari delicto* defenses in their Answers and Affirmative Defenses; however, in responding to Plaintiff's Motion, Defendants, Wells Fargo Bank, Wells Fargo Advisors, and Defendant Zoch make clear that they intend to raise a defense premised on 18 U.S.C. § 1344, separate and apart from other defenses. Defendant Bermudez, lazily attempts to "incorporate" the arguments raised by those Defendants, while Defendant Rafael, did not even file a response. Therefore, the Court's analysis addresses any attempt by Defendants' to premise any affirmative defense whatsoever on 18 U.S.C. § 1344.

are barred in whole or in part by the doctrine of unclean hands.  Plaintiff acted in concert with third-parties Benjamin McConley, Jason Van Eman, Ross Marroso, Forrest Capital Partners, Inc., Forrest Capital and Co., LLC, Weathervane Productions, Inc., WVP Holdings, LLC, Lee Vandermolen and/or Alistair Burlingham in a scheme to wrongfully obtain funds from Wells Fargo Bank."); D.E. 55 at 26 ("Plaintiff's claims are barred . . . because . . . Plaintiff's transactions with the Forrest Capital Parties were designed to induce a federally insured bank to make loans to an unqualified borrower based on false financial information in violation of 18 U.S.C. § 1344, and was otherwise fraudulent[.]"); D.E. 55 at 28 ("Plaintiff's claims are barred due to fraud."); D.E. 57 at 23 ("Plaintiff participated in or conspired to induce a federally insured bank to provide credit based upon information Plaintiff knew to be false."); D.E. 56 at 6-7 ("Plaintiff participated in or conspired to induce a federally insured bank to provide credit based upon information Plaintiff knew to be false.").

Plaintiff moves for summary judgment as to any of Defendants' affirmative defenses that are premised on Defendants' theory that Plaintiff was engaged in a conspiracy to commit bank fraud.  Specifically, Plaintiff argues that Defendants do not have standing to pursue any defense that is based on 18 U.S.C. § 1344, which is the statute criminalizing bank fraud, as this statute does not provide a private cause of action.  In addition, Plaintiff argues that even if this Court finds that Defendants have standing to raise this defense, there is no evidence that Plaintiff, or anyone acting on its behalf, made a false statement to Wells Fargo, nor evidence that Plaintiff was engaged in any conspiracy with the Forrest Capital Parties whatsoever.

In response, Defendants, Wells Fargo Bank, Wells Fargo Advisors, and Zoch, argue that Plaintiff failed to cite any case that holds an affirmative defense must be based on a statute that

authorizes a private right of action.[9]  In addition, Defendants argue the record establishes that "the only purpose of Plaintiff's agreement with WVP was to 'rent' funds to WVP so WVP could obtain lines of credit from the Bank and then repay Plaintiff from the lines of credit Plaintiff believed the Bank would be extending."  D.E. 405 at 6.  According to Defendants, if Plaintiff was to be repaid from the loans that Plaintiff believed the Bank was going to make, then by receiving payment from the proceeds of the bank loans, Plaintiff would have improperly received money from the Bank through the scheme.  *Id.*

Plaintiff, in turn, replies that Defendants have failed to demonstrate how Plaintiff's short-term loans to WVP, which were intended to allow WVP to receive a line of credit from Wells Fargo Bank, and then use those funds to replay Plaintiff with interest would be somehow improper.  Plaintiff argues that there is no evidence to support the notion that Wells Fargo Bank would have been defrauded in any way by issuing a line of credit secured by 100% collateral.  In addition, Plaintiff states that Defendants have failed to point to any evidence that anyone made a false representation on Plaintiff's behalf.

18 U.S.C. § 1344 states:

> Whoever knowingly executes, or attempts to execute a scheme or artifice –
>
> (1) To defraud a financial institution; or
>
> (2) To obtain any of the moneys, funds credits assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

---

[9] Defendants rely upon one case, *Costello v. Grundon*, 651 F.3d 614 (7th Cir. 2011), for the proposition that an affirmative defense need not be based on a statute that authorizes a private cause of action.  However, the facts of that case were specifically confined to whether a borrower could assert an affirmative defense that certain promissory notes were void and unenforceable due to the operation of margin regulations.  Those are not the facts of this case, where the statute that Defendants purport to rely upon is a criminal statute.

> Shall be fined not more than $1,000,000 or imprisoned not more than 30
> years, or both.

18 U.S.C. § 1344. Many districts have previously found that this statute does not provide for a private cause of action. *Thompson v. Wells Fargo Bank, N.A.*, No. H-15-598, 2016 WL 164114, at *3 (S.D. Tex. Jan. 14, 2016) (acknowledging 18 U.S.C. § 1344 does not provide a private cause of action); *see also Watson v. United States*, No. C07-326, 2009 WL 2601254, at *3 (S.D. Tex. Aug. 24, 2009) (no private cause of action under 18 U.S.C. § 1344); *Campbell v. M&T Bank*, No. 3:16-cv-118, 2017 WL 1091939, at *6 (W.D. Pa. Mar. 22, 2017) ("Count five is brought under 18 U.S.C. § 1344, which provides for criminal penalties and does not create a private right of action."); *Edmonds v. Seavey*, No. 08-cv-5646, 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009) ("there is no private cause of action under 18 U.S.C. § 1344"); *Holmes v. MBNA Am. Bank, N.A.*, No. 5:05-cv-16, 2007 WL 952017, at *1 (W.D.N.C. Mar. 27, 2007) ("18 U.S.C. § 1344 is a criminal statute and provides no private right of action"); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005) (no private right of action exists under 18 U.S.C. § 1344).

Contrary to Defendants' argument, courts have found that where a statute does not provide a private cause of action, it cannot be relied upon as an affirmative defense. *See Wachovia Bank, Nat'l Ass'n v. Lone Pine, Inc.*, 1:09-cv-02983-JOF, 2010 WL 2553880, at *2 (N.D. Ga. June 15, 2010) ("The court agrees that because [the Troubled Assets Relief Capital Purchase Program] does not contain a private cause of action, Defendants may not raise it as an affirmative defense[.]"); *First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356, 2009 WL 2169869, at *3 n.4 (S.D. Fla. July 20, 2009) (where statute is regulatory and does not support a cause of action, it cannot give rise to an affirmative defense); *Columbia Artists Mgmt, LLC v. Swenson & Burnakus, Inc.*, 05 CIV 7314, 2008 WL 4387808 (S.D.N.Y. Sept. 24, 2008)

("Where there is no private right of action for a claim, a party cannot assert that same violation as grounds for an affirmative defense."); *Niagara Frontier Transp. Auth. v. Eastern Airlines, Inc.*, 658 F. Supp. 247 (W.D.N.Y. 1987) (where court determined that Airport and Airway Improvement Act of 1982 did not contain a private right of action, course dismissed affirmative defenses based on act).

Here, the Court need not go beyond the cases cited above.  18 U.S.C. § 1344 does not provide for a private right of action.  Because this criminal statute does not provide a private cause of action, Defendants cannot raise this as an affirmative defense.  Even if this Court were inclined to allow Defendants to pursue this defense, Defendants have failed to establish how Plaintiff's short-term loans to WVP, which were intended to allow WVP to receive a line of credit from Wells Fargo Bank, and then use those funds to repay Plaintiff with interest, would somehow be improper under any applicable law.  Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' Bank Fraud Defenses is GRANTED.

### 2.  Usury Affirmative Defenses

Defendants each raise affirmative defenses that the underlying loan documents violate Florida's usury law.  *See* D.E. 54 at 61 ("Florida's usury laws prescribe a maximum rate of 25% on loans that exceed $500,000 pursuant to § 687.071(2) Fla. Stat.  The interest rate on the underlying loan agreements exceeded the maximum rate."); D.E. 55 at 26 ("Plaintiff's claims are barred by the doctrine of *in pari delico* because . . . Plaintiff knew the object and purpose of the transactions but knowingly chose to enter into them to earn interest at a rate that is criminally usurious under section 687.01, Florida Statutes."); *Id.* ("Plaintiff's claims are barred based on the criminally usurious interest rate charged on the underlying loan agreements."); D.E. 57 at 23 ("Plaintiff's claims are barred in whole or in part by the doctrine of *in pari delicto*.  Florida's

usury laws prescribe a maximum rate of 25% on loans that exceed $500,000 pursuant to §
687.071(2), Fla. Stat.   The interest rate on the underlying loan agreements exceeded the
maximum rate.  Plaintiff cannot recover from transactions that are illegal and unenforceable.");
D.E. 56 at 6 ("Plaintiff seeks to recover alleged damages resulting from its criminally usurious,
and thus, unenforceable, loans transactions."); D.E. 56 at 6 ("Plaintiff seeks to recover alleged
damages resulting from its criminally usurious, and thus unenforceable loan transactions."); *Id.*
("Plaintiff's claim is barred because it knowingly and voluntarily assumed the risk of loss by,
among other things . . . making loans at criminally usurious rates.").

Plaintiff moves for summary judgment as to Defendants' usury defenses because
Eleventh Circuit precedent dictates that where a bank is not a party to the underlying loan
agreement, a bank does not have standing to raise usury as a defense to aiding and abetting
claims and fraud claims. *See Freeman v. JP Morgan Chase Bank, N.A.*, No. 15-14944, 2017 WL
128002, at *7 n.9 (11th Cir. Jan. 13, 2017).  Plaintiff argues that because Defendants were not
parties to the underlying loan agreements, any and all defenses related to usury fail as a matter of
law.  Furthermore, Plaintiff points to the provisions in the loan documents where the parties to
the underlying loans agreed that the documents shall be governed by English law; thus, Florida's
usury statute is not relevant to this analysis.

In response, Defendants fail to address Plaintiff's argument regarding Defendants'
standing to raise the usury defenses.  Rather, Defendants insist that if Plaintiff cannot recover
against the Forrest Capital Entities under the applicable loan agreements due to usurious interest
rates, then Plaintiff should not be able to recover from the Bank through tort claims.  Defendants
argue that because the loans are usurious under California law, Plaintiff cannot recover from the
Bank.  In addition, Defendants argue that even if this Court finds Defendants cannot raise usury

as an affirmative defense, the Court should still allow Defendants to present their usury argument at trial because it is relevant to other issues in dispute, including Plaintiff's good faith and the determination of damages.

A bank may not assert a usury defense because, as Florida courts have explained, "usury is purely a personal defense" that belongs to the borrower. *Freeman v. JPMorgan Chase Bank N.A.*, No. 15-14944, 2017 WL 128002, at *7 (11th Cir. Jan. 13, 2007) (citing *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971) ("This court has followed the general rule that usury is purely a personal defense created for statute for the protection of borrowers, and therefore, any borrower may waive his right to claim the benefit of such statute.")); *see Wulsin v. Palmetto Fed. Sav. & Loan Ass'n*, 507 So. 2d 1149, 1150 (Fla. Dist. Ct. App. 1987). It follows that where a bank is not a party to the loan agreement, it cannot raise the affirmative defense. *See Drill S., Inc. v. Int'l Fid. Ins. Co.*, 234 F.3d 1232, 1238 n.9 (11th Cir. 2000) (discussing that third party may not raise personal defenses).

It is clear that Defendants' responses are intended to confuse the issues before the Court. Defendants wholly failed to address Plaintiff's citation to the Eleventh Circuit's decision in *Freeman* and failed to address how and why Defendants would have standing to raise usury as a defense. Notwithstanding their silence, the Court finds that Defendants do not have standing to raise usury as a defense, as none of the Defendants were parties to the underlying loans as provided for in *Freeman*. Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' affirmative defenses based on usury is GRANTED.

### 3. *In Pari Delicto* **Affirmative Defenses**

Defendants raise *in pari delicto* as an affirmative defense to Plaintiff's claims. *See* D.E. 54 at 61 ("Plaintiff's claims are barred in whole or in part by the doctrine of *in pari delicto*[.]");

D.E. 55 at 26 ("Plaintiff's claims are barred by the doctrine of *in pari delicto*[.]"); D.E. 57 at 23 ("Plaintiff's claims are barred in whole or in part by the doctrine of *in pari delicto*."); D.E. 56 at 6 ("Plaintiff's claim is barred by the doctrine of *in pari delicto*.").

In moving for summary judgment, Plaintiff argues that the *in pari delicto* affirmative defenses fail as a matter of law because there is no record evidence to support the requisite elements.   Specifically, there is no record evidence that Defendants were co-conspirators with Plaintiff to engage in the same wrongdoing, which is a requisite element under Florida law.

In response, Defendants argue that under Florida law, it is not necessary to show that Plaintiff and Defendants were engaged in the same wrongdoing; rather, so long as Defendants establish Plaintiff was engaged in "any wrongdoing," Plaintiff's claims are barred.   Defendants contend that because "the purpose of the transactions was to 'park' funds in an account so that a would-be-borrower could use the funds to show as the borrower's own, with the intention that the Bank would extend a line of credit secured by those same funds."   According to Defendants, this action was improper; however, Defendants cite no case law for this proposition.

Plaintiff replies by pointing to well-established case law in Florida and the Eleventh Circuit that "the parties must participate in the same wrongdoing." *Earth Trades, Inc. v. T&G Corp.*, 108 So. 3d 580, 583 (Fla. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308-1309 (11th Cir. 2013).   Plaintiff points out the fact that Defendants rely on two district court opinions that pre-date the Florida Supreme Court's and Eleventh Circuit's proclamations that the *in pari delicto* doctrine explicitly requires a plaintiff and a defendant to be co-conspirators in the same wrongdoing.   Thus, Plaintiffs argue that the Defendants' citations do not provide a sufficient basis for this Court to disregard the precedent.

The doctrine of *in pari delicto* is an equitable doctrine that states "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (citing Black's Law Dictionary 794 (7th ed. 1999)). This common law defense "derives from the Latin, *in pari delicto potior est condition defendntisi*: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'" *Id.* (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985)).

The defense of *in pari delicto* does not require simply that both parties be to some degree wrongdoers. Rather, the parties must participate in the same wrongdoing. *O'Halloran v. PricewaterhouseCoopers, LLP*, 969 So. 2d at 1044 (citing *Memorex Corp. v. Int'l Bus. Machs. Corp.*, 555 F.2d 1379, 1382 (9th Cir. 1977)). And they must be "[e]qually at fault." *Earth Trades*, 108 So. 3d at 583. The Supreme Court explained the principle as follows:

> The common-law defense . . . derives from the Latin, *in pari delicto potior est condition defendentis*: "In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. In its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury, because "in cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow that they stand *in pari delicto*; for there may be, and often are, very different degrees in their guilty."

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306-07 (1985); *Kirkpatrick v. Parker*, 136 Fla. 689 (Fla. 1939) (acknowledging but rejecting on the facts the claim that a party to an illegal seduction may not be "in pari delicto with the defendant but only in delicto"). "Accordingly, that both plaintiff and defendant may be wrongdoers does not mean that the parties stand *in pari delicto*. By definition, if the wrong of the party seeking to enforce the

contract is not substantially equivalent to the wrong of the defendant, the defense of *in pari delicto* does not defeat the cause of action." *Earth Trades, Inc.*, 108 So. 3d at 584.

The Court agrees with Plaintiff that based upon well-established precedent in this Circuit, Defendants are required to establish that Plaintiff was engaged in the same wrongdoing. The relevant "wrongdoing" is the misappropriation of the more than $25 million that Plaintiff deposited into the FCC account. There is no record evidence to demonstrate that Plaintiff was engaged that wrongdoing, let alone any wrongdoing, such as to bar Plaintiff's claims pursuant to the *in pari delicto* doctrine. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to Defendants' *In Pari Delicto* Defenses is GRANTED.

### 4.  Unclean Hands Defenses

In their Answers and Affirmative Defenses, Defendants raise the doctrine of unclean hands as a defense. *See* D.E. 54 at 62 ("Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands."); D.E. 55 at 28 ("Plaintiff's claims are barred by the doctrine of unclean hands."); D.E. 57 at 25 ("Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands."); D.E. 56 at 6 ("Plaintiff's claim is barred by the doctrine of unclean hands.").

Plaintiff moves for summary judgment as to Defendants' defense based on the unclean hands doctrine on the grounds that the unclean hands doctrine is only applicable in equitable actions, and here, Plaintiff is seeking damages. In addition, Plaintiff argues that even if this Court were to consider unclean hands as a viable defense, there is no evidence to support the elements of the unclean hands doctrine.

Defendants overlook Plaintiff's argument that the unclean hands doctrine is only applicable in equitable actions and insist that this Court should still consider the facts underlying the defense because the record evidence establishes that Plaintiff was engaged in misconduct

when it entered into the transactions with WVP.   Therefore, Defendants argue Plaintiff should not be permitted to recover through its own wrongful conduct.

"The equitable doctrine of 'unclean hands' applies when a party seeking equitable relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010) (citing *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001)).   To assert an unclean hands doctrine defense, a defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted, and, even if directly related, the defendant must show that it was personally injured by the plaintiff's wrongful conduct.   *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993).   The unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses.   *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-CIV, 2010 WL 5148467, at *6 (citing *Mitchell Bros. Film Grp. v. Cinema Adult Theatre*, 604 F.2d 852, 865 n.26 (5th Cir. 1979)).

Here, Plaintiff is only seeking monetary damages.   This is not a claim for equitable relief; therefore, the Court agrees with Plaintiff that Defendants are not permitted to raise the doctrine of unclean hands as a defense.   Even if this were a viable claim, the Court agrees with Plaintiff that there is no record evidence to demonstrate that Plaintiff was somehow engaged in conduct that caused damage to Defendants.   Furthermore, Defendants' argument that any incurred damages stem from their attorney's fees in defending this lawsuit is simply unsupported in law. Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' Unclean Hands Defenses is GRANTED.

## 5. Justifiable Reliance and Due Diligence Defenses

Defendants assert that they cannot be liable to Plaintiff for fraudulent misrepresentation because Plaintiff either did not justifiably or reasonably rely on representations, or failed to conduct due diligence into the truthfulness or falsity of any such representation. *See* D.E. 54 at 62 ("Plaintiff's claims are barred because Plaintiff did not reasonably rely on any statements, representations made by Wells Fargo Advisors or Zoch, as no such statements were made directly to Plaintiff by Wells Fargo Advisors or Zoch."); D.E. 55 at 27 ("Plaintiff's claims are barred because Plaintiff did not rely on any statements, representations or promises made by Rafael, Bermudez, Zoch, or any other Wells Fargo employee or agent, or upon any Wells Fargo's employee or agent's failure to object to statements, representations or promises made to Plaintiff by the Forrest Capital Parties, Burlingham or Vandermolen.   Additionally and alternatively, Plaintiff's reliance was neither reasonable nor justifiable."); D.E. 56 at 7 ("Plaintiff's claim is barred because it knowingly and voluntarily assumed the risk of loss by, among other things . . . failing to perform due diligence[.]"); D.E. 57 at 25 ("Plaintiff's claims are barred because Plaintiff did not reasonably rely on any statements, representations made by Rafael, as no such statements were made directly to Plaintiff by Rafael.").

Plaintiff moves for summary judgment as to Defendants' justifiable reliance and due diligence defenses because Plaintiff argues that justifiable reliance is not a necessary element of fraudulent misrepresentation under Florida law.  In addition, Plaintiff argues that reliance and due diligence are not elements of aiding and abetting conversion; therefore, these defenses fail as a matter of law.

In responding, Defendants argue that there is record evidence that Plaintiff could not have relied on Defendant Rafael to bind Wells Fargo Bank to an agreement to restrict the non-existent WVP Collateral Account or to extend commercial lines of credit because Defendant Rafael did

not have the Bank's authority to bind the Bank.  In addition, Defendants argue that the record evidence establishes that it was neither "reasonable" nor "justifiable" for Plaintiff to rely on whatever Defendant Rafael did, or did not do.  Thus, according to Defendants, because there is no evidence or allegation that Wells Fargo Bank, Wells Fargo Advisors, or any of their employees made representations regarding the Forest Capital account, Plaintiff did not actually rely on any representations regarding restrictions on the account in which Plaintiff chose to transfer the funds.

Under Florida law, "[t]o maintain a fraudulent-inducement claim, a plaintiff must have suffered injury in reliance on the misrepresentation." *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 12-20607-CIV, 2013 WL 3223686 (S.D. Fla. June 24, 2013) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 304 (S.D. Fla. 2013)).  However, "[i]n the context of fraud, demonstrating 'justifiable reliance' is not necessary, and a party is not required to investigate the representation before relying upon it." *Id.* (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).  "[A] plaintiff 'may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.'" *Butler*, 44 So. 3d at 105.

The Court agrees with Plaintiff that it is neither required to establish that it was justified in relying on Defendants' misrepresentations, nor that Plaintiff engaged in due diligence into ascertaining the truthfulness or falsity of any representation prior to relying on such representations.  Defendants cite cases that do not stand for the propositions for which they are cited, and are not persuasive to this Court.  Thus, Plaintiff's Motion for Summary Judgment as to Plaintiff's Justifiable Reliance and Due Diligence Defenses is GRANTED.

### 6.  Waiver and Estoppel Defenses

In a conclusory manner, each Defendant raises waiver and estoppel as defenses. *See* D.E. 54 at 63 ("Plaintiff's claims are barred by the doctrines of waiver and estoppel."); D.E. 55 at 28 ("Plaintiff's claims are barred under the doctrines of waiver or estoppel. Plaintiff chose to deposit the loan proceeds into an account controlled by FCC, and otherwise proceeded with the transactions despite knowing that terms and conditions of their agreements with the Forrest Capital Parties had not been satisfied."); D.E. 57 at 26 ("Plaintiff's claims are barred by the doctrines of waiver and estoppel."); D.E. 56 at 8 ("Plaintiff's claim is barred by the doctrines of waiver and/or estoppel.").

Plaintiff argues that the Court should enter summary judgment in its favor as to Defendants' waiver and estoppel defenses because Defendants plead these defenses, without setting forth the requisite elements.

Defendants fail to respond to Plaintiff's arguments and simply state that "Plaintiff waived any relief it had against Defendants when it knowingly deposited the loan proceeds into an account held by nonparty to the bridging facility and funding agreements, when that account and the named entity were not even mentioned in the fraudulent letters it claims to have relied on." In addition, Defendants simply argue, without pointing to record evidence, that "Plaintiff is estopped from claiming it is entitled to recover against Defendants when its alleged 'injury' arises from its own fraudulent activities and wrongdoing."

Plaintiff replies that the Court should enter summary judgment as to these defenses on procedural grounds alone because Plaintiff failed to adequately plead their waiver and estoppel affirmative defenses. Plaintiff argues that there is no evidence whatsoever that Plaintiff made any representation that Defendants relied upon to their detriment to sustain an estoppel

affirmative defense, and there is no evidence that Plaintiff intentionally waived its right to have its loan proceeds held in restricted accounts to sustain a waiver affirmative defense.

Although "[e]ntry of a summary judgment is improper when there is no evidence contradicting or opposing an affirmative defense, merely labeling what is otherwise a denial of an element of plaintiff's prima facie case as an affirmative defense does not preclude the entry of summary judgment." *United States v. Marder*, 1:13-cv-24503-KMM, 2016 WL 5404303, at *14 (S.D. Fla. Sept. 23, 2016) (citing *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1439 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). In fact, "[t]he defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:14-cv-3129-T-30TBM, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015).

The Court agrees with Plaintiff that Defendants have failed to plead and substantiate their waiver and estoppel defenses. Defendants cannot simply argue what the evidence is in their Response to Plaintiff's Motion for Partial Summary Judgment, without actually pointing to record evidence to support their claims. Thus, Plaintiff's Motion for Summary Judgment as to Defendants' Waiver and Estoppel Defenses is GRANTED. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Sanctions against Defendants for Failing to Appear for Duly Noticed Depositions, or, in the Alternative, to Compel Defendants to Appear for Depositions (D.E. 241) and Plaintiff's Supplemental Motion for Sanctions against Defendants Wells Fargo, N.A. and Wells Fargo Advisors, LLC (D.E. 326) are GRANTED. It is further

ORDERED AND ADJUDGED that discovery is open for thirty (30) days from the date of this Order.  Discovery is open for the SOLE purpose of allowing Plaintiff to conduct the depositions of the witnesses that it was precluded from taking during discovery as addressed herein.  It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment (D.E. 341) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 7th day of April, 2017.

_____
UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf